UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

Connie Avaras, individually and on behalf of   :
her minor child, A.A.,

                        Plaintiffs,      :

        -against-                 :

                                   CASE NO. 18-CV-6964 (___)

Clarkstown Central School District, the Board  :
of Education for Clarkstown Central School
District, and the New York State Education   :
Department

                  Defendants.    :

-----------------------------------------------------------x

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Tai H. Park
PARK JENSEN BENNETT LLP
*Attorney for the Plaintiffs*
40 Wall Street, 41st Floor
New York, NY 10005
Ph: 646-200-6310
Email: tpark@parkjensen.com

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ........................................................................................................ 1

ARGUMENT ............................................................................................................................. 9

POINT I - THE DEFENDANTS SHOULD BE ORDERED TO PAY FOR FULL TUITION AND RELATED COSTS OF CURRENT PLACEMENT AT NYMA PURSUANT TO THE LAW OF PENDENCY AND STAY PUT. .............................................................................. 9

    A.    Governing Law ...................................................................................................9

    B.    A.A.'s Pendency Entitlement During the Instant Litigation.......................................11

    C.    Expedited Relief is Warranted to Enforce Stay Put Rights ........................................14

POINT II - PLAINTIFFS ALSO SATISFY THE TRADITIONAL FACTORS FOR A PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER................. 15

    A.    A.A. will be Irreparably Harmed if his Educational Placement at NYMA is Terminated. ......................................................................................................16

    B.    Plaintiffs are Likely to Succeed on the Merits............................................................18

    C.    The Balance of Hardships Weighs Decidedly in Plaintiffs' Favor..............................18

CONCLUSION........................................................................................................................ 20

## TABLE OF AUTHORITIES

**Cases**

Arlington Cent. Sch. Dist. v. L.P.,
  421 F. Supp. 2d 692 (S.D.N.Y.2006) ...................................................................... 9, 14

Avaras v. Clarkstown Cent. Sch. Dist.,
  No. 15 Civ. 2042, 2017 WL 3037402 (S.D.N.Y. Jul. 17, 2017) ................................................. 2

Bd. of Educ. of the Pine Plains Cent. Sch. Dist. v. Engwiller,
  170 F. Supp. 2d 410 (S.D.N.Y. 2001) ...................................................................... 11

Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz,
  290 F.3d 476 (2d Cir. 2002) ...................................................................... 11, 12

Bell & Howell: Mamiya Co. v. Masel Supply Co.,
  719 F.2d 42 (2d Cir. 1983) ...................................................................... 16

City Sch. Dist. of the City of Buffalo v. Darlene S.,
  No. 05 Civ. 0572E, 2006 WL 287871 (W.D.N.Y. Feb. 6, 2006) ............................................. 12

Clovis Unified Sch. Dist. v. Cal. Office of Admin. Hearings,
  903 F.2d 635 (9th Cir. 1990) ...................................................................... 12

Concerned Parents & Citizens for the Continuing Educ. at Malcom X (PS 79) v. N.Y.C Bd. of
  Educ.,
  629 F.2d 751 (2d Cir. 1980) ...................................................................... 10

Cosgrove v. Bd. of Educ. of Niskayuna Cent. Sch. Dist.,
  175 F. Supp. 2d 375 (N.D.N.Y 2001) .......................................................... 15, 16, 18, 19

Dervishi v. Stamford Bd. of Educ.,
  653 F. App'x 55 (2d Cir. 2016) ...................................................................... 13

Doe v. E. Lyme Bd. of Educ.,
  790 F.3d 440 (2d Cir. 2015) ...................................................................... 11, 14

Drinker v. Colonial Sch. Dist.,
  78 F.3d 859 (3d Cir. 1996) ...................................................................... 10

Honig v. Doe,
  484 U.S. 305 (1988) ...................................................................... 9, 14

J.E. v. Boyertown Area Sch. Dist.,
  452 F. App'x 172 (3d Cir. 2011) ...................................................................... 13

Joshua A. v. Rocklin Unified Sch. Dist.,
    559 F.3d 1036 (9th Cir. 2009) ............................................................................ 14

Loc. 1814, Intern. Longshoremen's Ass'n, AFL-CIO v. N.Y. Ship. Ass'n, Inc.,
    965 F. 2d 1224 (2d Cir. 1992)............................................................................. 16

M.G. v. N.Y.C. Dep't of Educ.,
    982 F. Supp. 2d 240 (S.D.N.Y. 2013).................................................................. 10

Mackey v. Bd. of Educ. for Arlington Cent. Sch. Dist.,
    386 F.3d 158 (2d Cir. 2004)........................................................................... 11, 12

Marcus I. v. Dep't of Educ.,
    868 F. Supp. 2d 1015 (D. Haw. 2012) aff'd. 506 F. App'x 613 (9th Cir. 2013) ...................... 12

Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.,
    297 F.3d 195 (2d Cir. 2002)................................................................................ 14

N.A.A.C.P., Inc. v. Town of E. Haven,
    70 F.3d 219 (2d Cir. 1995)................................................................................. 16

Pharmaceutical Soc'y of N.Y., Inc. v. N.Y. State Dep't of Soc. Servs.,
    50 F.3d 1168 (2d Cir. 1995)............................................................................... 15

