UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

Connie Avaras, individually and on behalf of   :
her minor child, A.A.,

                Plaintiffs,   :

      -against-   :

                        CASE NO. 18-CV-6964 (NSR)

Clarkstown Central School District, the Board   :
of Education for Clarkstown Central School
District, and the New York State Education   :
Department

             Defendants.   :

------------------------------------------------------------x

## PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Tai H. Park
PARK JENSEN BENNETT LLP
*Attorney for the Plaintiffs*
40 Wall Street, 41st Floor
New York, NY 10005
Ph: 646-200-6310
Email: tpark@parkjensen.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ........................................................................................................................... 1

    I.      LAW OF PENDENCY REQUIRES GRANT OF AUTOMATIC INJUNCTION ...... 1

    II.     PLAINTIFFS SATISFY PRELIMINARY INJUNCTION STANDARDS ................. 8

## TABLE OF AUTHORITIES

**Cases**

Appeal of a Student with a Disability, by his parents, from Action of the Bd. of Educ. of the
    Herricks Union Free Sch. Dist. Regarding Transportation,
48 Ed. Dep't Rep., Decision No. 15, 837 (Oct. 7, 2008) ................................................................. 5

A.W. v. Bd. of Educ. Walkill Central Sch. Dist,
2015 U.S. Dist. LEXIS 6822 (N.D.N.Y. 2015) ........................................................................... 4

Bd. of Educ. of Pawling Central School Dist. v. Schutz,
290 F.3d 476 (2d Cir. 2002).......................................................................................................... 9

Cosgrove v. Bd. of Educ. of Nisakyuna Cent. Sch. Dist.,
175 F. Supp. 2d 375 (N.D.N.Y. 2001)......................................................................................... 2

Dervishi v. Stamford Bd. of Educ.,
653 F. App'x 55 (2d Cir. 2016) ........................................................................................... 2, 3, 7

Doe v. E. Lyme Bd. of Educ.,
790 F.3d 440 (2d Cir. 2015).................................................................................................. 2, 7, 9

Drinker v. Colonial Sch. Dist.,
78 F.3d 859 (3d Cir. 1996)............................................................................................................ 2

Frank G. v. Bd. of Educ. of Hyde Park,
459 F.3d 356 (2d Cir. 2006).......................................................................................................... 9

Gabel v. Bd. of Educ. of Hyde Park Cent. Sch. Dist.,
368 F. Supp. 2d 313 (S.D.N.Y. 2005).......................................................................................... 6

J.E. v. Boyertown Area Sch. Dist.,
452 Fed. App'x 172 (3d Cir. 2011)............................................................................................... 3

J.G. ex rel. N.G. v. Kiryas Joel Union Free Sch. Dist.,
777 F. Supp. 2d 606 (S.D.N.Y. 2011)........................................................................................... 3

Johnson v. Special Educ. Hearing Office,
287 F.3d 1176 (9th Cir. 2002) ...................................................................................................... 3

M.G. v. N.Y.C. Dep't of Educ.,
982 F. Supp. 2d 240 (S.D.N.Y. 2013)........................................................................................... 2

Mackey ex rel. Thomas M. v. Bd. of Educ. for Arlington Cent. Sch. Dist.,
386 F.3d 158 (2d Cir. 2004)................................................................................................. 2, 3, 7

Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.,
297 F.3d 195 (2d Cir. 2002).................................................................................................... 2, 7

Sch. Comm. of Burlington v. Dep't of Educ.,
471 U.S. 359 (1985)............................................................................................................... 4, 7

Thomas v. Cincinnati Bd. of Educ.,
618 F.2d 625 (6th Cir. 1990) ................................................................................................. 3

**Statutes**

20 U.S.C. § 1415(j)................................................................................................................. 7

Education Law § 3635(2)......................................................................................................... 5

