UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
Connie Avaras, individually and on behalf of
her minor child, A.A.,

       Plaintiffs,

   -against-


Clarkstown Central School District, the Board
Of Education for Clarkstown Central School
District, and the New York State Education
Department

       Defendants.
-----------------------------------------------------------------X

CASE NO. 18-CV-6964
(NSR)


# DEFENDANTS CLARKSTOWN CENTRAL SCHOOL DISTRICT AND BOARD OF EDUCATION FOR THE CLARKSTOWN CENTRAL SCHOOL DISTRICT'S REPLY MEMORANDUM OF LAW


JASPAN SCHLESINGER LLP
*Attorneys for Defendants*
300 Garden City Plaza, 5th Floor
Garden City, New York 11530
(516) 393-8227

SAC/D1346681v2/M400070/C0166771

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................1

POINT I

PLAINTIFFS' ATTEMPT TO AVOID DISMISSAL OF THE
COMPLAINT BY MANIPULATING THE FACTS IN AN
EFFORT TO SHIFT BLAME TO THE PROCESS SERVER
FOR PLAINTIFFS' FAILURE TO TIMELY SERVE THEIR
APPEAL IS UNAVAILING. ..............................................................................................1

POINT II

PLAINTIFFS' CLAIMS FOR RETROACTIVE TUITION
REIMBURSEMENT UNDER THE STAY-PUT PROVISIONS
ARE SUBJECT TO THE IDEA'S EXHAUSTION REQUIREMENT...........................7

POINT III

THE COMPLAINT DOES NOT ALLEGE VIABLE NON-IDEA
CLAIMS AND ALL OF THOSE CLAIMS MUST THEREFORE
BE DISMISSED. ................................................................................................................9

A.    The Non-IDEA Claims Must be Dismissed for Failure to
       Exhaust Administrative Remedies. ..................................................................9

B.    The Complaint Fails to State a Claim Under the ADA and Rehabilitation Act. ...............11

C.    The Complaint Fails to State a Claim Under §1983. ........................................14

CONCLUSION................................................................................................................15

SAC/D1346681v2/M400070/C0166771

## TABLE OF AUTHORITIES

**Cases**            **Page(s)**

*Avaras v. Clarkstown Cent. Sch. Dist.,*
2017 U.S. Dist. LEXIS 110624 (S.D.N.Y. 2017) .................................................................12, 14

*Avaras v. Clarkstown Cent. Sch. Dist.,*
2018 U.S. Dist. LEXIS 145316 (S.D.N.Y. 2018) ...................................................................7, 9

*B.C. v. Mount Vernon Sch. Dist.,*
837 F.3d 152 (2d Cir. 2016) ...........................................................................................12

*Bd. of Educ. v. O'Shea,*
353 F. Supp. 2d 449 (S.D.N.Y. 2005) .............................................................................8, 9

*Cave v. E. Meadow Union Free Sch. Dist.,*
514 F.3d 240 (2d Cir. 2008) ....................................................................................1, 7, 11

*Doe v. East Lyme Bd. of Educ.,*
790 F.3d 440 (2d Cir. 2015) ........................................................................................ 7, 8

*Fry v. Napoleon Cnty. Sch.,*
137 S.Ct. 743 (2017) ..............................................................................................10, 11

*Grenor v. Taconic Hills Cent. Sch. Dist.,*
2006 WL 3751450 (N.D.N.Y. Dec. 19, 2006) ..................................................................2, 3, 4

*Harris v. City of N.Y.,*
186 F.3d 243 (2d Cir. 1999) ...........................................................................................12

*Hartford Bd. of Educ. v. J.A.,*
976 F. Supp.2d 164 (D. Conn.) .......................................................................................15

*Heldman v. Sobol,*
962 F.2d 148 (2d Cir. 1992) ...........................................................................................14

*Honig v. Doe,*
484 U.S. 305 (1988) .......................................................................................................6

*Kelly v. Saratoga Springs City Sch. Dist.,*
2009 U.S. Dist. LEXIS 88412 (W.D.N.Y. 2009) .....................................................................5

*M.G. v. N.Y.C. Dep't of Educ.,*
982 F. Supp. 2d 240 (S.D.N.Y. 2013) .................................................................................7

*Mackey v. Bd. of Educ.,*
386 F.3d 158 (2d Cir. 2004) ..........................................................................................8, 9

*Miss Am. Org. v. Mattel, Inc.,*
945 F.2d 536 (2d Cir. 1991) .............................................................................................8

SAC/D1346681v2/M400070/C0166771

*Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.,*
    297 F.3d 195 (2d Cir. 2002) ............................................................................ 7, 8, 9

*New York City Dep't of Educ. v. S.H.,*
    2014 U.S. Dist. Lexis 20743 (S.D.N.Y. 2014) ........................................................4