R.S. v. Somerville Bd. of Educ.,
    No. 10 Civ. 4215, 2011 WL 32521 (D.N.J. January 5, 2011) ................................... 11

Sch. Comm. of Burlington v. Dep't of Educ.,
    471 U.S. 359 (1985)......................................................................................... 12

Somoza v. N.Y.C. Dep't of Educ.,
    No. 06 Civ. 5025, 2006 WL 1981758 (S.D.N.Y. July 10, 2006) ............................. 16

Susquenita Sch. Dist. v. Raelee S.,
    96 F.3d 78 (3d Cir. 1996)................................................................................... 12

T.M. v. Cornwall Cent. Sch. Dist.,
    752 F.3d 145 (2d Cir. 2014).......................................................................... 9, 11, 14

T.Y. v. N.Y.C. Dep't of Educ.,
    584 F.3d 412 (2d Cir. 2009)............................................................................... 10

Time Warner Cable of N.Y.C. v. Bloomberg, L.P.,
    118 F.3d 917 (2d Cir. 1997)............................................................................... 19

iii

Zvi D. v. Ambach,
  694 F.2d 904 (2d Cir. 1982)....................................................................................... 10

**Statutes**

20 U.S.C. § 1400 *et seq.*............................................................................................... 2

20 U.S.C. § 1415(i)(2)(C)(iii) ...................................................................................... 14

20 U.S.C. § 1415(j) ............................................................................................... *passim*

20 U.S.C. § 1401(9) ............................................................................................... 14, 19

20 U.S.C. § 1401(26)(A)........................................................................................ 14, 19

29 U.S.C. § 794............................................................................................................. 2

34 C.F.R. § 300.518(a)................................................................................................. 9

42 U.S.C. § 12101........................................................................................................ 2

42 U.S.C. §1983............................................................................................................ 2

**Rules**

Fed. R. Civ. P. 65.................................................................................................... 1, 15

**PRELIMINARY STATEMENT**

Plaintiff Connie Avaras, on behalf of herself, and Ms. Avaras, on behalf of her son A.A., respectfully submit this memorandum of law in support of Plaintiffs' motion for a temporary restraining order and preliminary injunction directing the Defendants to pay for A.A.'s tuition and related services at the New York Military Academy ("NYMA") pursuant to the "stay put" provision of the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. § 1415(j), and Rule 65 of the Federal Rules of Civil Procedure.  As explained below, Defendants must maintain the current educational placement of A.A. at NYMA pending a final resolution of the merits of this case.

**STATEMENT OF FACTS**

A more complete statement of facts relating to Ms. Avaras's ongoing litigation with the Defendants is set forth in the Complaint filed August 3, 2018 and annexed as Exhibit A to the accompanying Declaration of Tai H. Park ("Park Decl.") submitted herewith.  We set forth below a summary of only such facts as are relevant to this motion.

Defendants Clarkstown Central School District and the Board of Education for Clarkstown Central School District (collectively the "District") are a local educational agency ("LEA") within the meaning of the IDEA.  The District is responsible under the IDEA and New York State Education Law for providing a FAPE to A.A. as a New York resident, who has been classified as a child with a disability in need of special education and related services.  Defendant New York State Education Department ("NYSED") is responsible for overseeing the provisions of public education by LEAs in New York State.  Both federal and state laws require that NYSED ensure that students with disabilities are afforded a FAPE.  NYSED, a state educational

1

agency ("SEA") within the meaning of the IDEA, receives federal funding under the IDEA and must comply with the IDEA, the ADA, Section 504 of the Rehabilitation Act, and Section 1983.

A.A. was born on July 17, 2002. He attended the Woodglen Elementary School ("Woodglen"), a school within the District, through fourth grade (school year 2011-2012). A.A. has been diagnosed with attention deficit hyperactivity disorder ("ADHD"), dyslexia, and a learning disability. See Affidavit of Connie Avaras, sworn to August 13, 2018, ("Avaras Aff.") ¶ 7.

Starting in the fall of 2013, Ms. Avaras, on behalf of A.A., challenged the District's failure to provide A.A. with a FAPE by commencing a due process complaint. In 2012 the Parent placed A.A. in a private school, Hawk Meadow Montessori School ("Hawk Meadow"). After the Independent Hearing Officer ("IHO") and State Review Officer ("SRO") denied all of her claims, Ms. Avaras filed suit in this Court in March 2015. See Avaras v. Clarkstown Cent. Sch. Dist., No. 15 Civ. 2042, 2017 WL 3037402 (S.D.N.Y. Jul. 17, 2017). Seeking relief in connection with A.A.'s early school years through 2014/15, the Parent alleged violations of the IDEA, 20 U.S.C. § 1400 *et seq.* The Parent also sought various forms of relief alleging that Defendants' conduct violated Title II of the ADA, 42 U.S.C. § 12101, Section 504 of the RA, 29 U.S.C. § 794, and 42 U.S.C. §1983. See Avaras Aff. ¶ 8.

On July 17, 2017, the District Court issued its Opinion and Order finding, *inter alia*, that A.A. was denied a FAPE in school years 2012/13 and 2013/14 and that A.A.'s unilateral placement at Hawk Meadow was an appropriate alternative for A.A.. The Court remanded the matter to the IHO to determine whether the equities required the District's payment of tuition reimbursement to Ms. Avaras. See Avaras, No. 15 Civ. 2042, 2017 WL 3037402; Avaras Aff. ¶ 9.