## PRELIMINARY STATEMENT

Plaintiffs' motion relies primarily on the plain terms of the IDEA[1] and its pendency and stay put requirements, as construed and uniformly enforced by the Second Circuit.  Yet the District Defendants submit an opposition brief and affirmation of the District's outside counsel, Carole Melnick, Esq. ("Melnick Aff."), riddled with irrelevant and factually inaccurate details that obscure the issues before the Court.  The District's opposition fails, and the injunction should issue.[2]

## ARGUMENT

### I.    LAW OF PENDENCY REQUIRES GRANT OF AUTOMATIC INJUNCTION

The District's opposition brief recites much of the same pendency law cited by Plaintiffs in the opening brief.  There is thus no dispute that IDEA's pendency provision provides the absolute right for a child to "stay put" pending administrative and judicial proceedings brought under the Act.  See Pl. Br. at 9-11; District Opp. Br. at 2-3.  What the District disagrees with, however, is what school or placement constitutes the "current placement."

---

[1] The defined terms used herein are the same as those in Plaintiffs' opening brief, dated August 14, 2018.

[2] While Defendant State Education Department argues that it is neither a necessary nor appropriate party to this motion because Plaintiffs can receive all relief from the District (see SED brief in opposition), suffice to say for now that District Defendants have claimed that Plaintiffs failed to exhaust administrative remedies.  District Opp. Br. at 3-6.  The basis for this claim is that the SED's employee, the SRO, dismissed Plaintiffs' appeal from the IHO's adverse decision on the grounds that it was filed one day late.  See Compl. at ¶¶ 141-156.  Defendants would put Plaintiffs in a catch-22: Only the District and not the State should be responsible, but the District cannot be responsible because of the State's rejection of an administrative appeal. The Court should not countenance such tactics.

On this point, as relevant to the instant case, the law is clear: placement is where the child is going at the time a due process complaint is commenced. See Dervishi v. Stamford Bd. of Educ., 653 F. App'x 55 57-58 (2d Cir. 2016). A.A. attended NYMA when the most recent due process complaint was filed in October 2017. Thus, as a matter of law, the District is required to maintain A.A. at NYMA. [3]

The Dervishi Court's holding is consistent with uniform Second Circuit law. It relied upon Mackey ex rel. Thomas M. v. Board of Education for Arlington Central School District, 386 F.3d 158, 163 (2d Cir. 2004), wherein the Court cited with approval the Third Circuit's holding that "then current educational placement" meant " 'the operative placement actually functioning at the time . . . when the stay put provision of the IDEA was invoked.' " Drinker v. Colonial Sch. Dist., 78 F.3d 859, 867 (3d Cir. 1996). Since Mackey, Courts have repeatedly adopted this definition. See Doe v. E. Lyme Bd. of Educ., 790 F.3d 440, 445, 452 (2d Cir. 2015) ("then-current educational placement" is "the operative placement at the time when the stay put provision of the IDEA was invoked." Going on to hold that "an educational agency's obligation

---

[3] For this reason, the District's claim that the Court lacks subject matter jurisdiction because Plaintiffs did not exhaust administrative remedies, is legally incorrect: stay put motions do not require exhaustion. " '[A]n action alleging violation of the stay-put provision falls within one, if not more, of the enumerated exceptions to' the IDEA's exhaustion requirement." Doe, 790 F.3d at 455 (quoting Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ., 297 F.3d 195, 199 (2d Cir. 2002); M.G. v. N.Y.C. Dep't of Educ., 982 F. Supp. 2d 240, 247 (S.D.N.Y. 2013) ("A party seeking a judicial remedy for a violation of the stay-put provision need not exhaust its administrative remedies.") (citation omitted); Cosgrove v. Bd. of Educ. of Nisakyuna Cent. Sch. Dist., 175 F. Supp. 2d 375, 384 (N.D.N.Y. 2001) ("Courts have held that parents seeking to invoke the stay-put provision of the IDEA need not exhaust their administrative remedies."). Moreover, the District's assertions are factually inaccurate. The Complaint details the extensive efforts by Plaintiffs to exhaust every administrative remedy. The SRO made the arbitrary and biased decision to reject Plaintiffs' appeal because of an inadvertent and minor delay in filing wholly outside the control of Plaintiffs. See Compl. at ¶¶ 141-156.