*Okure v. Owens,*
    816 F.2d 45 (2d Cir. 1987) ..............................................................................12

*Polera v. Bd. of Educ.,*
    288 F.3d 478 (2d Cir. 2002) ...........................................................................6, 11

*R.S. v. Bedford Cent. Sch. Dist.,*
    899 F.Supp. 2d 285 (S.D.N.Y. 2012) ...............................................................4, 5, 6

*Scaggs v. N.Y. State Dep't of Educ.,*
    2007 U.S. Dist. LEXIS 35860 (E.D.N.Y. 2007) ....................................................12

*State of New York Dep't of Soc. Serv. v. Shalala,*
    21 F.3d 485 (2d Cir. 1994) ................................................................................5

*Taylor v. Vt. Dep't of Educ.,*
    313 F.3d 768 (2d Cir. 2002) ..............................................................................15

**Statutes and Regulations**

20 U.S.C. § 1415(j) ...........................................................................................7

20 U.S.C. §1415(l) ...........................................................................................10

42 U.S.C. §1983 ...................................................................................12, 14, 15

Americans with Disabilities Act.............................................................................10, 12

Rehabilitation Act §504 .................................................................................10, 12

Educ. Law § 4402(4)(d) ......................................................................................13

8 N.Y.C.R.R. § 279.1 (c)(4) ................................................................................5

8 N.Y.C.R.R. § 279.13 .....................................................................................1, 4

SAC/D1346681v2/M400070/C0166771

## PRELIMINARY STATEMENT

Defendants, Clarkstown Central School District and the Board of Education of the Clarkstown Central School District (collectively, "District"), submit this brief in reply to plaintiffs' opposition to the District's motion to dismiss the complaint. For the reasons stated herein and in the District's Main Brief, the motion should be granted in its entirety.

## POINT I

### PLAINTIFFS' ATTEMPT TO AVOID DISMISSAL OF THE COMPLAINT BY MANIPULATING THE FACTS IN AN EFFORT TO SHIFT BLAME TO THE PROCESS SERVER FOR PLAINTIFFS' FAILURE TO TIMELY SERVE THEIR APPEAL IS UNAVAILING.

As discussed in the District's Main Brief in support of its motion to dismiss, the failure to exhaust administrative remedies deprives the Court of subject matter jurisdiction. Cave v. E. Meadow Union Free Sch. Dist., 514 F.3d 240, 245 (2d Cir. 2008). Here, plaintiffs failed to exhaust their administrative remedies by failing to timely serve their Request for Review. Plaintiffs acknowledge that the service was untimely but argue that it was beyond their control and therefore the SRO acted arbitrarily in dismissing their appeal. Despite plaintiffs' manipulation of the facts in an effort to shift the blame for their failure to timely serve the appeal to the process server *they hired*, it is clear that the failure to meet the service deadline lies with plaintiffs. As such, the SRO acted well within his discretion to dismiss the appeal as untimely.

8 N.Y.C.R.R. 279.13 provides that,

> A request for review to a State Review Officer must be served and filed within the timelines specified in Section 279.4 of the Part. A State Review Officer may dismiss *sua sponte* a late request for review or, in his or her sole discretion, may excuse a failure to timely serve or file a request for review within the time specified for good cause shown. The reasons for such failure shall be set forth in the request for review. (emphasis added)

An attorney for the State Education Department ("SED") in a letter to plaintiffs' counsel

1

SAC/D1346681v2/M400070/C0166771

on April 9, 2018, a full week before the service deadline, informed plaintiffs' counsel what constitutes "good cause". He wrote: *"Circumstances that constitute good cause for late filing could include postal service error, or other events that the filing party had no control over (see* Grenor v. Taconic Hills Cent. Sch. Dist., *2006 WL 3751450 at \*5 (N.D.N.Y. Dec. 19, 2006)."* (See Exhibit 8 to the Park Declaration ("Park Decl."). Arranging for service by a process server is not functionally equivalent to dropping the request for review in a U.S. Postal Service mailbox. Once the papers are deposited in the mailbox the filer loses all ability to control the day and time of delivery. That is not the case here.

Plaintiffs' counsel chose to use a particular process server to serve the appeal. Although plaintiffs concede that Mrs. Avaras signed the request for review on April 14, 2018, two days before the due date, plaintiffs' counsel waited until the *afternoon* of the last day for service to first email the papers to the process server. There is no mention in the email which accompanied the document that service had to be completed that same day or, for that matter, any mention whatsoever of a service deadline.[1] In fact, there is no indication at all of any urgency. Whose fault is that? Clearly, not the process server's.