The District appealed from the Court's decision, and Ms. Avaras filed a cross-appeal from that portion of the Court's decision dismissing the non-IDEA causes of action. That appeal remains pending.[1]  See Avaras Aff. ¶ 10.

Prior to the summer of 2017, the District had been providing transportation for A.A. to his private placement while the litigation wended its way through the administrative and judicial stages. The last agreed upon placement was established in the 2012 IEP, dated September 28, 2012, as an out-of-District program to meet A.A.'s unique educational needs. See Avaras Aff., Ex. C.  A.A. remained under the "pendency agreement" specifically referred to by the District in its Prior Written Notice ("PWN"), dated September 15, 2014.[2]  See Avaras Aff., Ex. D.  Thus, the District bused A.A. to Hawk Meadow. See Avaras Aff. ¶ 11.

In the meantime, as A.A. finished the 2016/17 school year, he aged out of Hawk Meadow and could not continue there. The District had not informed the Avaras family about plans to offer a public program for him at the District.  Ms. Avaras and A.A. began researching similar and appropriate high school programs for placement to meet his educational needs. They identified NYMA as a potential school suitable for all of A.A.'s needs as well as his post-

---

[1] During the pendency of the appeal, on remand, the IHO again ruled against Ms. Avaras holding that equities favored the District for both school years.  The SRO reversed this determination as to school year 2013/14 but sustained it as to 2012/13.  The District appealed from the SRO's determination as to school year 2013/14 by filing a complaint to this Court, and Ms. Avaras filed an answer and counterclaim challenging the SRO's determination as to school year 2012/13. See No. 18 Civ. 02976; see also No. 18 Civ. 03484.  That litigation is pending.

[2] The District later claimed that this was done as a mere courtesy to the Parent after she commenced the first due process complaint in 2013.  This was demonstrably false.  The IEP issued by the District dated September 28, 2012, unquestionably demonstrates that the District had agreed to transportation to Hawk Meadow one year before any litigation even arose, but they then abruptly revoked it in September 2013, just like now as a bargaining chip, to be allowed only if Ms. Avaras agreed to forgo tuition reimbursement and due process. See Avaras Aff., Ex. C.  But in March 2014, they were forced to resume transportation to Hawk Meadow pursuant to the Pendency Order issued by an IHO for Ms. Avaras's younger son.

3

secondary interests and goals.  Among other things, they were especially drawn to the regimented schedule that reportedly helped children with attention deficits focus and learn more productively.  See Avaras Aff. ¶ 12.

Because the Avaras family did not have the financial resources to pay for the full-time program that included room and board during the school year, if A.A. attended the school, he would have to live at home and be bused to and from the school each day.  The distance between his home and NYMA is 28 miles.  The distance from his home to Hawk Meadow, where the District had regularly bused A.A., was 48 miles.  See Avaras Aff. ¶ 13

Ms. Avaras contacted the District by phone to notify them that A.A. had aged out of Hawk Meadow and may be attending NYMA and asked for confirmation that the District would continue to provide busing to that new location as they had to Hawk Meadow in previous years.  On July 17, 2017, she followed up with an email to David Carlson, Director of the Committee on Special Education and Supervisor of Pupil Services.  See Avaras Aff., Ex. E.  Mr. Carlson, of course, was fully familiar with the history of the District's evaluations of A.A. and his disability, as he had approved the similarity of Hawk Meadow's program for the related service of transportation.  See Avaras Aff. ¶ 14.

Mr. Carlson responded by informing Ms. Avaras that he had approved continuation of busing for A.A. to NYMA.  His written confirmation was contained in an email to Ms. Avaras dated July 25, 2017.  See Avaras Aff., Ex. E.  Specifically, Mr. Carlson stated that he "let transportation know to go forward with scheduling busing" for A.A. to the new location.  Id.  Based on this communication, Ms. Avaras began working on A.A.'s acceptance to NYMA.  Upon acceptance, among other things, the Avaras family paid for A.A.'s uniform.  See Avaras Aff. ¶ 15.

4

In the meantime, the transportation department at the District and a representative of NYMA began working together on the details of A.A.'s busing.  Thus, for example, on July 31st, Christina Canary, NYMA's Admissions Coordinator responded to a question from Maggie Gleeson, the District's Transportation Dispatcher, regarding the school's instructional hours in scheduling A.A.'s morning and afternoon pick up times for NYMA.  See Avaras Aff., Ex. F. The two communicated again on August 2nd confirming that A.A.'s afternoon physical education was mandatory.  See id.; Avaras Aff. ¶ 16.

Ms. Avaras signed the final NYMA paperwork on August 21st, and A.A. began attending NYMA that day, pursuant to its normal orientation curriculum for new students.  As per the school's regulations, A.A. remained in NYMA's boarding program for the duration of that orientation program.  His need for regular busing from home to school was now scheduled to commence on September 25, 2017.  A.A. quickly acclimated to NYMA's program during that orientation session.  He was highly enthusiastic about his new environment.  See Avaras Aff. ¶ 17.

On August 31, 2017, however, 10 days after A.A. began at NYMA, as described in the Complaint (Park Decl., Ex. A ¶¶ 54-78) the District retaliated against Ms. Avaras and A.A. after she met with representatives from the District about the ongoing federal litigation.  The District revoked the transportation decision without any warning.  See id.; Avaras Aff. ¶ 18.