to maintain stay-put placement is triggered when an administrative due process proceeding is initiated, not when an impasse is reached."); J.G. ex rel. N.G. v. Kiryas Joel Union Free Sch. Dist., 777 F. Supp. 2d 606, 642-43 (S.D.N.Y. 2011) ("then-current educational placement" is "the operative placement at the time when the stay put provision of the IDEA was invoked;" and pendency were triggered "when they filed the due process demand notice").

The District ignores the key language in Dervishi and attempts to sweep the case aside on the grounds that the school district there had, at one stage of the protracted litigation, previously agreed to the placement. District Opp. Br. at 18-19. But that fact ignores the "actually functioning" prong of Mackey. The Courts recognize that there are different ways in which current placement can be determined. In Mackey, the Second Circuit noted three different ways:

> Although the IDEA does not define, and our Circuit has not previously considered the meaning of, the term 'then current educational placement,' our sister circuits have interpreted the term to mean: (1) 'typically the placement described in the child's most recently implemented IEP,' Johnson v. Special Educ. Hearing Office, 287 F.3d 1176 (9th Cir. 2002); (2) 'the operative placement actually functioning at the time . . . when the stay put provision of the IDEA was invoked,' Drinker v. Colonial Sch. Dist., 78 F.3d 859, 867 (3d Cir. 1996); and (3) '[the placement at the time of] the previously implemented IEP,' Thomas v. Cincinnati Bd. of Educ., 618 F.2d 625 (6th Cir. 1990).

Mackey, 386 F.3d at 163. In short, the operative placement actually functioning at the time is just one of three ways for determining "current placement," with placement in a previously agreed program being another, alternative method.

Indeed, it is always the case in these injunction motions under pendency that there is disagreement between the parent and school district at the time of the due process filing. That is the reason a motion for an injunction is necessary. See J.E. v. Boyertown Area School Dist., 452 Fed. App'x 172, 176 (3d Cir. 2011) (finding unilateral placement without district consent to be "current educational placement" for stay put).

Lacking any credible response to the foregoing, the District argues that it would make "no sense" to permit parents to unilaterally place their child in "any private school she chose, regardless of whether the school provided appropriate services needed by her child," and then invoke "stay put" by filing a due process complaint. District Opp. Br. at 18. That is a straw man argument. Filing a due process complaint against a school district is not a step lightly taken by any parent. Moreover, no rational parent would pick a random school that may or may not be suited to his or her child. The District's scenario involving an irrational parent who sues on a whimsy is utterly implausible, and the District offers no real-life example of such circumstances.

Moreover, the District's imagined scenario bears no resemblance to the facts here. As Plaintiffs' opening brief and the Avaras Affidavit explained, the District had consistently failed to offer A.A. with FAPE in the past. In July of 2017, this Court expressly found that, for school years 2012/13 and 2013/14, the District did not offer FAPE, while the private placement chosen by the parent at Hawk Meadow was appropriate for A.A. This judicial determination constituted a constructive agreement by the District that Hawk Meadow, and not the District, was the appropriate placement. Pl. Br. at 12 (and cases cited therein).[4] Moreover, because A.A. had aged out of Hawk Meadow by the end of the 2016/17 school year, Ms. Avaras sought, and obtained, the District's agreement to transport A.A. to his new private placement at NYMA. See

---

[4] The District objects to this argument on the grounds that the Court had found for the parent but remanded the matter to the IHO for determination of the Burlington equity prong respecting tuition and that the SRO awarded tuition as to one year but not the other. District Opp. Br. at 7-13. But that is a red herring. For purposes of "current placement" determination, tuition obligations under a Burlington equity analysis is irrelevant. What is relevant is the finding as to appropriate placement. Thus, the District's extensive discussion of A.W. v. Board of Education Walkill Central School District, 2015 U.S. Dist. LEXIS 6822 (N.D.N.Y. 2015), is inapposite. See District Opp. Br. at 10-13. In that case the SRO found that placement in a private school was not justified as to two of three challenged years. Here, only equity analysis remains in dispute from Judge Roman's decision, not placement.