Plaintiffs were well aware of the service deadline having been reminded of the requirement by SED's counsel on April 9, 2018, yet they included no specific instructions to the process server about when to serve the papers. Plaintiffs are represented by experienced counsel who is well aware of the significance of filing deadlines and the need to properly inform a process server when there are service deadlines that have to be met.

The email plaintiffs' counsel sent to the process server on April 11, 2018, does not

---

[1]    Copies of the emails are attached as Exhibit 8 to the Park Declaration. Instead of burdening the court with multiple copies of the same documents, where plaintiffs have provided a document as an exhibit to the Park Declaration which is relevant to the District's position, the District will refer the Court to the plaintiffs' exhibit and incorporate it by reference.

2

change anything and certainly cannot shift the blame for the failure to timely serve on the process server. That email was sent *five days* before the service deadline and although it states "we would like to arrange service...for Monday 4/16", there is still nothing in that email which indicates that service on that date was critical. There is no mention of a service deadline or a warning that the papers "must be served" on that date - - only that they "would like to arrange for service" on that day. That tepid statement certainly did not put the process server on notice that service on that date was critical. In any event, there is no reason why the process server would have any reason to associate the April 11th email with the one on April 16th. The email on April 16, 2018, makes no reference to the earlier email and the subject matter lines on the two emails are different. In addition, the emails do not appear to be part of a string.

Plaintiffs' reliance on the self-serving affidavit of Laura Coughlin is misplaced. Nowhere in her affidavit does she allege that she informed the process server of the service deadline or that she told the process server that it was critical that the papers be served on the District that same afternoon. Indeed, her statement regarding an alleged telephone call to the process server to confirm receipt makes no sense since within minutes of emailing the documents to the process server she received a reply email from the process server confirming their receipt. (See Park Decl., Exh. 8). Moreover, as Ms. Coughlin acknowledges, the process server informed her that he "was not aware of the April 16[th] deadline." That certainly is not surprising in light of the fact that no deadline was mentioned in the emails.

Plaintiffs' assertion that the "process server inexplicably disobeyed counsel's instructions" (Plf. Br., p. 21) is simply untrue. There were no instructions. It is clear from the documentary evidence that was presented to the SRO, that the process server's statement that he was not aware of the April 16th deadline was not a false excuse. It is not the SRO who "distorted the record evidence" as plaintiffs argue (Plf. Br., p. 11), but plaintiffs who are making a "false

3

excuse" in a desperate attempt to avoid dismissal by trying to read something into the emails which clearly is not there. No matter how hard they try, however, they cannot rewrite the emails to include a warning that service had to be completed the same afternoon the papers were received. It certainly was not beyond their ability to include an appropriate instruction. The process server they chose worked for them. They could have *insisted* that the papers be served on April 16[th] to make certain the deadline was met. They did not.

As a result, it cannot be legitimately argued that the SRO acted arbitrarily in dismissing the appeal as untimely.[2] It was neither unreasonable in light of the documents presented by plaintiff to the SRO for his consideration or inconsistent with other decisions of the SRO.[3] *E.g.*, Application of a Student with a Disability, SRO Dec. No. 18-046 (2018); Grenor v. Taconic Hills Cent. Sch. Dist., 2006 WL 3751450 at *5 (N.D.N.Y. 2006); New York City Dep't of Educ. v. S.H., 2014 U.S. Dist. Lexis 20743 at *19-20 (S.D.N.Y. 2014); R.S. v. Bedford Cent. Sch. Dist. 899 F.Supp. 2d 285, 288 (S.D.N.Y. 2012) (dismissing parents' appeal served one day late).[4] Furthermore, plaintiffs do not cite to any cases in which a court found the SRO's timeliness

---

[2]    Plaintiffs also complain that the SRO improperly dismissed the appeal for the failure to comply with 8 N.Y.C.R.R. § 279.13 in that it was not possible for them to describe the good cause for their delay in the request for review. (Plf. Br., p. 11) The SRO, however, did not dismiss the appeal solely on that basis. He specifically stated that "[e]ven assuming that the parent had set forth good cause for the failure to timely seek review in the request for review, the reason stated in this case - that the process serving agency served the request for review one day late - does not constitute good cause". (See Park Decl., Exh. 6 at p.8)

[3]    Plaintiffs' assertion that SRO Bates' decision in this case is inconsistent with his decision in Application of the Bd. of Educ. of the Sachem Cent. Sch. Dist., Appeal No. 14-169, in an effort to suggest that he acted arbitrarily here is without merit. There is no indication in that decision of what constituted "good cause" which warranted the acceptance of the parent's Answer and cross-appeal to the appeal that had been timely filed by the school district.