On October 4, 2017, Plaintiff through Counsel filed a second due process complaint concerning A.A. against the District and requested an impartial hearing.  Plaintiff sought an expedited hearing for an order to enforce pendency law and an order from the IHO requiring, among other relief: (1)  the District to reimburse the Parent for the cost of A.A.'s tuition at Hawk Meadow for the school years 2014/15, 2015/16, and 2016/17; (2) the District to pay tuition for

5

A.A.'s attendance at NYMA for 2017/18 through high school graduation; and (3) the District to pay reimbursement for boarding costs incurred from September 2018 forward, as A.A's current stay-put placement, due to its refusal to provide his pre-existing related service of transportation. See Avaras Aff. ¶ 19.

A hearing was held before IHO George Kandilakis and testimony taken over the course of six days: October 31, 2017, November 6, 2017, November 8, 2017, November 15, 2017, November 29, 2017, and December 5, 2017. The Parent called seven witnesses to testify, including herself and A.A. The District also called seven witnesses. The testimony described in detail the deficiencies with the District's program and the appropriateness of the alternative placements. See Park Decl., Ex. A. ¶¶ 104-113, 126, 131-136. Hawk Meadow's program targeted A.A.'s individualized needs. See Avaras Aff., Ex. G. The instruction was essentially differentiated with each child, including A.A., working at his own pace. See id. Ms. Castle, the director of Hawk Meadow who had frequent observations of A.A.'s performance summed up his progress in all areas. See id. When A.A. began at Hawk Meadow, he had been at a lower to mid-second grade reading level. See id. "Probably 2 to 3 years below grade level reading in 2012," but when he left in June 2017, "I would say that he was at grade level." See id. His scores increased 45 points from one year to the next in language arts. See id. And his achievements were not just academic: the Hawk Meadow program repaired and began to heal his self-esteem and social confidence. See id.; Avaras Aff. ¶ 20.

The testimony also demonstrated that NYMA's program enabled A.A. to thrive academically and socially during the 2017/18 school year. Every single witness to testify to its program supported this conclusion. Maria Reeves, Dean of Academics at NYMA, testified about both the individualized educational program at NYMA, as well as A.A.'s progress to date. See

6

Avaras Aff., Ex. H.  She explained that NYMA approaches "each student individually."  See id. Efforts to address specific deficiencies or weaknesses included daily tutoring, "so if he did have any academic needs that they would be addressed."  See id.  The school provides academic advisors to all students, and students meet with them daily in a "tutorial period."  See id.  A.A. attended a Spanish class that was suited to his level.  See id.  In Algebra, his teacher determined that he needed additional support so "they created another section to her roster of classes."  See id.  He met with a biology teacher twice a week for extra help, a history teacher once a week, and his adviser once a week.  See id.  He also received supervised study hall on a one-on-one basis, and an extended study tutorial 7-9 pm each evening.  See id.; Avaras Aff. ¶ 21.

Ms. Reeves also described A.A.'s social and emotional adjustment to NYMA. Significantly, A.A. was the only freshman promoted to corporal and was a squad leader.  See Avaras Aff., Ex. H.  She referred to him as "a stand out."  See id.  He was selected to be a school ambassador through the admissions department, meeting new prospective students and their parents.  See id.  He was also selected to be on the honor board, which considers students brought up on disciplinary matters.  See id.  Ms. Reeves did not hesitate in her conclusion that NYMA's program provides A.A. with an appropriate education.  See id.; Avaras Aff. ¶ 22.

Dr. Braniecki, A.A.'s neuropsychologist and expert witness, also testified that based on her knowledge of A.A.'s learning disability and ADHD, as well as her recent meeting with him, A.A.'s adjustment to NYMA was "very positive" and that his current placement "appears to be an appropriate placement for him."  See Avaras Aff., Ex. I.  She further noted that it would not be in his best interest to change schools.  See id.  Also in the record was the opinion of A.A's pediatrician, Dr. Satran, who commented on the benefits of NYMA's educational program for A.A.'s diagnoses.  See Avaras Aff., Ex. J; Avaras Aff. ¶ 23.

Finally, A.A. testified to his own progress at NYMA.  See Avaras Aff., Ex. K.  With maturity and poise beyond his years, A.A. calmly described the extreme difficulty he had experienced while in the public school district where he was stigmatized and bullied because of his learning disability; he described how his learning advanced dramatically through his experience at Hawk Meadow and, finally, how happy he was at NYMA.  See id.  He described his progress there in simple, clear terms.  See Avaras Aff. ¶ 24.

Despite this record of evidence, the IHO refused to consider the Parent's request for an expedited order of pendency relief and summarily denied all claims as to each of the school years for which relief was sought, virtually ignoring any evidence or legal arguments presented by the Parent.  As described in the Complaint, an appeal to the SRO also proved pointless.  See Park Decl., Ex. A ¶¶ 141-156.  He rejected the appeal on the basis of less than a 10-hour delay in filing the appeal, ignoring unrebutted evidence that the delay occurred because a process server Ms. Avaras's counsel had used inexplicably failed to serve papers on the day they were given the papers, and instead waited until the following morning.  See id.; Avaras Aff. ¶ 26.