4

Avaras Aff. Exs. E and F.  In fact, a District representative actually coordinated with NYMA on the busing schedule.  Id.  Relying on this approval, Ms. Avaras completed all steps necessary to enroll A.A. at NYMA.  See Avaras Aff. at ¶¶ 12-17.  The District later back-pedaled from that approval, virtually on the eve of commencement of the school year.  The District now offers a long litany of confused reasons why it did so, relying on select pages of transcript testimony.  (District Opp. Br. at 15-17.)  A fair reading of the hearing testimony, however, proves that the sudden denial of transportation was retaliatory. [5]

---

[5] See Complaint (Aug. 3, 2018, ECF No. 5) at ¶¶ 66-78 (authorization for busing was revoked only after an unpleasant meeting with Plaintiff at which Plaintiff unsuccessfully urged District representatives to end the litigation.)  The District argues that it was just a mistake.  David Carlson, Director of the Committee on Special Education and Supervisor of Pupil Services, claims that when he gave authorization, he had not realized A.A. would be going to NYMA, until "a day or two after" sending the email.  See Reply Avaras Aff., Ex. 2 (Tr. 714:14-19).  But if he realized the mistake two days after July 25th when he sent the email, he had no explanation for why the Transportation department communicated, on August 2nd, with NYMA to schedule bussing.  Moreover, his testimony was diametrically opposed to the testimony of Lynn Rafalik, Assistant Superintendent of Special Education.  Compare e.g., Ex. 1 (Rafalik testifying Carlson appeared to be very concerned about Plaintiff's request before he sent the approval email and testifying that she later found out about his approval and reprimanded him for doing so without authorization) with Ex. 2 (Carlson recalls no such interaction or reprimand).  Their inconsistent accounts of how this was all a mistake was not credible.  In addition, instead of promptly informing Plaintiff of this innocent "mistake," the District did not reject transportation until more than five weeks later, after Plaintiff's unpleasant meeting with Ms. Rafalik and Superintendent Cox on August 30, 2017.

The District also argues that it was justified in denying transportation to NYMA because the parent missed an April 1st deadline and the school was outside the 15-mile radius from the District.  District Opp. Br. at 16.  Both are spurious arguments.  First, it was not possible for Ms. Avaras to comply with any April 1st deadline prior to the coming school year.  She first received A.A.'s IEP for the 2017-18 school year from the District on or about September 1, 2017.  Thus, while Education Law § 3635(2) generally requires that an application for transportation to a nonpublic school be submitted no later than the first day of April preceding the school year for which transportation is requested, "a district may not reject a late request for transportation if there is a reasonable explanation for the delay."  Appeal of a Student with a Disability, by his parents, from Action of the Bd. of Educ. of the Herricks Union Free Sch. Dist. Regarding Transportation, 48 Ed. Dep't Rep., Decision No. 15, 837 (Oct. 7, 2008).  Not having gotten an IEP from the District until months after April 1st, the Parent obviously had a "reasonable explanation."

Whatever the District's motive, there is no question that the parent proceeded in utmost good faith to find the next school that would be an appropriate alternative. Thus, the District's alarm about a parent irrationally filing a meritless due process complaint after choosing to place her child in any school she wants, irrespective of their educational services, just so she can invoke stay put protections, bears no resemblance to the facts here.