[4]    Plaintiffs seem to suggest that different rules with respect to filing deadlines should apply to an appeal filed by a parent than an appeal filed by a school district (Plf. Br., p. 18). The regulations do not make such a distinction and plaintiffs cite no authority for the proposition that a parent is entitled to a more lenient application of the rules. In addition, plaintiffs argue that the SRO should not have dismissed the appeal as untimely because there was no prejudice to the District. No such requirement exists. Indeed, in R.S. v. Bedford Cent. Sch. Dist., *supra*, the Court affirmed the SRO's dismissal where the parent was one day late in effectuating service on the school district despite the fact that the district's counsel had been served on time. 899 F.Supp. 2d at 288. Prejudice is simply not a required consideration when the parent fails to meet the service deadline and the lack of prejudice does not mandate that an SRO accept a late appeal. Moreover, in this case, plaintiffs were represented by experienced counsel and were not *pro se*.

4

determination to be arbitrary and capricious. Accordingly, plaintiffs have failed to demonstrate that the SRO's failure to exercise his discretion in the instant matter constitutes an inconsistent application of the law. See R.S., 899 F. Supp. 2d at 291 ("[Plaintiffs] cite no case in which a party was identically situated . . . Without more, this Court cannot identify an applicable exception to the IDEA's exhaustion requirement.")

The SRO's decision was based on consideration of relevant factors and therefore was not a clear error of judgment. See Kelly v. Saratoga Springs City Sch. Dist., 2009 U.S. Dist. LEXIS 88412 at *12 (W.D.N.Y. 2009) citing State of New York Dep't of Soc. Serv. v. Shalala, 21 F.3d 485, 492 (2d Cir. 1994). This is so regardless of the plaintiffs' belief in the merits of their claims. When the issue is one of timeliness, the court must limit its review to the SRO's decision regarding timeliness without probing the substance of merits of the underlying claims. Id.

Plaintiffs' argument that the SRO failed to exercise his discretion to accept plaintiffs' admittedly late appeal because he is biased against them is simply not plausible in light of the decisions the SRO has rendered in plaintiffs' prior appeals. Plaintiffs relegate those decisions to a footnote in their brief in an obvious attempt to minimize their significance when, in fact, they clearly demonstrate that the SRO is not biased against them. (Plf. Br., p. 23, n.6)

As a preliminary matter, there is no allegation in the complaint that SRO Bates has a "personal, economic, or professional interest in the hearing" which could adversely affect his impartiality. 8 N.Y.C.R.R. § 279.1 (c)(4). Instead, plaintiffs assume bias simply because this Court in its July 17 Decision disagreed with certain conclusions reached by the SRO in his review of the IHO's decision and the hearing record. Plaintiffs then try to infer bias by pointing to certain alleged "defects" in the IHO's current decision that, according to them, no fair minded SRO would permit. (Plf. Br., p. 24)

Basically, plaintiffs' argument is that any time an SRO dismisses an appeal as untimely

5

and, therefore, fails to address the alleged errors in an IHO's decision, the Court must find that the SRO was biased and overturn the timeliness decision. Plaintiffs' argument is both circular and absurd. Since it is not known how the SRO would have ruled with respect to the alleged "defects" if plaintiffs had timely served their appeal, the failure to address the merits cannot possibly support a conclusion that he is biased. Merely because plaintiffs are unhappy with SRO Bates' decision or think that he should have exercised his discretion differently does not mean he is biased against them.[5]

Plaintiffs, in an effort to sidestep the SRO's decision and avoid the exhaustion of administrative remedies requirement, argue that exhaustion would have been futile. Plaintiffs' reliance on the "futility exception" to exhaustion is itself an exercise in futility.

To take advantage of the futility exception, the plaintiffs would need to show that the SRO is so biased against them that they could not have prevailed had they presented their appeal directly to him.[6] R.S. v. Bedford Cent. Sch. Dist., *supra*, at 290. As discussed above, and in the District's Main Brief, plaintiffs cannot satisfy their burden of showing bias by SRO Bates in light of the fact that he has previously issued decisions in plaintiffs' favor.[7] See Park Decl., Exh. 28 (finding that equitable considerations weigh in plaintiffs' favor for the 2012/13 school year for the purpose of awarding tuition reimbursement). Simply put, in light of these decisions there is no plausible argument that plaintiffs could not have prevailed before SRO Bates if they had

---

[5]    Plaintiffs argue that the Court should allow discovery and conduct a hearing to determine "what non-biased reason, if any, the SRO had for deciding not to address the many issues identified in the IHO's decision". (Plf. Br. p. 25) They are grasping at straws. Moreover, it is plaintiffs' burden to demonstrate bias, not the other way around. In any event, the non-bias reason is confirmed by plaintiffs' own documents. They served their request for review late and did not have good cause for doing so.

[6]    The party seeking to avoid exhaustion bears the burden of showing futility. Polera v. Bd. of Educ., 288 F.3d 478, n. 8 (2d Cir. 2002) (*citing* Honig v. Doe, 484 U.S. 305, 327 (1988)).