This litigation ensued when Ms. Avaras filed the underlying Complaint on August 3, 2018.  See Avaras Aff. ¶ 27.

In the meantime, A.A. completed his 2017/18 school year at NYMA.  His report card objectively demonstrates his progress there.  See Avaras Aff., Ex. A.  A.A. achieved solid marks across all of his classes and did particularly well in core subjects, like English and math.  See id.; Avaras Aff. ¶ 25.

## ARGUMENT

## POINT I

## THE DEFENDANTS SHOULD BE ORDERED TO PAY FOR FULL TUITION AND RELATED COSTS OF CURRENT PLACEMENT AT NYMA PURSUANT TO THE LAW OF PENDENCY AND STAY PUT.

### A.  Governing Law

One of IDEA's most basic procedural rights is its pendency provision, which provides the absolute right for a child to "stay put" pending administrative and judicial proceedings brought under the Act.  The statute provides, in relevant part:

> [D]uring the pendency of any proceedings conducted pursuant to this section, unless the State or [school district] and the parents otherwise agree, the child shall remain in the then-current educational placement of the child.

20 U.S.C. § 1415(j); see also 34 C.F.R. § 300.518(a).  "The purpose of the pendency provision is to provide stability and consistency in the education of a student with a disability." Arlington Cent. Sch. Dist. v. L.P., 421 F. Supp. 2d 692, 696 (S.D.N.Y.2006) (citing Honig v. Doe, 484 U.S. 305 (1988)).  The statutory language is "unequivocal" and "means what it says," clearly stating that " 'the child *shall* remain in the then-current educational placement.' " Honig, 484 U.S. at 323, 325 (quoting 20 U.S.C. § 1415(j)) (emphasis in original).  As the Second Circuit has explained, 20 U.S.C. § 1415(j) "reflects Congress's decision that all disabled children should keep their existing educational program until any dispute over their placement" is fully and finally resolved.  T.M. v. Cornwall Cent. Sch. Dist., 752 F.3d 145, 170-71 (2d Cir. 2014)

The intention behind the pendency provision was to ensure that, if a dispute arose, a student with a disability would continue to receive services from his or her school during the dispute.  Pendency was intended "to strip schools of the unilateral authority that they had

9

traditionally employed to exclude disabled students . . . from school." Drinker v. Colonial Sch. Dist., 78 F.3d 859, 864 (3d Cir. 1996).

Accordingly, "stay put" functions as an automatic injunction, substituting "an absolute rule in favor of the status quo for the court's discretionary consideration of the factors of irreparable harm and either a likelihood of success on the merits or a fair ground for litigation and a balance of hardships." Zvi D. v. Ambach, 694 F.2d 904, 906 (2d Cir. 1982); M.G. v. N.Y.C. Dep't of Educ., 982 F. Supp. 2d 240, 247 (S.D.N.Y. 2013) ("[E]nforcement of IDEA's pendency provision is automatic and does not require a showing of" factors necessary for a temporary restraining order or preliminary injunction.).

"Placement" has an idiomatic meaning within the context of the IDEA, referring to the general contours of a student's special education program and not the literal "placement" of a student within a school building. T.Y. v. N.Y.C. Dep't of Educ., 584 F.3d 412, 419 (2d Cir. 2009). Thus, a student's pendency placement under "stay-put" refers to programs and services and not a physical location. See Concerned Parents & Citizens for the Continuing Educ. at Malcom X (PS 79) v. N.Y.C Bd. of Educ., 629 F.2d 751, 753, 756 (2d Cir. 1980).

The question then becomes, what is a child's "then-current placement" for the purpose of determining which programs and services the District is obligated to provide until the dispute between the parties is finally resolved. See M.G., 982 F. Supp. 2d at 247 ("Because this Court's enforcement of IDEA's pendency provision is automatic . . . all that remains is for me to determine what [the child's] current educational placement is.") (citations and quotations omitted).

To determine a child's "then-current educational placement," a court typically looks to: (1) "the placement described in the child's most recently implemented IEP"; (2) "the operative

placement actually functioning at the time when the stay put provision of the IDEA was invoked"; or (3) "the placement at the time of the previously implemented IEP." Doe v. E. Lyme Bd. of Educ., 790 F.3d 440, 452 (2d Cir. 2015) (citations omitted). Stay-put protection can be triggered upon the filing of a due process complaint. Id. at 455-56.

And pendency placements can change during the course of prolonged litigation. They can change: (1) by agreement of the parties; (2) by an unappealed decision of an administrative officer; or (3) by determination by a court on appeal from an SRO's decision. See Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz, 290 F.3d 476, 484 (2d Cir. 2002); Bd. of Educ. of the Pine Plains Cent. Sch. Dist. v. Engwiller, 170 F. Supp. 2d 410, 415 (S.D.N.Y. 2001).

During these placement changes, while the litigation is pending, the automatic injunction may extend for a number of years. "The fact that school years come and go while the litigation is pending . . . does not obviate the injunctive effect of the stay put provision." R.S. v. Somerville Bd. of Educ., No. 10 Civ. 4215, 2011 WL 32521, at *11 (D.N.J. January 5, 2011). As the Second Circuit has said again and again, stay-put extends "until the dispute with regard to their placement is ultimately resolved," no matter how long that takes. Doe, 790 F.3d at 452 (quotations and citations omitted); Mackey v. Bd. of Educ. for Arlington Cent. Sch. Dist., 386 F.3d 158, 161 (2d Cir. 2004) (quotations and citations omitted); see also T.M., 752 F.3d at 171 (stay-put continues "until the relevant administrative and judicial proceedings are complete"); Schutz, 290 F.3d at 484.