In fact, it is the District's arguments that make no sense. This becomes clear when one asks: according to the District, what is A.A.'s "current placement" for purposes of pendency law? It cannot be the District's proposed IEP placement in its public school because Plaintiffs had rejected it and every variation of it for every year since 2013. Moreover, this Court had concluded that the District's prior proposals were not appropriate because A.A. needed a smaller class with more individualized attention. The current placement also could not be Hawk Meadow because he had aged out of that school. In October 2017, when the due process complaint was filed, A.A. was attending NYMA because the District had given approval for his transportation there and the parent had made all arrangements for his attendance there. Thus, NYMA is the only placement that could possibly be considered his "current" placement. It was true as a matter of fact and law. Cf. Gabel v. Bd. of Educ. of Hyde Park Cent. Sch. Dist., 368 F. Supp. 2d 313, 325 (S.D.N.Y. 2005) ("This conclusion is all but compelled by the fact that, if Randolph [private school] is not L.G.'s pendency placement, she has no pendency placement (an impossible result).")

---

With respect to the 15-mile limit, the District does not dispute that an exception is made for a learning disabled child such as A.A., but claims that because the NYMA is not a school that provides special education, the exception to the 15-mile limit does not apply. As shown infra at 8-10, NYMA provided exactly the services A.A. required.

6

Contrary to the District's submission, the IHO subsequent holding, in February 2018, that the District had offered FAPE for school year 2017/18 (see District Opp. Br. at 17-18), is not relevant to the "current placement" analysis. As Dervishi and other cited cases make clear, the stay put is triggered as of the filing of the complaint. That date was October 4, 2017, and A.A. was already attending NYMA. This operative date and placement is not changed just because, in the interim, an administrative officer made a finding that is being challenged.[6] To hold otherwise would render the stay put protection completely illusory, and subject to the vagaries of a multi-stage, multi-year litigation. The Second Circuit forbids such a reading. 20 U.S.C. § 1415(j) reflects Congress's decision that all disabled children should keep their existing educational program "until the dispute with regard to their placement is ultimately resolved." Doe, 790 F.3d at 453.

The Second Circuit's decisions in Doe, Dervishi, and Mackey are clear: stay put protections are triggered as of the filing of the due process complaint. This is true "*regardless of whether their case is meritorious or not*, [and the students] are to remain in their current educational placement until the dispute with regard to their placement is ultimately resolved." Mackey, 386 F.3d at 161 (emphasis in original). Thus, "access to immediate interim relief is essential for the vindication of this particular IDEA right" and the injunction should issue. See Murphy v. Arlington Cent. Sch. Dist., 297 F.3d 195, 200 (2d Cir. 2002).

---

[6] The District engages in a similar mistake when it cites Burlington for the proposition that "parents who unilaterally change their child's placement during the pendency of review proceedings . . . do so at their own financial risk." District Opp. Br. at 3 (citing Burlington, 471 U.S. at 373-74). A.A. was already attending NYMA at the time pendency was invoked through the 2017 complaint; there has been no unilateral change since then.

7

## II.    PLAINTIFFS SATISFY PRELIMINARY INJUNCTION STANDARDS

The automatic injunction provisions of IDEA does not require a showing by Plaintiffs that the standards for issuance of a preliminary injunction have been met.  Nevertheless, as Plaintiffs' opening brief demonstrated, such standards are in fact easily satisfied here.  In response, the District makes a number of meritless arguments and assertions that require brief rebuttal in the limited space remaining.

First, seeking to inflame the Court against Ms. Avaras, the District makes the irrelevant and false claim that Ms. Avaras lied in her written application to NYMA on behalf of A.A. District Opp. Br. at 21-22.   A fair review of the IHO hearing record, and not just the select transcript pages in the Melnick Affirmation, demonstrates Ms. Avaras provided NYMA all relevant information.  Ms. Avaras wrote in the form application that A.A. had dyslexia and ADHD.  See Melnick Aff., Ex. O at 4.   She further testified that she discussed more fully A.A.'s educational history with NYMA before A.A. was enrolled.  See Reply Avaras Aff. at ¶¶ 8-9, Ex. 3.  The NYMA representative who testified at the hearing also noted that she was aware of A.A.'s disability and did not know if others in admission had had more in-depth discussion about A.A.'s condition.  See id., Ex. 4 (Tr. 1480:3-10).  In any event, it was clear from her testimony that the form application was a nonissue for NYMA.  She testified in glowing terms about A.A.'s progress at NYMA and his contributions to the school.  See Reply Avaras Aff., Ex. 4.