[7]    In this regard, the Court is also respectfully referred to the brief submitted by the State defendant in support of its motion to dismiss and the arguments therein regarding the lack of bias (SED Br., pp. 17-20). Those arguments are incorporated herein by reference.

6

timely filed their appeal.

In sum, because the IDEA requires exhaustion of administrative remedies before filing a claim with the court and because plaintiffs failed to exhaust their administrative remedies, this Court lacks subject matter jurisdiction and the complaint must be dismissed. Cave v. E. Meadow Union Free Sch. Dist., *supra*, at 250.

**POINT II**

**PLAINTIFFS' CLAIMS FOR RETROACTIVE TUITION REIMBURSEMENT UNDER THE STAY-PUT PROVISIONS ARE SUBJECT TO THE IDEA'S EXHAUSTION REQUIREMENT**

Plaintiffs' argument that the exhaustion requirement does not apply to their pendency claims is clearly misguided. (Plf. Br., p. 13). Plaintiffs conveniently leave out the fact that they are seeking *retroactive reimbursement* under the stay-put provision, rather than *prospective* relief to ensure that A.A. remains in his "then-current educational placement". See 20 U.S.C. § 1415(j). Specifically, this Court has already required the District to fund A.A.'s placement at NYMA throughout the pendency of the instant proceeding. Avaras v. Clarkstown Cent. Sch. Dist., 2018 U.S. Dist. LEXIS 145316 (S.D.N.Y. 2018). Because the District is currently funding A,A.'s placement at NYMA pursuant to this Court's order, the exception to the IDEA's exhaustion requirement does not apply.

Plaintiffs simply aver that pendency claims do not require exhaustion, but fail to provide any further analysis. That is because all of the cases cited by plaintiffs deal with *prospective* relief under the stay-put provision. *See* Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ., 297 F.3d 195, 199 (2d Cir. 2002); see also M.G. v. N.Y.C. Dep't of Educ., 982 F. Supp. 2d 240, 247 (S.D.N.Y. 2013); see also Doe v. East Lyme Bd. of Educ., 790 F.3d 440, 445 (2d Cir. 2015). Specifically, the "enumerated exception" that both Murphy and M.G. rely on is the "inadequate

7

SAC/D1346681v2/M400070/C0166771

protection" exception. See Miss Am. Org. v. Mattel, Inc., 945 F.2d 536 (2d Cir. 1991).  The Second Circuit in Murphy recognized that "given the time-sensitive nature of the IDEA's stay-put provision, 'an immediate appeal is necessary to give realistic protection to the claimed right'." 297 F.3d at 199 (citing Miss Am. Org., *supra*).  Therefore, the Court held that immediate relief was necessary to protect a student's right to remain in his pendency placement while the administrative process dragged on. Id.

Additionally, in Doe, the Second Circuit similarly recognized that the exhaustion requirement did not apply "[s]ince the purpose of the stay-put provision is to keep the child in an existing placement." 790 F.3d at 455.  Thus, the exception that plaintiffs attempt to rely on is clearly inapplicable, as immediate relief is not necessary to protect A.A.'s rights under the stay-put provision.  Plaintiffs have already received such immediate relief, as the District is currently funding A.A.'s placement at NYMA.

Even if the exhaustion requirement did not apply in the instant matter, plaintiffs are not entitled to *retroactive* tuition reimbursement under the stay-put provision.  This sort of relief is only available under very limited circumstances.  Toward that end, courts have authorized retroactive tuition reimbursement where the parent was prejudiced by the SRO's delay in rendering a decision. See Mackey v. Bd. of Educ., 386 F.3d 158 (2d Cir. 2004); see also Bd. of Educ. v. O'Shea, 353 F. Supp. 2d 449 (S.D.N.Y. 2005).  In Mackey, the Court recognized that ordinarily the stay-put provision provides relief prospectively. Id. at 164 (citing Murphy, 86 F. Supp. 2d at 366 ("Once the SRO rendered its decision, there was an 'agreement' changing [the student's] pendent placement to [the private school]. *From that date forward*, the District is responsible for maintaining the placement.").  However, because it took the SRO 26 months to render a decision, the Court determined it was necessary to exercise its equitable authority and award retroactive reimbursement under the stay-put provision. Id. at 163-64.  Thus, the Court

8

remanded the matter and called the District Court's attention to <u>Murphy</u>, which held that "the plaintiffs should be reimbursed for tuition payments from the date the SRO *should* have rendered a decision forward." <u>Id.</u> at 166 (citing <u>Murphy</u>, 86 F. Supp. 2d at 367). The Court in <u>O'Shea</u>, dealt with a similar set of facts and came to the same conclusion. 353 F. Supp. 2d 449.