### B.  A.A.'s Pendency Entitlement During the Instant Litigation

As described in the Complaint, Ms. Avaras is entitled to tuition reimbursement for A.A.'s attendance at Hawk Meadow during the pendency of her first due process complaint, filed in the fall of 2013. See Park Decl., Ex. A ¶¶ 83-91, 92-95, 123.

11

But, as relevant to this motion for a TRO and preliminary injunction, the stay put protections were also triggered in 2017 by three separate events. The first event was this Court's decision on July 17, 2017. An administrative or judicial decision that a unilateral placement was appropriate constitutes a constructive "agreement" between the parties that the private school is a student's pendency placement. See Schutz, 290 F.3d at 484; Susquenita Sch. Dist. v. Raelee S., 96 F.3d 78, 83-84 (3d Cir. 1996); Clovis Unified Sch. Dist. v. Cal. Office of Admin. Hearings, 903 F.2d 635, 641 (9th Cir. 1990); Marcus I. v. Dep't of Educ., 868 F. Supp. 2d 1015, 1019 (D. Haw. 2012) aff'd. 506 F. App'x 613 (9th Cir. 2013); City Sch. Dist. of the City of Buffalo v. Darlene S., No. 05 Civ. 0572E, 2006 WL 287871, at *3 (W.D.N.Y. Feb. 6, 2006).

The Court's decision in July 2017 unequivocally concluded that for both 2012/13 and 2013/14, the District had failed to offer FAPE and that Hawk Meadow was an appropriate alternative placement. If a parent unilaterally places her child in a private school, initiates a due process action, and obtains a favorable ruling, that ruling constitutes an implicit "agreement" by the State to move the child to the private school. Sch. Comm. of Burlington v. Dep't of Educ., 471 U.S. 359, 372-74 (1985). Such an agreement obligates the District to provide interim financial support. See Mackey, 386 F.3d at 161-62; Schutz, 290 F.3d at 485 ("once the parents' challenge succeeds . . . consent to the private placement is implied by law, and the requirements of § 1415(j) become the responsibility of the school district").

The second event was the District's agreement to bus A.A. to NYMA. The Court's decision was issued between A.A.'s 2016/17 school year at Hawk Meadow and the 2017/18 school year. A.A. had just aged-out of Hawk Meadow in June 2017. Plaintiffs, having not yet received an IEP from the District, began exploring alternative nonpublic options for A.A. See Avaras Aff. ¶ 12. They selected NYMA as an appropriate school that provided a program and

12

services that met his educational needs. See id. Ms. Avaras had not yet signed a contract with NYMA when this Court's decision came down. She had, however, already requested confirmation of transportation from the District, in line with what A.A. had received during the prior pendency of the proceeding to Hawk Meadow. See id. at ¶¶ 14-16. She learned of the Court's decision within days of her request for transportation. Ms. Avaras then received written confirmation from the Director of CSE for the District, Mr. David Carlson, that busing would be provided to NYMA. See Avaras Aff., Ex. E; Avaras Aff. ¶ 15. After the Court's order was issued, District representatives then communicated with the Admissions Coordinator at NYMA to schedule the specific hours of transportation. See Avaras Aff., Ex. F; Avaras Aff. ¶ 16.

As described in detail in the Complaint, the District subsequently revoked transportation to NYMA upon learning that the Parent had filed a cross-appeal in response to the District's appeal of Judge Roman's decision. See Park Decl., Ex. A ¶¶ 54-78; Avaras Aff. ¶ 18. But prior to the District's retaliatory conduct, the parties clearly agreed to NYMA as A.A.'s new placement for the 2017-18 school year. See Avaras Aff., Exs. E, F.

Third and perhaps most importantly, the Parent's filing of the second due process complaint on October 4, 2017, was another and independent event that triggered stay put protections at NYMA. By that date, A.A. was acclimated in the full-time program as a boarding student at NYMA. See Dervishi v. Stamford Bd. of Educ., 653 F. App'x 55 57-58 (2d Cir. 2016) (current placement is "operative placement actually at the time when the due process proceeding was commenced"); see also J.E. v. Boyertown Area Sch. Dist., 452 F. App'x 172, 176 (3d Cir. 2011) (finding unilateral placement without district consent to be "current educational placement" for stay put). As such, A.A.'s "then-current" placement is the boarding program at NYMA.

13

A.A. is now about to commence a new school year at NYMA.  The due process complaint Ms. Avaras filed in October 2017 continues to be litigated before this Court.  Consequently, the stay put protections remain in full force and effect for the upcoming school year.

The IDEA defines "free appropriate public education" to include "special education and related services," 20 U.S.C. § 1401(9) (emphasis added); and the term "related services" is defined to include transportation.  See 20 U.S.C. § 1401(26)(A).  The Second Circuit has specifically applied the stay-put provision to requests for related services.  Doe, 790 F. 3d at 452; see also T.M., 752 F.3d at 151; 20 U.S.C. § 1415(i)(2)(C)(iii) (court "shall grant such relief as the court determines is appropriate").  Accordingly, the District should be ordered to provide Ms. Avaras with tuition as well as related transportation to NYMA.