The District spills much ink on the argument that NYMA was unsuited because it was not a special education school, and did not have certified special education teachers, etc.  See District Opp. Br. at 13-15, 21.  This Court properly rejected the same meritless argument made about Hawk Meadow.  Avaras v. Clarkstown Central School District, No. 15 Civ. 2042, 2017 WL 3037402, at *22 (S.D.N.Y. July 17, 2017).  "An appropriate private placement need not meet

8

state education standards or requirements" or "provide certified special education teachers or an IEP for the disabled student." Id. (citing Doe, 790 F.3d at 451); see Bd. of Educ. of Pawling Central School Dist. v. Schutz, 290 F.3d 476, 483 (2d Cir. 2002) ("We cannot endorse the District's argument that because Kildonan is not state accredited, reimbursement is improper."); Frank G. v. Bd. of Educ. of Hyde Park, 459 F.3d 356, 364 (2d Cir. 2006).

"Ultimately, the issue turns on whether a placement—public or private—is reasonably calculated to enable the child to receive educational benefits." Frank G., 459 F.3d at 364 (citations and quotations omitted). On this core question about NYMA's suitability for A.A., there is no room for argument: His report card for 2017/18 shows solid performance in every course. See Avaras Aff., Ex. A. At NYMA, he was given appropriate, individualized attention, and the beneficial educational results are simply undeniable. See also Reply Avaras Aff. Ex. 4 (NYMA witness testimony regarding NYMA's services in small classrooms and intensive attention to each student's needs). The District's response is to ignore that evidence.

The District also claims that A.A. will suffer no irreparable harm because he was offered FAPE by the District for the upcoming 2018/19 school year. It makes the self-serving assertion that this IEP provides FAPE and claims Ms. Avaras "voiced no opposition or disagreement with it at the time or any time since." District Opp. Br. at 20. That is demonstrably false. As Ms. Avaras states in her Reply Affidavit, she and A.A. expressly rejected the IEP that was proposed at the CSE meeting. She later notified the District in writing that the IEP was not accepted. See Reply Avaras Aff. at ¶ 19, Ex. 9. The District apparently did not share that email with its counsel. The reason for rejection is obvious: the IEP is not materially different from the inappropriate versions the District offered in prior years. See Reply Avaras Aff. at ¶¶ 11-12 (comparing most recent IEP to previous rejected versions). Among other things the District

9

continues to propose an "integrated co-taught classroom" with a ratio of 15 students to 1 teacher. As the District representatives explained in the IHO hearing, these classes could have more than 26 students, and many of them are regular population students with no disability. Both Ms. Avaras and A.A. had testified in the hearing that such a setting would be highly detrimental to A.A.'s ability to learn. He could not keep up and he would feel ashamed to raise his hand in class. See Reply Avaras Aff. at ¶ 12, Ex. 3, Ex. 8. Moreover, this Court had already determined that in previous school years, A.A. needed far more individualized attention in a small classroom setting. Avaras, 2017 WL 3037402, at *24. All of these facts notwithstanding, the District drew up this new IEP that simply ignored A.A.'s actual educational needs. The District has managed to further prove that A.A. would be irreparably injured were he forced to attend this program.

Finally, using photos of their house, the District claims the Avaras family has the financial wherewithal to pay NYMA tuition. Ms. Avaras's Reply Affidavit addresses this baseless contention. The house has long been in foreclosure, and Mr. Avaras suffers from a serious illness. See Reply Avaras Aff. ¶¶ 4-5.

*     *     *

Plaintiffs' motion should be granted in its entirety.

Dated: August 23, 2018

PARK JENSEN BENNETT, LLP

By: _____
　　　Tai H. Park

*Attorney for the Plaintiffs*

10