The complaint clearly does not raise any similar extraordinary facts that would require the Court to exercise its equitable authority in the instant matter. In both <u>Mackey</u> and <u>O'Shea</u>, the student's pendency placement was established by the means of a favorable SRO decision. The parents were then awarded tuition reimbursement retroactive to the date that the SRO should have rendered a timely decision. Here, plaintiffs sought relief directly from this Court. <u>See</u> <u>Avaras</u>, 2018 U.S. Dist. Lexis 145316. Although the Court recognized that the last agreed upon placement was within the District, it ordered the District to prospectively fund A.A.'s placement at NYMA because his 2009-2010 placement was outdated. Because the Court issued an interim order "[d]ue to the urgency of [plaintiffs'] application", there was no substantial delay that would justify retroactive reimbursement.

Accordingly, the complaint must be dismissed due to plaintiffs' failure to exhaust their administrative remedies. In addition, plaintiffs are not entitled to retroactive reimbursement irrespective of whether the exhaustion requirement applies.

**POINT III**

**THE COMPLAINT DOES NOT ALLEGE VIABLE NON-IDEA CLAIMS AND ALL OF THOSE CLAIMS MUST THEREFORE BE DISMISSED.**

B.    **The Non-IDEA Claims Must be Dismissed for Failure to Exhaust Administrative Remedies.**

The non-IDEA claims must also be dismissed because, as discussed in Point I, plaintiffs were required to but did not exhaust their administrative remedies. Plaintiffs' argument that

9

exhaustion is not required citing this Court's 2017 Decision, is without merit. The Court in its Decision held that exhaustion was not required for these non-IDEA claims because the relief sought was not available under the IDEA. The only case relied on by the Court in support of that proposition was Fry v. Napoleon Cnty. Sch., 137 S.Ct. 743 (2017) and it appears that the Court misunderstood the Fry holding. The Fry Court did not hold that exhaustion is not required where the relief sought in the non-IDEA claims is not available under the IDEA.[8] As discussed below, the Court held that whether exhaustion is required depends on whether the gravamen of the complaint is a violation of FAPE. If it is, even if the IDEA is not even mentioned in the complaint, than exhaustion is required.

In Fry, the parents of a child with cerebral palsy brought an action under §504 of the Rehabilitation Act ("RA") and the ADA against the school district for not allowing their child to bring his service dog to school. The parents sought a declaration that the school district violated §504 and the ADA and an award of money damages. The Court held that the IDEA's

> [e]xhaustion rule hinges on whether a lawsuit seeks relief for the denial of a FAPE. If a lawsuit charges such a denial, the plaintiff cannot escape §1415(l) merely by bringing her suit under a statute other than the IDEA . . .
>
> * * *
>
> A court deciding whether §1415(l) applies must therefore examine whether a plaintiff's complaint - the principal instrument by which she describes her case - seeks relief for the denial of an appropriate education.
> But that examination should consider substance, not surface. The use (or non-use) of particular labels and terms is not what matters.
>
> * * *
>
> Section §1415(l) is not merely a pleading hurdle. It requires exhaustion when the gravamen of a complaint seeks redress for a school's failure to provide a FAPE, even if not phrased or framed in precisely that way." Id. at 755.

---

[8]    The Supreme Court made this clear in its Decision: "Once again, we do not address here (or anywhere else in this opinion) a case in which a plaintiff, although charging the denial of a FAPE, seeks a form of remedy that the IDEDEA officer cannot give - - for example, as in the Fry's complaint, money damages for resulting emotional injury". (Id. at 754 n. 8)

10

Under Fry, the issue with respect to exhaustion is whether the gravamen of the complaint is the denial of FAPE, not whether the non-IDEA claims seek money damages or other relief that a hearing officer could not award. If that were the case, there would have been no reason for the Court to remand the case back to the Sixth Circuit for further proceedings to determine if the gravamen of the parents' lawsuit was a violation of FAPE.[9]

Here, the clear gravamen of plaintiffs' complaint is the alleged failure to provide A.A. with FAPE. Indeed, each of the non-IDEA claims contains allegations that A.A. was "repeatedly [ ] denied access to a free appropriate public education and accommodations designed to meet his individual needs." Complt. ¶¶ 187, 197, 207. In light of that, and in accordance with Fry, exhaustion is required for the non-IDEA claims regardless of the relief sought in those claims, which is the position the Second Circuit has taken even prior to Fry. E.g., Polera v. Bd. of Educ., 288 F.3d 478, 488 (2d Cir. 2002) ("the fact that Polera seeks damages in addition to relief that is available under the IDEA, does not enable her to sidestep the exhaustion requirements of the IDEA"); Cave v. E. Meadow Union Free Sch. Dist., 514 F.3d at 249 (2d Cir. 2008) ("the IDEA's exhaustion rule applies to all . . . federal causes of action regardless of their statutory bases"). Since plaintiffs failed to exhaust their administrative remedies, the non-IDEA claims must also be dismissed.[10, 11]

**B.    The Complaint Fails to State a Claim Under the ADA and Rehabilitation Act.**

---

[9]    The complaint in Fry alleged only non-IDEA disability-based discrimination claims without any reference to the adequacy of the special education services the school provided. Id. at 758.