## C.  Expedited Relief Is Warranted to Enforce Stay Put Rights

A.A. is entitled to expedited relief in order to enforce his stay put rights.  The Second Circuit has stated that "access to immediate interim relief is essential for the vindication of this particular IDEA right" - the right to maintain a stay-put placement.  Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ., 297 F.3d 195, 200 (2d Cir. 2002) (citations omitted).  In Murphy, the Second Circuit noted that "[i]f the child is ejected from his or her current educational placement while the administrative process sorts out where the proper interim placement should be, then the deprivation [of educational rights] is complete." Id. at 199.  "The purpose of the pendency provision is to provide stability and consistency in the education of a student with a disability." L.P., 421 F. Supp. 2d at 696 (citing Honig, 484 U.S. 305 (1988)); see Joshua A. v. Rocklin Unified Sch. Dist., 559 F.3d 1036, 1040 (9th Cir. 2009) ("[T]he stay put provision acts as a

14

powerful protective measure to prevent disruption to the child's education throughout the dispute process.").

As such, Plaintiffs respectfully request immediate equitable relief in the form of an order to the District to pay for A.A.'s current boarding tuition at NYMA and limited transportation to and from the school during the pendency of the instant litigation.

Finally, Plaintiffs respectfully submit that no security should be required pursuant to Federal Rule of Civil Procedure 65(c), as the Parent is proceeding *in forma pauperis* and the undersigned counsel is engaged *pro bono*.  See Cosgrove v. Bd. of Educ. of Niskayuna Cent. Sch. Dist., 175 F. Supp. 2d 375, 399 (N.D.N.Y 2001) ("It would seem incongruous that parents would have to secure the costs of the remedy for the *free* education that their child was deprived.") (emphasis in original).   Moreover, this case advances an important public interest, "namely, the compliance of a school district with the mandates of the IDEA, a vital statute for the education of disabled students in our society." Id.  As such, a security bond should be excused.  See Pharmaceutical Soc'y of N.Y., Inc. v. N.Y. State Dep't of Soc. Servs., 50 F.3d 1168, 1174-75 (2d Cir. 1995) (bond not required where action involved important public interest).

## POINT II

### PLAINTIFFS ALSO SATISFY THE TRADITIONAL FACTORS FOR A PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER.

In addition to the automatic preliminary injunction that Plaintiffs are entitled to under the IDEA, 20 U.S.C. § 1415(j), Plaintiffs' motion should also be granted because they satisfy the traditional factors for a preliminary injunction and temporary restraining order.  To obtain a preliminary injunction or temporary restraining order, a party must demonstrate: "(1) irreparable harm should the injunction not be granted, and (2) either (a) a likelihood of success on the

15

merits, or (b) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking injunctive relief." N.A.A.C.P., Inc. v. Town of E. Haven, 70 F.3d 219, 223 (2d Cir. 1995) (quotations and citations omitted); see Loc. 1814, Intern. Longshoremen's Ass'n, AFL-CIO v. N.Y. Ship. Ass'n, Inc., 965 F. 2d 1224, 1228 (2d Cir. 1992) (The "standards which govern consideration of an application for a temporary restraining order [] are the same standards as those which govern a preliminary injunction.").

## A.  A.A. Will Be Irreparably Harmed if His Educational Placement at NYMA Is Terminated.

The Second Circuit has noted that "the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." Bell & Howell: Mamiya Co. v. Masel Supply Co., 719 F.2d 42, 45 (2d Cir. 1983) (quotations and citations omitted).   As one court has phrased it, "It is almost beyond dispute that wrongful discontinuation of a special education program to which a student is entitled subjects that student to actual irreparable harm." Cosgrove, 175 F. Supp. 2d at 392 (citations omitted).  Moreover, "education is an on-going continuum which, when broken through interruption, can cause significant setbacks . . . ." Id. at 393; see Somoza v. N.Y.C. Dep't of Educ., No. 06 Civ. 5025, 2006 WL 1981758, at *5 (S.D.N.Y. July 10, 2006) (preliminary injunction granted where termination of program would cause student to rapidly and dramatically regress in a number of critical areas).

A.A. would suffer irreparable harm if his placement at NYMA was terminated, and he would lose the skills he has progressively gained through Hawk Meadow's and NYMA's respective programs.  NYMA's regimented schedule helps children like A.A., who have

16

attention deficits, learn more productively. See Avaras Aff. ¶ 12. A.A's proven success within NYMA's leadership program has had a profound effect on his emotional well-being and academic performance. See Avaras Aff., Ex. H; Avaras Aff. ¶¶ 21-22. Importantly, Dr. Susan Braniecki, A.A.'s neuropsychologist and expert witness, testified that it would not be in A.A.'s best interest to change schools. See Avaras Aff., Ex. I; Avaras Aff. ¶ 23. She further testified that, based on her knowledge of A.A.'s learning disability and ADHD, as well as her recent meeting with him, A.A.'s adjustment to NYMA was "very positive." See id. Also in the record was the opinion of A.A's pediatrician, Dr. Satran, who commented on the benefits of NYMA's educational program for A.A.'s diagnoses. See Avaras Aff., Ex. J; Avaras Aff. ¶ 23.