[10]    As discussed in the District's Main Brief, the Fry Court adopted a two part inquiry for courts to use when analyzing whether the "gravamen" of the complaint seeks redress for the denial of FAPE. Applying the test to the facts alleged in this case makes clear that it does. (Dist. Br., pp. 9-10.)

[11]    Although the non-IDEA claims also include a reference to alleged "associational discrimination against the Parent" there are no allegations in the complaint which support that type of claim and, in any event, since they relate to A.A.'s IDEA claim they too are subject to the exhaustion requirement.

11

As discussed in the District's Main Brief, even if exhaustion was not required, the claims should still be dismissed for failure to state a claim under the ADA and RA.[12]

A.A. is not a qualified individual with a disability within the meaning of the ADA and RA. All the complaint alleges is that A.A. "is a minor with a diagnosis of attention deficit hyperactivity disorder ("ADHD"), dyslexia, and a learning disability." Complt. ¶¶ 10, 46. Plaintiffs argue that is sufficient to qualify under the ADA and RA. They are wrong. These allegations are essentially the same as those alleged in plaintiffs' prior complaint which was addressed in this Court's 2017 Decision. As this Court correctly held, "those seeking relief pursuant to the ADA or §504 must come forward with additional evidence - beyond simply their eligibility for IDEA coverage - showing their eligibility for the remedies afforded by the ADA and Section 504". Avaras v. Clarkstown Cent. Sch. Dist., 2017 U.S. Dist. LEXIS 110624 (S.D.N.Y. 2017) at *79 (quoting B.C. v. Mount Vernon Sch. Dist., 837 F.3d 152, 160 (2d Cir. 2016)).

Here, there are no allegations in the complaint that A.A.'s condition *substantially* limits a major life activity as required by those statutes. In fact, the allegations in the complaint, if they are to be believed, confirms that he is not so limited. According to the complaint, A.A. is attending the New York Military Academy ("NYMA"), a private school that does not provide special education services, where he allegedly is "thriv[ing] academically and socially".[13]

---

[12]    Plaintiffs, in an effort to manufacture non-IDEA claims, make reference to matters which go back many years, some of which were already addressed by the Court in its 2017 Decision. To the extent that plaintiffs are suggesting that such matters are actionable, if they predated the commencement of this action by more than three years they are barred by the applicable statute of limitations which apply to the ADA, RA and §1983. Eg., Harris v. City of N.Y., 186 F.3d 243, 247 (2d Cir. 1999) (three-year statute of limitations for Section 504 claims); Scaggs v. N.Y. State Dep't of Educ., 2007 U.S. Dist. LEXIS 35860, *33 (E.D.N.Y. 2007) (three-year statute of limitations for ADA claims); Okure v. Owens, 816 F.2d 45, 49 (2d Cir. 1987)(three-year statute of limitations for §1983).

[13]    Interestingly in this Court's 2017 decision, the Court found that Hawk Meadow was an appropriate alternative placement for A.A. because it provided 1:1 instruction and a multi-sensory program. Avaras, *supra* at *70. There are no allegations in the current complaint that NYMA provides a similar program for A.A.

12

Complt. ¶¶ 131-136.

The complaint also does not plausibly allege that A.A. was excluded from participation in the District's services, programs or activities because of his "disabilities". The District provided A.A. with an IEP for every year at issue, and plaintiffs' attempt to use this Court's 2017 Decision as evidence that the District "indisputably" failed to offer FAPE is misplaced. The District disputed the Court's decision by filing an appeal. The fact that the District Court came to a different conclusion than the IHO or SRO regarding FAPE does not equate to a "discriminatory exclusion". It equates to a difference of opinion.

Plaintiffs' claim of retaliation is not only absurd; it is also not plausibly alleged. The letter from Mr. Balko explaining that transportation to NYMA was approved in error was dated August 28, 2017, *three days* before the alleged call from the District's outside counsel which was made in an effort to settle the litigation and avoid the appeals.[14] (Complt. ¶ 68, 69). Plaintiffs should have received the letter before the call, but as plaintiffs acknowledge in the complaint, sometimes they have problems receiving their mail. (Complt. ¶ 98b). The letter which predated the call by counsel by several days was clearly unrelated to counsel's attempt to settle the litigation and plaintiffs' refusal.[15] Moreover, it cannot legitimately be argued that the District retaliated against plaintiffs when all it did was comply with its obligations under the Education Law. (Educ. Law § 4402 (4)(d)).