Maria Reeves, Dean of Academics at NYMA, testified as to A.A.'s progress reports, which demonstrated his growth as a student. See Avaras Aff., Ex. H; Avaras Aff. ¶¶ 21-22. She described A.A.'s significant social and emotional adjustment to NYMA as well, reporting that A.A. was the only freshman promoted to corporal and was a squad leader. See id. She referred to him as "a stand out." See id. A.A. also testified to his own progress at NYMA. See Avaras Aff., Ex. K; Avaras Aff. ¶ 24. A.A. calmly described the extreme difficulty he had experienced while in the public school district where he felt stigmatized and bullied because of his learning disability; he described how his learning advanced dramatically through his experience at Hawk Meadow and, finally, how happy he was at NYMA. See id.

Moreover, as his report card from 2017/18 reflects, A.A. achieved very solid marks in all classes at NYMA. See Avaras Aff., Ex. A; Avaras Aff. ¶ 25. The report card demonstrates beyond dispute the success of NYMA's program for A.A. See id. While the District has continued to fail in its obligations under the IDEA year after year, A.A. has gained the critical skills necessary to succeed as a student with a learning disability through his placements at Hawk

17

Meadow and NYMA. Failure to maintain A.A.'s current placement at NYMA will undo the significant progress he has made and will cause irreparable harm.

### B. Plaintiffs are likely to succeed on the merits.

Plaintiffs are also likely to succeed on the merits of this case because the law of pendency and stay put, discussed in Section I supra, is well established and clear. Moreover, the IHO and SRO wholly disregarded Plaintiffs' plea for expedited pendency relief, all of the Parent's evidence, and the substantial legal arguments advanced by the Parent. As discussed at length in the Complaint, each of the District's IEPs for the school years at issue were procedurally and substantively deficient. See Park Decl., Ex. A ¶¶ 96-103, 124-125, 129-130. The Defendants failed to offer A.A. a FAPE and subjected A.A. to discrimination based upon his disability. Hawk Meadow continued to be an appropriate placement, providing A.A. with a fully inclusive, yet completely individualized educational environment. See Park Decl., Ex. A ¶¶ 104-113, 126; Avaras Aff. ¶ 20. Similarly, NYMA was an appropriate placement that provided a fully inclusive, individualized, and regimented educational program with one-on-one services and nightly tutoring. See Park Decl., Ex. A ¶¶ 131-136; Avaras Aff. ¶¶ 21-22. Every witness to testify to its program supported this conclusion. The IHO and SRO ignored all of this evidence.

### C. The Balance of Hardships Weighs Decidedly in Plaintiffs' Favor

In addition to Plaintiffs' likelihood of success on the merits of their claims, the balance of equities decidedly tips in favor of issuing a preliminary injunction and temporary restraining order. "[G]iven Congress' clear intention to maintain the educational placement of children during the appeals process via the mandate of Section 1415(j), the 'Stay Put' provision will be upheld even if it imposes significant financial burden on the states and school districts that participate in IDEA." Cosgrove, 175 F. Supp. 2d at 395 (citations omitted). Further, "whenever

a request for a preliminary injunction implicates public interests, a court should give some consideration to the balance of such interests in deciding whether a plaintiff's threatened irreparable injury and probability of success on the merits warrants injunctive relief." Time Warner Cable of N.Y.C. v. Bloomberg, L.P., 118 F.3d 917, 929 (2d Cir. 1997) (citations omitted).

Defendants have no cognizable interest to balance against Plaintiffs. New York state has agreed to accept federal funding on the express condition that it will comply with the mandates of the IDEA and provide each disabled child with "special education and related services." 20 U.S.C. § 1401(9); see also 20 U.S.C. § 1401(26)(A) ("related services" is defined to include transportation.). As this Court found, the District's programming was deficient in 2012/13and 2013/14 in violation of the IDEA. The District ignored the Court's findings and continued to offer deficient educational programming during the years at issue in this case. A.A. is consequently entitled by law to receive now what he should have previously received from the Defendants. See Cosgrove, 175 F. Supp. 2d at 395 ("If the school district had complied with the IDEA . . . it would have incurred the same expenses then that it will incur now. In this sense, the District is the author of this chapter in [the student's] education so it can hardly be said that the balance tips in the District's favor.") (citations omitted). Further, the enforcement of state and federal special education law by way of an injunction is in the public interest, as it promotes the purpose of the IDEA and prevents unilateral action by districts to the detriment of students. The interests of the Plaintiffs, and of the public generally, weigh heavily in favor of granting the injunctive relief sought.

19

## CONCLUSION

For the foregoing reasons, Plaintiffs request that this Court immediately issue a temporary restraining order and preliminary injunction requiring the Defendants to maintain the current educational placement of A.A. at NYMA by providing tuition and transportation to NYMA during the pendency of this case pursuant to 20 U.S.C. § 1415(j), and grant such other and further relief as may be appropriate.

Dated: August 13, 2018
      New York, New York

                      Respectfully submitted,

                      PARK JENSEN BENNETT, LLP

By: _____
                  Tai H. Park

                  *Attorney for the Plaintiffs*

                  40 Wall Street, 41st Floor
                  New York, NY 10005
                  Ph: 646-200-6310
                  Email: tpark@parkjensen.com

20