---

[14]    The letter explained that pursuant to Educ. Law § 4402(4)(d) transportation up to 50 miles can be provided to and from a nonpublic school which a student with a disability attends if such child attends such school for the purpose of receiving services or programs similar to special education programs recommended for such child by the CSE. It also explained that NYMA did not provide such services or have special education programs similar to what was recommended in the IEP. It is also clear from the complaint that NYMA does not even provide the alleged special services provided by Hawk Meadow which this Court held were needed by A.A., such as 1:1 instruction and a multi-sensory program.

[15]    When the District's counsel learned from Mrs. Avaras that she had not yet received Mr. Balko's letter, as a courtesy she emailed Mrs. Avaras a copy of the letter. Plaintiffs' attempt to characterize this simple courtesy and attempt to settle the litigation (which District's counsel has tried to do on more than one occasion) as retaliation is nothing short of outrageous and typical of plaintiffs' propensity to misrepresent the facts.

13

C.     **The Complaint Fails to State a Claim Under §1983.**

Plaintiffs acknowledge that their §1983 claim is based on an alleged denial of FAPE. (Plf. Br., p. 34) As such, this Court lacks subject matter jurisdiction because of plaintiffs' failure to exhaust their administrative remedies. See Point III A.

As discussed in the District's Main Brief, even if exhaustion was not required, the claim should still be dismissed because the IDEA provides adequate post-deprivation remedies. The fact that plaintiffs failed to timely avail themselves of those remedies does not mean that they are inadequate or unavailable. If that were true, a plaintiff would be able to manufacture a §1983 claim simply by failing to utilize or abide by the post-deprivation procedures and claim they were useless. Their position makes no sense.

Plaintiffs' argument that the administrative procedures are useless is disproved by this Court's 2017 Decision which reversed decisions by the IHO and SRO with regard to the years at issue in plaintiffs' first action. Avaras v. Clarkstown Cent. Sch. Dist., *supra*. The fact that an IHO or SRO comes to a conclusion which is different than plaintiffs about the adequacy of the FAPE based on the evidence presented at the impartial hearing is not evidence of a systematic deprivation of due process.[16]

While plaintiffs attempt to avoid dismissal by using certain "buzz words" in their brief, it is clear that the cases cited by them do not support their position. Heldman v. Sobol, 962 F.2d 148 (2d Cir. 1992) was a challenge to the manner in which school districts select hearing officers which raised questions about their impartiality. Plaintiffs have not alleged any issue with respect to the selection process. Here, plaintiffs' complaint is simply that they disagree with the IHO's

---

[16]     Plaintiffs assertion that the IHO "ignored plaintiffs' evidence is demonstrably false from even a cursory review of the IHO's Decision. The IHO was in the best position to access the credibility of the witnesses. The fact that based on the evidence presented his conclusions were not what plaintiffs thought they should be is not evidence of a systematic failure but simply that the IHO viewed the evidence differently than plaintiffs.

14

SAC/D1346681v2/M400070/C0166771

decision.

Hartford Bd. of Educ. v. J.A., 976 F. Supp.2d 164 (D. Conn.)[17] involved a situation where the school district refused to implement the hearing officer's decision. Thus, the district's violation deprived the plaintiff of relief that would ordinarily be available through the administrative process. Again, that is not the case here. The administrative review process was clearly available to plaintiffs if they timely served their appeal.

In Taylor v. Vt. Dep't of Educ., 313 F.3d 768 (2d Cir. 2002), there was no relief available to the plaintiff through the administrative process because, as the non-custodial parent who had no parental rights under state law, she lacked standing to pursue an administrative claim. That situation, too, has no applicability to the matter before this Court.[18]

Since plaintiffs had an adequate post-deprivation remedy, the §1983 claim must be dismissed.

## CONCLUSION

For the reasons stated herein and in the District's Main Brief in support of its motion to dismiss the complaint, the District's motion should be granted in all respects.

JASPAN SCHLESINGER LLP
*Attorneys for the Clarkstown School District Defendants*

By: _____
　　　STANLEY A. CAMHI
　　　300 Garden City Plaza
　　　Garden City, New York 11530
　　　516.746.8000

---

[17]　　Also reported as A. v. Hartford Bd. of Educ.

[18]　　Interestingly, Judge Sotomayor, who authored the decision, specifically stated that "a plaintiff cannot evade the IDEA's exhaustion requirement simply by framing his or her actions as one for monetary relief. Id. at 789. This is a position the District has taken in this case and is consistent with the Supreme Court's decision in Fry. (See Point III A)

15