UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
Connie Avaras, individually and on behalf of          :
her minor child, A.A.,
                                        Plaintiff,     :

        -against-                                      :
                                                              CASE NO. 18-CV-6964 (NSR)
Clarkstown Central School District, the Board         :
of Education for Clarkstown Central School
District, and the New York State Education            :
Department
                                        Defendants.   :
------------------------------------------------------------x


**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO**

**DISMISS THE COMPLAINT**


Tai H. Park
PARK JENSEN BENNETT LLP
*Attorney for the Plaintiff*
40 Wall Street, 41st Floor
New York, NY 10005
Ph: 646-200-6310
Email: tpark@parkjensen.com

1

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................. iii

PRELIMINARY STATEMENT ............................................................................................ 1

STATEMENT OF FACTS .................................................................................................... 4

      A. History of Litigation and This Court's 2017 Ruling ....................................... 4

      B. The District Retaliates Against the Parent ....................................................... 5

      C. The Futile Due Process Hearing Before IHO Kandilakis ............................... 8

      D. The State Review Officer's Arbitrary Conduct ............................................. 9

      E. The NYSED Ignores District's Violations of IDEA ..................................... 12

ARGUMENT ....................................................................................................................... 13

POINT I - THE COURT HAS SUBJECT MATTER JURISDICTION TO
ADJUDICATE IDEA CLAIMS AGAINST THE DISTRICT AND
NYSED. ................................................................................................................. 13

      A. Pendency Claims Do Not Require Exhaustion ............................................... 13

      B. SRO's Decision to Dismiss Appeal Cannot Affect Court's
Jurisdiction .................................................................................................... 14

      C. The SRO's Dismissal of Appeal Was Arbitrary and
Capricious ...................................................................................................... 16

      D. In the Alternative, The Futility Exception Should Be Held to
Apply .............................................................................................................. 22

      E. Factual Hearing Should be Held as to SRO Bias ......................................... 25

POINT II - THE EXHAUSTION REQUIREMENT DOES NOT APPLY TO
PLAINTIFF'S NON-IDEA CLAIMS AGAINST DEFENDANTS .................... 25

POINT III - THE COMPLAINT STATES A CLAIM UNDER THE ADA, RA AND
SECTION 1983 AGAINST THE DISTRICT. .................................................... 27

      A. Applicable Law .............................................................................................. 28

      B. The Complaint Alleges ADA and RA Violations By The
District ........................................................................................................... 28

      C. The Complaint States A Section 1983 Claim Against The
District ........................................................................................................... 34

POINT IV - THE COMPLAINT STATES A CLAIM UNDER THE IDEA,  ADA, RA
AND SECTION 1983 AGAINST DEFENDANT NYSED ................................. 36

    A.   The NYSED's Supervisory Responsibility Under IDEA ............................. 36

    B.   NYSED's Failure to Act After Receiving Notice of IDEA
Violations ............................................................................................. 38

    C.   NYSED Liability Under The IDEA, ADA, RA and Section
1983 ..................................................................................................... 39

CONCLUSION .................................................................................................. 40

## TABLE OF AUTHORITIES

**Cases**

*A.A. v. Bd. of Educ. Cent. Islip Union Free Sch. Dist.*,
196 F. Supp. 2d 259 (E.D.N.Y. 2002)...................................................................... 37

*A.A. v. N.Y.  State Educ. Dep't*,
87 F. App'x 216 (2d Cir. 2004) .............................................................................. 37

*A.A. ex rel. J.A. v. Philips*,
386 F.3d 455 (2d Cir. 2004)................................................................................... 37

*Arlington Cent. Sch. Dist. v. L.P.*,
421 F. Supp. 2d 692 (S.D.N.Y. 2006) .................................................................... 13

*Avaras v. Clarkstown Cent. Sch. Dist.*,
No. 15 Civ. 2042 (NSR), 2017 WL 3037402 (S.D.N.Y. July 17, 2017) .......................... passim

*Avaras v. Clarkstown Cent. Sch. Dist.*,
No. 15 Civ. 9679 (NSR), 2018 WL 4964230 (S.D.N.Y. Oct. 15, 2018) ................................. 26

*B.C. v. Mount Vernon School District*,
837 F.3d 152 (2d. Cir. 2016)................................................................ 28, 29, 30, 31

*B.C. v. Pine Plains Cent. Sch. Dist.*,
971 F. Supp. 2d 356 (S.D.N.Y. 2013)..................................................................... 20

*C.L. ex rel. K.L. v. Hastings-on-Hudson Union Free Sch. Dist.*,
No. 14 Civ. 4422 (NSR), 2015 WL 1840507 (S.D.N.Y. Apr. 21, 2015)................................. 37

*Cargill Int'l S.A. v. M/T Pavel Dybenko*,
991 F.2d 1012 (2d Cir. 1993)................................................................................. 25

*Cave v. E. Meadow Union Free Sch. Dist.*,
514 F.3d 240 (2d Cir. 2008).................................................................................. 27

*Doe v. E. Lyme Bd. of Educ.*,
790 F.3d 440 (2d Cir. 2015).................................................................................. 14

*Ellenberg v. New Mexico Military Institute*,
572  F.3d 815 (10th Cir. 2009)............................................................................... 30

*Eskenazi-McGibney v. Connetquot Cent. Sch. Dist.*,
84 F. Supp. 3d 221 (E.D.N.Y. 2015)  ..................................................................... 27

*Gabel ex rel. L.G. v. Bd. of Educ.*,
368 F. Supp. 2d 313 (S.D.N.Y. 2005)..................................................................... 33

*Grenon v. Taconic Hills Cent. Sch. Dist.*,
No. 05 Civ. 1109 (LEK), 2006 WL 3751450 (N.D.N.Y. Dec. 19, 2016).................... 16, 17, 20

*Hartford Bd. of Educ. v. J.A.*,
  976 F. Supp. 2d 164 (D. Conn. 2013) ................................................. 35

*Heldman v. Sobol*,
  962 F.2d 148 (2d Cir. 1992) ..................................................... 22, 24, 34

*Hope v. Cortines*,
  872 F. Supp. 14 (E.D.N.Y. 1995) .................................................... 27

*Kalliope R. ex rel. Irene D. v. N.Y. State Dep't of Educ.*,
  827 F. Supp. 2d 130 (E.D.N.Y. 2010) ............................................... 34

*Kamen v. Am. Tel. & Tel. Co.*,
  791 F.2d 1006 (2d Cir. 1986) ........................................................ 25

*Kelly v. Saratoga Springs City Sch. Dist.*,
  No. 09 Civ. 276 (GLS), 2009 WL 3163146 (N.D.N.Y. Sep. 25, 2009)................... 20

*Loeffler v. Staten Island Univ. Hosp.*,
  582 F.3d 268 (2d Cir. 2009) ......................................................... 27

*M.G. v. N.Y.C. Dep't of Educ.*,
  982 F. Supp. 2d 240 (S.D.N.Y. 2013) ................................................. 14

*M.H. ex rel. K.H. v. Mt. Vernon City Sch. Dist.*,
  No. 13 Civ. 3596 (VB), 2014 WL 901578 (S.D.N.Y. March 3, 2014)............... passim

*M.M. v. N.Y.C. Dep't of Educ.*,
  No. 15 Civ. 5846 (PKC), 2017 WL 1194685 (S.D.N.Y. March 30, 2017)............... 36

*McCarthy v. Dun & Bradstreet Corp.*,
  482 F.3d 184 (2d Cir. 2007) ........................................................... 4

*McElwee v. Cnty. of Orange*,
  700 F.3d 635 (2d Cir. 2012) ......................................................... 28

*Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*,
  297 F.3d 195 (2d Cir. 2002) ......................................................... 22

*N.Y.C. Dep't of Educ. v. S.H.*,
  No. 13 Civ. 3499 (AJN), 2014 WL 572583 (S.D.N.Y. Jan. 22, 2014) ............... 18, 19

*Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*,
  288 F.3d 478 (2d Cir. 2002) ................................................... 15, 24, 27

*R.B. ex rel. L.B. v. Bd. of Educ. of City of N.Y.*,
  99 F. Supp. 2d 411 (S.D.N.Y. 2000) ................................................. 33

*R.P. v. Pelham Union Free Sch. Dist.*,
  No. 16 Civ. 2898 (TPG), 2017 WL 4382190 (S.D.N.Y. Sept. 29, 2017) ........... 14, 16

*R.S. v. Bedford Cent. Sch. Dist.*,
  899 F. Supp. 2d 285 (S.D.N.Y. 2012) ..................................... 16, 20, 22, 24

*S.W. ex rel. J.W. v. Warren,*
    528 F. Supp. 2d 282 (S.D.N.Y. 2007) ................................................................. 33

*Scaggs v. N.Y. Dep't of Educ.,*
    06 Civ. 799 (JFB), 2007 WL 1456221 (E.D.N.Y. May 16, 2007) ..................................... 33, 34

*Schreiber v. E. Ramapo Cent. Sch. Dist.,*
    700 F. Supp. 2d 529 (S.D.N.Y. 2010) ................................................................. 31

*Straube v. Fla. Union Free School Dist.,*
    801 F. Supp. 1164 (S.D.N.Y. 1992) ................................................................... 39

*Streck v. Bd. of Educ. of E. Greenbush Sch. Dist.,*
    280 F. App'x 66 (2d Cir. 2008) ...................................................................... 36

*Taylor v. Vt. Dep't of Educ.,*
    313 F.3d 768 (2d Cir. 2002) ......................................................................... 35

*T.M. v. Cornwall Cent. Sch. Dist.,*
    752 F.3d 145 (2d Cir. 2014) ......................................................................... 14

*T.W. v. Spencerport Cent. Sch. Dist.,*
    891 F. Supp. 2d 438 (W.D.N.Y. 2012) ............................................................. 20, 24

*Y.D. v. N.Y.C. Dep't of Educ.,*
    No. 14 Civ. 1137 (LTS), 2016 WL 698139 (S.D.N.Y. Feb. 19, 2016) ................................. 37

**Office of State Review Decisions**

*Application of a Child with a Disability,*
    Appeal No. 00-062 .................................................................................. 21

*Application of a Child with a Disability,*
    Appeal No. 03-007 .................................................................................. 17

*Application of a Child with a Disability,*
    Appeal No. 97-036 .................................................................................. 21

*Application of a Student with a Disability,*
    Appeal No. 09-099 .................................................................................. 18

*Application of the Bd. of Educ. of the Mamaroneck Union Free Sch. Dist.,*
    Appeal No. 16-080 .................................................................................. 20

*Application of the Bd. of Educ. of the Sachem Cent. Sch. Dist.,*
    Appeal No. 14-169 .................................................................................. 21

*Application of the Bd. of Educ. of the Harborsfield Cent. Sch. Dist.,*
    Appeal No. 10-044 .................................................................................. 18

**United States Constitution**

Eleventh Amendment.................................................................................................... 40

Fourteenth Amendment ........................................................................................... 34, 35

**Statutes**

20 U.S.C. § 1400, *et seq*.................................................................................... passim

29 U.S.C. § 794................................................................................................... passim

42 U.S.C. § 12101, *et seq*.................................................................................. passim

42 U.S.C. § 1983................................................................................................. passim

**Regulations**

8 N.Y.C.R.R. § 200.4(d)(2)(ix)................................................................................ 32

8 N.Y.C.R.R. § 279.1(b) ........................................................................................... 24

8 N.Y.C.R.R. § 279.13...................................................................................... 11, 16, 17

34 C.F.R. § 300.518(a)............................................................................................... 13

Fed. R. Civ. P. 15(a) .................................................................................................. 40

Plaintiff Connie Avaras ("Plaintiff" or "Parent"), on behalf of herself and her son, A.A., respectfully submits this memorandum of law in opposition to the motions to dismiss by the Clarkstown Central School District, the Board of Education for Clarkstown Central School District, (the "District"), and the New York State Education Department ("NYSED").

## PRELIMINARY STATEMENT

Defendants' motions rely on mischaracterizations of the Complaint, and ignore detailed allegations of their multi-year, persistent violations of law.  This is the second complaint the Parent has had to file in this Court just to get the Defendants to comply with basic legal obligations.  The Court previously ruled that the District violated A.A.'s rights to a free appropriate public education ("FAPE") for his fifth and sixth grades.  As the Complaint explains, the District retaliated against the Parent for refusing to drop the litigation after this Court order.  Moreover, as to A.A.'s subsequent grade years, the District engaged in exactly the same conduct that the Court found illegal for the prior years.  Specifically, the Court had found that a non-mainstreamed, special education classroom with a student-teacher ratio of 15:1 was too large and would not give A.A. the individualized attention he needed.  Yet, in the seventh, eighth and ninth grade individualized education plans ("IEPs"), the District recommended a still larger class, almost double the size: a general education classroom with between 24 to 30 students.  Moreover, the Court had found that the District also failed to offer FAPE in the sixth grade because the District relied entirely on stale, outdated information regarding A.A.  Yet, for each of the subsequent four years, the District repeatedly relied on stale information.

The Complaint recites a host of other violations of law by the District.  It also explains the administrative due process procedure proved utterly inadequate to remedy the District's contumacious behavior.  After a six-day hearing in the Fall of 2017, involving 14 witnesses, the

1

hearing officer issued a decision ignoring every single one of the Parent's legal and factual claims, with no meaningful analysis of any kind.  For example, he ignored the law of pendency, which requires that the District pay for the tuition of a student at a private placement while claims are fully litigated.  This doctrine was of such significance, this Court has since issued a preliminary injunction against the District on the basis of that law.  Yet, the hearing officer did not even see fit to address it.  He also concluded that the District offered FAPE by recommending a classroom that could contain as many as 24 to 30 students, simply ignoring this Court's contrary findings as to a prior year.  He also found FAPE for each of the challenged years notwithstanding the District's consistent reliance on outdated information.

The Parent dutifully appealed to the State Review Officer ("SRO").  In 2018, Defendant NYSED assigned this appeal to SRO Justyn Bates, the same SRO who this Court concluded in July 2017 had ignored key evidence adduced by the Parent in the first due process hearing. Predictably, the SRO denied the Parent any relief.  Except this time, the SRO did not even bother with any analysis of the merits of the appeal.  He instead seized on a one-day delay in serving the appeal on the District as a basis for dismissing the appeal in its entirety.  The Parent presented uncontroverted proof that the process server utilized by her counsel had inexplicably ignored counsel's instructions to serve the papers the day they received it and decided, instead, to wait till the next morning to do so.  The Parent had absolutely nothing to do with this failure, and the District never claimed any prejudice.  Yet, ignoring this evidence, the SRO dismissed the appeal, leaving intact the legally indefensible ruling of the IHO.

This is not due process.  It is a narrative worthy of Lewis Carroll or Franz Kafka.  Setting the purpose of IDEA on its head, the District and the NYSED use administrative bureaucracy to lay procedural sinkholes for a Parent who only wants to ensure her son learns.  It hardly matters

2

to the Defendants that a federal court warns all the parties to pay attention to what the law really requires and fulfill their educational responsibilities.

Against this backdrop, the Defendants seek to deny the Parent and A.A. any legal recourse. First, they say the Court lacks subject matter jurisdiction over the IDEA claims because – too bad for the Parent – the process server engaged by her counsel inexplicably served papers a day too late. The law is more just than that. The exhaustion rule has no application where, as here, the Parent sought to follow all administrative processes but was dismissed by a biased SRO. In any event, the SRO's decision to rely on a technicality totally outside the control of the Parent to refuse her any relief was arbitrary and capricious and cannot divest this Court of power to review the egregious conduct alleged in the Complaint. There are myriad other reasons, as well, to deny Defendants' subject matter jurisdiction motion, as explained below.

The Defendants also argue that the Court lacks subject matter jurisdiction over the non-IDEA claims – brought under the Rehabilitation Act ("RA"), the Americans with Disabilities Act ("ADA") and 42 U.S.C. § 1983 – because they are allegedly repackaged IDEA claims. This argument fails for the same reasons as above. But in addition, this Court rejected that very argument repeatedly: Plaintiff seeks relief that is not available under the IDEA.

The Defendants also argue that, in any event, the non-IDEA claims should be dismissed for failure to state a claim. In so doing, they mischaracterize the allegations in the Complaint. Read fairly, the factual allegations demonstrate a school district that simply flouts the law, repeatedly and consistently, against the Parent and A.A. The District's course of conduct in retaliating against the Parent for pursuing her legal remedies, and in systematically denying A.A. his educational opportunities notwithstanding clear legal obligations, caused A.A. and the Parent substantial injury, as alleged in the Complaint.

3

With respect to Defendant NYSED, the Complaint recites factual allegations demonstrating that the Defendant had full notice of each of the District's violations of law and did nothing to remedy it, in violation of its supervisory obligations under the IDEA.

Defendants' motions should be denied in their entirety.

**STATEMENT OF FACTS[1]**

**A. History of Litigation and This Court's 2017 Ruling**

The Parent has been in litigation with the District for several years at both the administrative level and in this Court, on behalf of her two learning disabled sons, A.A. and N.A.

A.A. was born on July 17, 2002 and has been diagnosed with ADHD, dyslexia, and a learning disability.  He attended the Woodglen Elementary School ("Woodglen"), a school within the District, through fourth grade (school year 2011-2012).  When the District consistently failed to provide A.A. with FAPE, the Parent placed him at the Hawk Meadow Montessori School ("Hawk Meadow").  Seeking relief in connection with A.A.'s early school years through 2014-15, the Parent pursued a due process complaint before an Impartial Hearing Officer ("IHO"), appealed the adverse decision to the NYSED (which was assigned to SRO Justyn Bates), and then filed a complaint in this Court ("First Complaint").  Compl. ¶¶ 3(b), 47.

As here, the Parent alleged claims under the IDEA, 20 U.S.C. § 1400 *et seq.*, as well as the ADA, 42 U.S.C. § 12101; Section 504 of the RA, 29 U.S.C. § 794, and 42 U.S.C. §1983.  She named as defendants the District as well as the NYSED.  Compl. ¶¶ 47-48.

---

[1] Assertions of fact herein are taken from the Complaint filed August 3, 2018, (No. 18 Civ. 6964 (NSR), ECF No. 5), as well as documents that are incorporated by reference in the Complaint.  *See McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 191 (2d Cir. 2007) (When deciding a motion to dismiss under Rule 12(b)(6), the Court's "review is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference.").  Such documents are attached to the accompanying declaration of Tai H. Park, dated December 7, 2018 ("Park Decl.").

4

On July 17, 2017, this Court issued its Opinion and Order ("2017 Order").  As relevant here, the Court concluded that for the two school years it examined on the merits – 2012/13 and 2013/14 – the District had failed to offer FAPE.  As to school year 2012/13, the Court found that the 15:1 student-to-teacher ratio special education class offered by the District was inappropriate for A.A. because he required far more individualized attention in a smaller setting where a teacher can apply multi-sensory teaching methods to help A.A. learn.  *Avaras v. Clarkstown Cent. Sch. Dist.*, No. 15 Civ. 2042 (NSR), 2017 WL 3037402, at *18-19 (S.D.N.Y. July 17, 2017).  The Court found that, in reaching the contrary conclusion, IHO Brandenburg and SRO Bates had both failed to address critical evidence from the Parent's witnesses.  *Id.*  And, again contrary to the IHO and SRO, the Court found that Hawk Meadow provided an appropriate alternative placement in that it offered very small class sizes without distinguishing between special education and general education classes, and where they applied 1:1 individualized multisensory teaching methods.  *Id.* at *22-24.  As the Court expressly warned: "The District cannot skirt its obligations under the IDEA by only providing two choices – education is neither a one size fits all proposition nor is it simply binary." *Id.* at *20.

As to school year 2013/14, because the District had not even bothered to update its information on A.A. in the new IEP as the IDEA plainly required, even the IHO and SRO had no choice but to conclude that FAPE was not offered for that year.  *Id.* at *20-21.  The Court's order expressly affirmed that obvious legal conclusion.  *Id.*

**B. The District Retaliates Against the Parent**

The District filed its notice of appeal from the Court's order, on August 14, 2017, and in response, on August 24, 2017, the Parent filed a notice of cross-appeal from the Court's rulings dismissing the ADA, RA, and Section 1983 claims.  No. 15 Civ. 2042 (NSR), ECF Nos. 78, 79.

5

The Complaint alleges that the District retaliated against the Parent by reversing and rescinding its prior decision to provide A.A. with busing to and from his private school.  Prior to the summer of 2017, the District had been providing transportation for A.A. to Hawk Meadow while the litigation wended its way through the administrative and judicial stages.  Compl. ¶¶ 55-56.  As A.A. finished the 2016/17 school year, he aged out of that school and could not continue there.  The District had not informed the Avaras family about plans to offer a public program for him at the District.  *Id.*  The Parent and A.A. began researching similar and appropriate high school programs for placement to meet his educational needs.  They identified the New York Military Academy ("NYMA") as a potential nonpublic school suitable for all of A.A.'s needs as well as his post-secondary interests and goals.  *Id.*  Among other things, they were especially drawn to the regimented schedule that reportedly helped children with attention deficits focus and learn more productively.  *Id*. at ¶¶ 57-58.

The Parent contacted the District by phone to notify them that A.A. may be attending NYMA and asking for confirmation that the District would continue to provide busing to that new location as they had to Hawk Meadow in previous years. Compl. ¶ 60; Park Decl. Ex. 1.[2] On July 17, 2017, she followed up with an email to David Carlson, Director of the Committee on Special Education and Supervisor of Pupil Services.  Compl. ¶ 61; Ex. 1.  Carlson was fully familiar with the history of the District's evaluations of A.A. and his disability, as he had previously approved the similarity of Hawk Meadow's program for the related service of transportation.  *Id.*

By email dated July 25, 2017, Mr. Carlson informed the Parent that he had approved busing for A.A. to NYMA.  Compl. ¶ 62; Ex. 1.  Specifically, he stated that he "let transportation

---

[2] All references to Exhibits hereinafter are to documents annexed to the Park Declaration submitted herewith.

know to go forward with scheduling busing" for A.A. to the new location. *Id.* Based on this decision, the Parent then began working on A.A.'s acceptance to NYMA. Upon enrollment, among other things, the Avaras family paid for A.A.'s uniform. Compl. ¶ 63. Moreover, the transportation department at the District and a representative of NYMA began working together on the details of A.A.'s busing. Compl. ¶ 64; Ex. 2. The Parent signed the final NYMA paperwork on August 21, and A.A. began attending NYMA that day, pursuant to its normal orientation curriculum for new students. Compl. ¶ 65.

In the meantime, the District had filed its appeal and the Parent responded with a notice of cross-appeal on August 24. Compl. ¶ 52. Seeking some resolution to the ongoing dispute between the Parent and the District, the Parent asked for a meeting with the Superintendent, and such meeting was held on August 30, 2017. Compl. ¶ 66. The Assistant Superintendent was also present. *Id*. During the meeting, the Parent stated her view that the District was wasting taxpayer dollars to pursue an appeal from Judge Roman's decision, as well as the fact that she had had no choice but to file a notice of cross-appeal in response to the District's appeal. Compl. ¶ 67.

The very next day, on August 31, 2017, the District's outside litigation counsel, Laurel Kretzing, called the Parent to inform her that the District had prepared a letter purporting to revoke transportation to NYMA. Compl. ¶ 68. She asked whether the Parent would consider withdrawing the case in exchange for the District "reinstating" A.A.'s transportation. *Id.* The Parent rejected this offer. *Id.*

Right after the call, the District's counsel forwarded to the Parent by email a letter from Thomas Balko, purporting to rescind the decision to provide A.A. with transportation. Compl. ¶ 69; Ex. 3. Mr. Balko is the District's Director of Transportation, and his letter was

7

dated August 28, 2017, that is, two days before the Parent's meeting with the Superintendent, and three days before the call from counsel.  *Id.*  During the Parent's meeting on August 30, the District representatives had made no mention of revoking transportation.  Compl. ¶ 69.  The Complaint goes on to allege a detailed chronology that demonstrates that this about-face was retaliation for the Parent's pursuit of her child's legal rights.  Compl. ¶¶ 54-78.

### C. The Futile Due Process Hearing Before IHO Kandilakis

On October 4, 2017, the Parent filed a second due process complaint concerning A.A. against the District.  Compl. ¶ 79.  One of the key legal claims was pendency law.  *Id.*  Other relief sought included tuition reimbursement for A.A.'s attendance at Hawk Meadow during the school years 2014/15, 2015/16, and 2016/17;[3] as well as tuition payments for A.A.'s attendance at NYMA for 2017/18 through high school graduation.

The matter was assigned to IHO George Kandilakis, and the District's counsel notified Parent of the same.  A hearing was held and testimony taken over the course of six days: October 31, 2017, November 6, 2017, November 8, 2017, November 15, 2017, November 29, 2017, and December 5, 2017.  Compl. ¶ 81.  The Parent called seven witnesses to testify, including herself and A.A.  The District also called seven witnesses.  *Id.*  Represented by the undersigned counsel at the hearing, the Parent filed a 30-page post hearing brief summarizing the evidence and her legal position.  Compl. ¶ 85; Ex. 4.  Among other arguments, the Parent demonstrated that once she filed a due process complaint, the law of pendency required that the District maintain the child in the then-current placement, which, here, was NYMA.  Compl. ¶¶ 85, 128; Ex. 4 at 1-5, 19, 22-23.  The Parent also summarized the myriad bases for finding that the District failed to offer FAPE for each of the challenged school-years.  Ex. 4 at 5-13, 19-22, 23-26.  Among these

---

[3] Because the Parent's First Complaint was filed in this Court in 2014, the Court adjudicated claims covering school years through 2013/14.

legal bases was the District's repeated failure to update the IEPs with current information about A.A.'s educational progress and status.  Compl. ¶¶ 100, 124(c), 129(c); Ex. 4 at 10-11, 20-21, 24-25.  This failure had caused even the IHO and SRO in the first due process hearing to conclude, in 2015, that the District failed to offer FAPE for the year 2013/14.  *See Avaras*, 2017 WL 3037402, at *20.  Yet, this same failure was replicated each year thereafter.

IHO Kandilakis ignored all of this.  He instead adopted nearly wholesale the District's position.  Compl. ¶¶ 86, 92-140; Ex. 5.  Indeed, he went so far as to hold that one of the school years was time-barred, even though the District itself never made such a baseless and inaccurate assertion.  Compl. ¶¶ 92-93; Ex. 5 at 8.

### D. The State Review Officer's Arbitrary Conduct

The Parent appealed to the State.  The NYSED assigned the appeal to SRO Bates.  He listed each of the IHO findings as well as the Parent's myriad challenges (Ex. 6 at 5-7), then promptly dismissed the appeal because it was served a day late.  Compl. ¶ 143; Ex. 6 at 7-9.  The chronology is as follows:

The Parent timely filed a notice of intent to seek review by the SRO on March 26, 2018.  Compl. ¶ 141; Ex. 7.  Seven days before the due date of the appeal, the Parent's counsel sought to obtain a short extension of time to file the appeal.  Ex. 8 at Attach. G.  The reason for the request was the complexity of the issues raised in the due process hearing, the fact that the Parent's due date for filing a reply brief in the Second Circuit (in connection with the First Complaint) was due the same week, and the press of business in other matters for which counsel was responsible.  *Id.*  A NYSED representative responded by stating that "a determination [of] whether to excuse the late service of a request for review can be made only after a request for review is received by the Office of State Review."  Ex. 8 at Attach. H.  In short, according to the

9

NYSED's surprising procedures, one cannot know before the appeal's due date whether the request for an extension would be granted or not. Faced with this procedure, counsel worked diligently with the Parent to meet the deadline. On April 11, 2018, counsel instructed the process server, Elite Legal Services ("ELS"), that the papers would have to be filed on April 16. Compl. ¶ 149(a); Ex. 8 at Attach. D. The appeal was prepared in time and sent to the process server agency in the early afternoon of April 16, with instructions that they effect service that day. Compl. ¶ 149(c), (d); Ex. 8 at Attach B ¶¶ 4-5 (Affidavit of Laura Coughlin, paralegal at Counsel's firm ("Coughlin Aff.")[4], Ex. 8 at Attach. C (Emails with ELS 4/16/18). ELS confirmed service would be effected that day. Ex. 8 at Attach B ¶ 5 (Coughlin Aff.). For reasons that remain unclear, the process server decided to wait till the next morning at 9:03. Compl. ¶ 149(e),(f); Ex. 9. When challenged the next day, ELS claimed they had not been aware of the deadline, notwithstanding the communications on April 11 and 16. Compl. ¶ 149(e); Ex. 8 at Attach. B (Coughlin Aff.) ¶ 6.

In submitting the appeal to the SRO, counsel explained the reason for the short delay of service in a cover letter to the SRO dated April 17, 2018. Compl. ¶ 146; Ex. 8 at Attach. A (Cover Letter to SRO 4/17/18). A copy of the appeal was sent to the District's counsel, and counsel made no objection to the brief delay. Compl. ¶ 147; Ex. 8 at Attach. E (Email to District 4/17/18). But, in its formal response to the appeal, the District raised the delay as one of the bases for rejecting the claims. Compl. ¶ 147.

The Parent promptly filed a reply, demonstrating that the delay was not the fault of the Parent's counsel and certainly totally outside the control of the Parent. Compl. ¶ 148; Ex. 8. Moreover, the reply set forth legal authority for the fact that, under these circumstances, the SRO

---

[4] The Coughlin affidavit was annexed as Attachment B to the Parent's Reply brief to the SRO dated April 27, 2018. See Compl. ¶ 149 and SRO decision (Ex. 6) at 8, referencing "Ex. B."

10

should apply his discretion to excuse the delay for good cause. *Id.* Specifically, the reply explained through the sworn Coughlin Affidavit and attached email communications, the above-described chronology of events: ELS was told in writing on April 11 to serve the papers on the District by April 16, 2018 and again orally on April 16, 2018. ELS confirmed it would, yet inexplicably decided to wait till the next morning to serve, at 9:03 am. Counsel had used ELS in this case to serve the District with papers on at least three prior occasions without any service issues and had no reason to anticipate that such a delay would occur. Compl. ¶ 149; Ex. 8 at 3.

The District has never argued that it was prejudiced in any way by the delay, and it served its response within the time specified without asking the SRO for an extension. Compl. ¶ 152. It also did not contest the evidence submitted by the Parent regarding the circumstances of the delay. *Id.* at ¶ 153.

Yet, SRO Bates seized on the brief delay to dismiss the appeal in its entirety. He made no effort to address the evidence of factors outside the control of the Parent. Compl. ¶ 154-55. To the contrary, he distorted the record evidence. First, he claimed that the Parent had not complied with 8 N.Y.C.R.R. § 279.13 because she did not describe the good cause for delayed service "in her request for review." Ex. 6 at 7-8. He ignored the fact that it was impossible to provide that explanation in the appeal because the Parent expected the Request for Review to be timely served on April 16 and only found out about the delay after the fact. When she did learn, her counsel provided the explanation in the cover letter to the SRO and to District's counsel. Compl. ¶¶ 146, 149(h); Ex. 8 at Attach. A. The SRO also claimed "[t]here are no instructions from the Parent's counsel indicating that [April 16] was the deadline," and that "the only explanation [provided by the Parent] is that the process server was not aware that the date is the last day for service." Ex. 6 at 8. This was wrong. The Parent's Reply brief, attaching the

11

Coughlin Affidavit and emails, explicitly informed the SRO that ELS had been instructed in writing on April 11 that April 16 was the deadline, and that ELS orally confirmed on April 16 the papers would be served that day. Compl. ¶ 149(a), (c), (d); Ex. 8 at Attach. B ¶¶ 2, 5 (Coughlin Aff.). The SRO's statement that ELS "was not aware" of the service date was the false excuse that ELS gave Coughlin after it missed the deadline. Compl. ¶ 149(e). The excuse contradicted the April 11 email and Coughlin's sworn statement. Yet, the SRO relied on the ELS excuse it gave Coughlin as the actual reason for the delay, ignoring all other evidence to the contrary. Compl. ¶ 149(e); Ex. 6 at 8.

### E. The NYSED Ignores District's Violations of IDEA.

The Complaint alleges that the NYSED was on notice of the District's systemic failures. Its website includes information in a page called "Special Education School District Data Profile," which demonstrates that from school years 2005-2006 through 2016-2017, the District flunked a number of important metrics, Compl. ¶ 158; Exs. 10-21, including: for years 2009-2011 and 2014-2015, the District failed to meet New York State targets in the category "performance on state assessments and adequate yearly progress" in English Language Arts for Grades 3-8. Compl. ¶ 158(a)(i); Exs. 14 and 15 at 2, Ex. 19 at 3. For years 2013 through 2017: the District failed to meet New York State targets in the category "participation in and performance on state assessments" in English Language Arts and Math for Grades 3-8. Compl. ¶ 158(a)(ii); Exs. 18 and 19 at 2-3, Ex. 20 at 2, Ex. 21 at 2-3.

With respect to the requirement for students transitioning to high school, the State measures the "percent of youth aged 15 and above with an IEP that includes coordinated, measurable, annual IEP goals and transition services that will reasonably enable the student to meet the post-secondary goals." Compl. ¶ 158(b). For school year 2015/16, the NYSED data

12

shows that the District had an appropriate transition IEP for a mere 23.3% of its eligible students. Compl. ¶ 158(b)(ii); Ex. 20 at 7. The State target was 100%. *Id.*

The District failed A.A. in this regard as well. Its purported IEP for the 2017/18 school year, when A.A. would be 15 years old, did not provide for any meaningful transition services, nor could it since they never bothered to meet with A.A. Compl. ¶ 129; Ex. 26.

## ARGUMENT

### POINT I: THE COURT HAS SUBJECT MATTER JURISDICTION TO ADJUDICATE IDEA CLAIMS AGAINST THE DISTRICT AND NYSED.

Both the District and NYSED Defendants move to dismiss the IDEA claims based on purported lack of subject matter jurisdiction, claiming that the Parent and A.A. failed to exhaust administrative remedies when they missed by one day the deadline to serve an appeal to the SRO. District Br. at 4-9; NYSED Br. at 21-22. Their motions are meritless and should be denied for at least five separate reasons.

#### A. Pendency Claims Do Not Require Exhaustion

Among other IDEA claims, the Complaint relies upon the law of pendency to seek injunctive relief, requiring the District to pay for A.A.'s tuition and other services at Hawk Meadow and NYMA during the pendency of these proceedings. Compl. ¶¶ 31-35. Such pendency claims are not subject to the exhaustion requirement.

20 U.S.C. § 1415(j) provides, in relevant part:

> [D]uring the pendency of any proceedings conducted pursuant to this section, unless the State or [school district] and the parents otherwise agree, the child shall remain in the then-current educational placement of the child.

*See also* 34 C.F.R. § 300.518(a). "The purpose of the pendency provision is to provide stability and consistency in the education of a student with a disability." *Arlington Cent. Sch. Dist. v. L.P.*,

421 F. Supp. 2d 692, 696 (S.D.N.Y. 2006).  As the Second Circuit has explained, § 1415(j) reflects Congress's decision that all disabled children should keep their existing educational program until any dispute over their placement is fully and finally resolved.  *T.M. v. Cornwall Sch. Dist.*, 752 F.3d 145, 170-71 (2d Cir. 2014).

Thus, as the Court explained in *Doe v. East Lyme Board of Educ*ation, 790 F.3d 440, 445 (2d Cir. 2015), pendency claims do not require exhaustion, because " 'an action alleging violation of the stay-put provision falls within one, if not more, of the enumerated exceptions to' the IDEA's exhaustion requirement." *Id*. (quoting *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ*., 297 F.3d 195, 199 (2d Cir. 2002)); *M.G. v. N.Y.C. Dep't of Educ*., 982 F. Supp. 2d 240, 247 (S.D.N.Y. 2013) ("A party seeking a judicial remedy for a violation of the stay-put provision need not exhaust its administrative remedies.") (citation omitted).

### B.  SRO's Decision to Dismiss Appeal Cannot Affect Court's Jurisdiction

While it is true that district courts in this Circuit have held that an SRO's dismissal of an appeal for failure to meet a deadline is equivalent to a failure to exhaust administrative remedies under the IDEA, *see, e.g.*, *R.P. v. Pelham Union Free Sch. Dist.*, No. 16 Civ. 2898 (TPG), 2017 WL 4382190, at *3 (S.D.N.Y. Sept. 29, 2017), the Second Circuit has not had occasion to address this legal proposition.  Moreover, none of the cited cases present the unique facts here.

The Parent respectfully submits that the exhaustion rule should not be applied when, as here, an SRO refuses to exercise his discretion to excuse a parent for missing a service deadline by a single day for reasons outside her control.  None of the salutary purposes of the exhaustion rule would be furthered by the result Defendants advocate.  Indeed, the only effect would be to enable the State agency to avoid judicial review of plainly unlawful conduct by playing a game of "gotcha" with the parents and students.

14

As the Second Circuit held in *Polera v. Board of Education of Newburgh Enlarged City School District*, 288 F.3d 478 (2d Cir. 2002):

> The exhaustion requirement "prevents courts from undermining the administrative process and permits an agency to bring its expertise to bear on a problem as well as to correct its own mistakes." *Heldman v. Sobol,* 962 F.2d 148, 159 (2d Cir. 1992). "Exhaustion of the administrative process allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical educational issues, furthers development of a complete factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children." *Hoeft v. Tucson Unified Sch. Dist.,* 967 F.2d 1298, 1303 (9th Cir. 1992).

*Id*. at 487 (emphasis added). In short, the purpose of the exhaustion rule under the IDEA is to give purported education experts the chance to efficiently correct educational programs or at a minimum explain why no corrections are necessary. If, as here, the IHO finds for the school district and the SRO refuses to consider the appeal for entirely procedural technical reasons, the Court still has a full record from which to decide whether a child received educational benefits required under the IDEA.

There is no reason for requiring that the SRO also weigh in before the Court can assert subject matter jurisdiction, when the SRO deliberately chose not to add his expertise to the record. It would be one thing if the SRO had no choice in the matter and that the regulations required dismissal even for a one-day delay. But, as discussed *infra* at 16-22, that is not the case; the SRO has the power to excuse the lateness. To hinge a Court's jurisdiction on an SRO's decision whether to dismiss an appeal is functionally equivalent to giving the NYSED and its representative SROs the power to strip this Court of the ability to review an IHO's decision, no matter how erroneous it may be. That is not the intent of the IDEA's administrative processes. To the contrary, as *Polera* makes clear, the purpose of the exhaustion rule is to give the agencies a chance to "correct shortcomings in their educational programs." 288 F.3d at 487.

15

Where, as here, the SRO has declined to even address the District's and IHO's incorrect decisions, just because of a nonprejudicial, technical delay outside the control of the Parent, the Court should conclude that it is not divested of subject matter jurisdiction.

## C. The SRO's Dismissal of Appeal Was Arbitrary and Capricious

In any event, the Court has subject matter jurisdiction because SRO Bates' decision was arbitrary and capricious. *See R.P.*, 2017 WL 4382190, at *3 (courts will uphold an SRO decision dismissing appeal for untimeliness unless decision "is arbitrary and capricious."). To determine whether a decision was arbitrary and capricious, the Court asks whether " 'the agency's decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.' " *Id*. (quoting S*tate of N.Y. Dep't of Soc. Serv. v. Shalala,* 21 F.3d 485, 492 (2d Cir.1994)). The law of arbitrary and capricious administrative behavior "requires consistency in agencies' application of law, so that parties in identical circumstances are treated identically." *R.S. v. Bedford Cent. Sch. Dist.*, 899 F. Supp. 2d 285, 291 (S.D.N.Y. 2012) (emphasis added). But because "parties' circumstances are almost never totally identical, ultimately the rule is a rule of reasonableness." *Id*. (citing *Cappadora v. Celebrezze,* 356 F.2d 1, 6 (2d Cir. 1966)) (emphasis added). SRO Bates' decision is both unreasonable and inconsistent.

Defendants agree that an SRO "may excuse a failure to timely serve or file a request for review within the time specified for good cause shown." 8 N.Y.C.R.R. § 279.13. SRO Bates' refusal to do so here, in light of the Parent's uncontroverted factual submission, was most unreasonable. As the Court noted in *Grenon v. Taconic Hills Central School District*, "good cause for late filing would be something like postal service error, or, in other words, an event that the filing party had no control over." No. 05 Civ. 1109 (LEK), 2006 WL 3751450, at *5 (N.D.N.Y. Dec. 19, 2016). In making this observation, the Court relied on *Application of a*

16

*Child with a Disability*, Appeal No. 03-007, in which a short delay was excused because of an error in the overnight mail delivery service. *Id.*

As the Parent explained to SRO Bates, though affidavit and email evidence, the good cause for the delay here was functionally equivalent to an error in mail service and in fact "an event that the filing party had no control over." *Grenon*, 2006 WL 3751450, at *5. Notwithstanding express instruction delivered by email on April 11 and orally on April 16, the process server inexplicably waited past the April 16 deadline to effect service the next morning. This notwithstanding the fact that ELS expressly confirmed it would serve on the 16th. When challenged about this the next day, ELS falsely claimed it was unaware of the deadline. Compl. ¶ 149(e). At a minimum, the April 11 email put the lie to that assertion.

Despite having all this laid out for him, the SRO just ignored it. First, reciting 8 N.Y.C.R.R. § 279.13, the SRO faulted the Parent for not describing the good cause for delayed service "in her request for review." Ex. 6 at 7-8. The District makes this argument as well. Dist. Br. at 6. But the argument makes no sense. Logically, the rule can only apply where the filing party is aware that there will be a delay prior to serving the Request for Review. Here, the Parent had no reason to believe a delay would occur. A parent cannot describe good cause in the Request for Review where the process server timely receives the papers, is instructed to serve that day, and then fails to do so.

In addition to this illogic, the SRO distorted the evidence to conclude the Parent never made the process server aware of the April 16 deadline, and that "the only explanation [provided by the Parent] is that the process server was not aware that the date is the last day for service." Ex. 6 at 8. This is simply untrue, and yet the District asks this Court to adopt the same fallacious conclusion. Dist. Br. at 6 n.1. As shown above and alleged in the Complaint, the Parent's

17

assertions in her Reply submission to the SRO, complete with a sworn affidavit and attached emails (which had all been uncontroverted by the District), explicitly informed the SRO that ELS had been instructed, in writing on April 11 that April 16 was the deadline, and again orally on April 16, with ELS confirming the papers would be served that day. The SRO's statement that ELS "was not aware" of the service date was the provably false excuse that ELS gave Coughlin after it missed the deadline. Compl. ¶149(e); Ex. 8 at Attach. B ¶ 6 (Coughlin Aff.). SRO Bates' decision to ignore the contrary proof that counsel did instruct the process server is an arbitrary and capricious determination.

From his false premise that the Parent never provided him with an explanation for the delay, SRO Bates went on to rely on two other SRO decisions which are plainly distinguishable. In *Application of the Board of Education of the Harborsfield Central School District*, Appeal No. 10-044, the District failed to explain the reason for their untimely filing (which was late by two days), even though the District's attorney, who regularly argued the timeliness of petitions before the SRO, was well-versed in filing deadlines. The District and its counsel apparently just ignored the deadline. In *Application of a Student with a Disability*, Appeal No. 09-099, the filing party miscalculated the deadline and was late by four days. The appealing party did not even know of the miscalculation until they received the District's answer. There was no good reason for that miscalculation explained to the SRO.

SRO Bates also relied on *New York City Department of Education v. S.H.*, No. 13 Civ. 3499 (AJN), 2014 WL 572583 (S.D.N.Y. January 22, 2014), which the District also relies on for its current motion to dismiss. *See* Dist. Br. at 5. In this case, the SRO dismissed the school district's appeal for untimeliness, and the Court affirmed. Obviously, an appeal by a district does not implicate the same interests embodied in the IDEA as a parent's appeal. In this case, the

18

district at issue was the New York City Department of Education that deals with these matters regularly.  It was one-day late in serving the appeal. The SRO "noted that the City had known since May 17, 2012 that Defendants' law firm was not authorized to accept service on Defendants' behalf, that the City waited until the last minute to attempt personal service, and that 'difficulties effectuating personal service and the need for substitute service are foreseeable.' " *Id.* at \*6 (citations and quotations omitted).  It was unreasonable for the City to think it could serve the parent by dropping by her apartment building.  *Id.*

Here, in contrast, there was no foreseeable hazard in seeking service on the day of the deadline.  The respondent here was a school district with a designated office, and this process server had effected service at the location multiple times in the past without any incident.  Compl. ¶ 149(g); Ex. 8 at Attach. F.  ELS had received the papers from counsel in the early afternoon, leaving it hours to complete service, and it expressly assured counsel's office that it would serve that day.  Compl. ¶ 149(a), (d); Ex. 8 at Attach. B ¶ 5 (Coughlin Aff.).  Thus, SRO Bates's reliance on *S.H.* to justify his decision to dismiss the Parent's appeal is entirely unreasonable.  The case is a study in contrast to what happened here.

The District argues that waiting till April 16 to effect service was "clearly inexcusable since, as the SRO pointed out in her [sic] decision . . . the parent signed the verification for the appeal two days before the filing deadline."  Dist. Br. at 6, 7-8.  It fails to acknowledge, however, that April 14, 2018, was a Saturday.  Personal service on the school district was not possible till Monday the 16th.  And there is nothing "inexcusable" about counsel taking a couple of hours on that Monday morning for last minute diligence on the papers, before delivering them to the process server.  The whole purpose of a "good cause" basis for excusing a delay that exceeds the deadline is in the event something unfortunate happens that was outside the control

19

of the party.  That is the implication of the *Grenon* Court's observation that good cause is

"something like postal service error, or, in other words, an event that the filing party had no

control over."  2006 WL 3751450, at \*5.

None of the other cases cited by the District supports the SRO's arbitrary and capricious

decision.  The District cites *B.C. v. Pine Plains Central School District*, 971 F. Supp. 2d 356,

362-63 (S.D.N.Y. 2013).  Dist. Br. at 5.  But there, the SRO identified no less than 6 separate

violations of the rules, including the fact that "Plaintiff failed to offer any explanation why

service could not be effectuated within the proper timeframe."  *Id*. at 362.  Similarly, in *T.W. v.*

*Spencerport Cent. Sch. Dist.,* 891 F. Supp. 2d 438, 440-41 (W.D.N.Y. 2012), the appeal to the

SRO was filed <u>66</u> days late.  In *R.S.*, in addition to being eleven days late in filing the notice of

intention to seek review, appellant did not "show cause for their lateness" in filing the appeal

itself.  899 F. Supp. 2d at 290, 290 n.2.  The plaintiffs there "cite[d] no case in which a late

service was excused without any showing of good cause whatsoever—a showing the statute

explicitly requires."  *Id*. at 291.  In short, all of the District's cited cases, actually demonstrate by

negative implication that SRO Bates unreasonably rejected the good cause shown by the Parent.[5]

In addition to being patently unreasonable, the SRO's decision was inconsistent with

decisions by other SROs who have routinely excused late filings where, as here, the opposing

party was not in any way prejudiced by the delay in service.  *See Application of the Bd. of Educ.*

*of the Mamaroneck Union Free Sch. Dist.*, Appeal No. 16-080 at 16 (untimely filing excused

where receiving party "d[id] not include any arguments concerning prejudice" or how failure to

---

[5] While the District also cites to *Kelly v. Saratoga Springs City School District*, No. 09 Civ. 276 (GLS), 2009 WL 3163146, at \*5 (N.D.N.Y. Sep. 25, 2009), the case offers no analysis at all.  The appeal was served three days late, not just one, as here.  Moreover, the decision does not reveal what if any explanation was given or what grounds the SRO relied upon to determine that no good cause was shown.

comply with specific form of service "affected their ability to fully and properly respond to the allegations."); *Application of a Child with a Disability*, Appeal No. 97-036 at 5 ("Although petitioners' attorney has not offered an explanation for her brief delay . . . I find that there is no evidence before me that respondent has been prejudiced by petitioners' delay, which I will excuse."); *Application of a Child with a Disability*, Appeal No. 00-062 at 5 ("[I]n the absence of any evidence of prejudice to respondent by petitioner's delay, I will excuse her delay in bringing this appeal.").

As in those cases, the District has never argued it was prejudiced. Compl. ¶ 152. Yet, unlike the sensible SRO decisions cited above, SRO Bates chose to put an end to the Parent's plea for relief when the Parent explained fully (with uncontroverted evidence) that a process server inexplicably disobeyed counsel's instructions. This exemplifies arbitrariness.

Indeed, SRO Bates's dismissal is inconsistent with his own decision in at least one other case. In *Application of the Bd. of Educ. of the Sachem Cent. Sch. Dist.*, Appeal No. 14-169, SRO Bates excused the late filing of a cross-appeal by the parents, **even though he had previously granted an extension and the parents still filed one day late**. Ex. 27 at 7 n.8. The opinion is silent as to what excuse was offered, but he evidently accepted it. All he offered was a gentle warning: "counsel for the parents is strongly encouraged to comply with State regulations and explicit directives from the SRO in any future filings with the Office of State Review or risk the likelihood that a pleading will not be considered or an appeal will be dismissed." *Id.*

In contrast here, the Parent's counsel sought a very short extension of time, was told there would be no extension granted before the due date of the appeal, prepared everything for service on the District within the deadline, and was one-day late only because of a process server who

21

disobeyed an express instruction.  Yet SRO Bates's reaction was to apply the harshest possible punishment: dismissal.  His inconsistency is confounding at best.

Because the SRO's decision to dismiss was patently unreasonable and inconsistent with other decisions, the Court should reject the dismissal as arbitrary and capricious and conclude the Court has subject matter jurisdiction over the IDEA claims.

### D.  In the Alternative, The Futility Exception Should Be Held to Apply

Even assuming, *arguendo*, that the SRO's dismissal was not deemed to be arbitrary and capricious, the exhaustion requirement should be excused for futility.  As the Second Circuit held in *Murphy v. Arlington Central School District Board of Education*, "[t]he exhaustion requirement is 'not an inflexible rule.'. . .  Rather, Congress specified that exhaustion is not necessary if (1) it would be futile to resort to the IDEA's due process procedures; (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law; or (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies."  297 F.3d 195, 199 (2d Cir. 2002) (citations omitted).  *See also Heldman v. Sobol*, 962 F.2d 148, 159 (2d Cir.1992) ("policies underlying the exhaustion requirement do not come into play . . . when pursuit of administrative remedies would be futile because the agency either was acting in violation of the law or was unable to remedy the alleged injury.").

As the Court noted in *R.S.*, a party may satisfy the futility exception if "the SRO is so biased against them that they could not have prevailed had they presented their appeal directly to him."  899 F. Supp. 2d at 289 (citing *B.J.S. ex rel. N.S. v. State Educ. Dep't/Univ. of the State of N.Y.*, 815 F.Supp.2d 601, 613 (W.D.N.Y.2011)).

22

While the Defendants point to cases indicating that a showing of futility based on agency bias is a high burden, Dist. Br. at 8-9; NYSED Br. at 16-17, 21 n.7, the unique facts alleged here amply meet that burden. The indicia of bias against the Parent and A.A. are many:

First, Mr. Bates was the same SRO who this Court had found ignored key evidence in connection with the first due process complaint brought by the Parent. Specifically, in concluding that the District offered FAPE in 2012/13, the SRO discounted without analysis evidence demonstrating that the 15:1 special education classroom was decidedly not appropriate for A.A. *Avaras*, 2017 WL 3037402, at *18-19. And, as the Court found, the SRO also ignored the Parent's evidence as to the appropriateness of the small classroom, individualized attention A.A. would receive at Hawk Meadow. *Id.* at *22. It is one thing to address and disagree with the Parent's evidence for sound reasons; it is another thing entirely to simply ignore it.[6]

Second, the SRO's refusal to address the many plain defects in the new IHO decision starkly demonstrate bias. Here, it was clear from the face of the IHO decision and the Parent's appeal that: (1) the District again used stale information about A.A. for each of the four IEPs at

---

[6] Both the District and NYSED seek to portray SRO Bates' past decisions relating to the Parent as even-handed, but they are wrong. While it is true he agreed with the Parent that the District did not offer FAPE for school year 2013/14, that was because IHO Brandenburg had found the same and because the IDEA's explicit requirement of updated information about a child was unquestionably violated by the District, as this Court later ruled. *Avaras*, 2017 WL 3037402, at *20-21. Moreover, while the District and the NYSED both point to the SRO's subsequent decision on the equity prong favoring the Parent as to school year 2012/13 (*see, e.g.*, NYSED Br. at 19), that decision can hardly be considered evidence of impartiality. Ex. 28 at 5-6. A review of the record suggests his decision was effectively required by this Court's factual findings in its July 2017 opinion. In the first due process hearing, the IHO had blamed the Parent for failing to make available to the District a private evaluation report. But the chronology was wrong, as this Court noted: "the District based the IEP for the 2012-2013 school year off of sufficient information that it had in its possession." *Avaras*, 2017 WL 3037402, at *17. Notwithstanding this determination, on remand, the IHO again relied on the purported absence of the private evaluation as a basis for concluding that equities favored the District. Ex. 28 at 5-6. Given the prior finding that the District had the information it needed for the IEP, it was literally impossible for the SRO to now affirm the IHO's equity analysis that ran directly counter to those findings. Thus, while the SRO overruled the IHO, it does not constitute evidence of impartiality as the Defendants would suggest.

issue, Compl. ¶¶ 100, 124(c), 129(c); Exs. 22-26 (IEPs), (2) the District not only failed to offer an alternative setting than the 15:1 special education classroom, it was now offering a general education classroom that could contain as many as 24 to 30 students, Compl. ¶¶ 102(c), 129(f), and (3) the IHO had ignored the Parent's claims under pendency law.

It is inconceivable that any fair-minded SRO would permit these violations, plain on their face. As the Second Circuit explained in *Polera,* "the exhaustion requirement is predicated on Congress's belief, expressed through the statutory scheme, that administrative agencies can 'get it right'." 288 F.3d at 489. It turns the exhaustion requirement on its head to insist that this Court lacks subject matter jurisdiction because this SRO unilaterally chose, in his discretion, not to even address these blatant violations of law. The fact that he chose to dismiss under these circumstances demonstrates his bias, excusing the exhaustion requirement. Because SRO Bates would in all likelihood have sought to rule against the Parent and A.A., the exhaustion requirement should be excused as futile.[7]

In addition to the bias of this SRO, as discussed more fully *infra* at 25, these and other allegations in the Complaint support the conclusion that "pursuit of administrative remedies would be futile because the agency either was acting in violation of the law or was unable to remedy the alleged injury." *Heldman*, 962 F.2d at 159. The SRO is a representative of the NYSED and as such his biased conduct is attributed to the NYSED itself.[8] Moreover, as the

---

[7] While the District and the State cite a number of cases rejecting bias claims, *see, e.g.*, Dist. Br. 8-9, none involved the specific and plausible allegations of bias contained in the Complaint, and are thus all distinguishable. *See, e.g.*, *T.W. v. Spencerport Cent. Sch. Dist.,* 891 F. Supp. 2d 438, 442 (W.D.N.Y. 2012) (rejecting bare, unsupported allegations of bias or claims based on statistics); *R.S. v. Bedford Cent. Sch. Dist.*, 899 F. Supp. 2d at 290 (rejecting bias argument where complaint merely alleged "SRO was biased in his decision not to accept their late filing. This does not speak to whether their appeal as a whole would have been similarly disfavored.").

[8] *See, e.g.*, 8 N.Y.C.R.R. § 279.1(b) (identifying SRO as "an employee of the State Education Department").

24

Complaint alleges (and further discussed below) year after year, the District denied FAPE. Compl. ¶¶ 96-103, 124-125, 129.  Even after this Court's order in 2017, the District continued its contumacious conduct, wholly unfazed by the Court's conclusions.  The NYSED stood by as the District continued its conduct, even as its own assessment of the District revealed systemic failures.  Compl. ¶158; *see* Exs. 10-21.  Such allegations of multi-year, systemic problems further demonstrate the futility of exhaustion of administrative remedies.

### E.  Factual Hearing Should be Held as to SRO Bias

To the extent the Court is unable to determine on the basis of the allegations in the Complaint and the record herein whether SRO Bates was biased, the Court should permit jurisdictional discovery on that question.  *See Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986) (courts "have required that the party asserting jurisdiction be permitted discovery of facts demonstrating jurisdiction, at least where the facts are peculiarly within the knowledge of the opposing party"); *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1019 (2d Cir. 1993) ("In resolving the jurisdictional dispute, the district court must review the pleadings and any evidence before it, such as affidavits . . . . The district court, if necessary, may proceed to a trial on this issue.).  Discovery and a hearing would enable the Court to determine on a fuller record what non-biased reason, if any, the SRO had for deciding not to address the many issues identified in the IHO's decision.

### POINT II:  THE EXHAUSTION REQUIREMENT DOES NOT APPLY TO PLAINTIFF'S NON-IDEA CLAIMS AGAINST DEFENDANTS.

The Defendants both argue that the Court lacks subject matter jurisdiction over the Plaintiff's ADA, RA and Section 1983 claims because the SRO's dismissal of the appeal resulted in a failure to exhaust administrative remedies.  *See* Dist. Br. at 9-12; NYSED Br. at 22-23.  This argument fails for the same reasons discussed in Point I above.  But it is also wrong for the

reasons this very Court has repeatedly explained to these same defendants: the Parent's allegations do more than simply seek relief under IDEA and thus its exhaustion requirement is inapplicable to the non-IDEA claims. *Avaras*, 2017 WL 3037402, at \*25-26; *Avaras v. Clarkstown Cent. Sch. Dist.*, No. 15 Civ. 9679 (NSR), 2018 WL 4964230, at \*15-16 (S.D.N.Y. Oct. 15, 2018). Neither of the Defendants makes any meaningful effort to distinguish the Court's analysis in those prior cases. The Court's analysis of relevant law, which will not be repeated here, squarely applies to the facts alleged in the Complaint. Indeed, the new allegations even more sharply distinguish the relief sought under these non-IDEA claims.

As this Court explained with respect to A.A.'s First Complaint, the " 'IDEA guarantees individually tailored educational services, while [the ADA] and [RA] promise non-discriminatory access to public institutions.' " *Avaras*, 2017 WL 3037402, at \*25 (quoting *Fry v. Napolean Cmty. Sch.*, 137 S.Ct. 743, 756 (2017)). Based on the allegations in the First Complaint, the Court concluded that these were "claims which seek relief separate and apart from that provided . . . under the IDEA." *Id.* at \*26. Moreover, because "much of the relief [the Parent] seeks is not available under the IDEA, such as lost wages and punitive damages," *id.*, the exhaustion requirement did not apply to such claims. As this Court held: "To the extent any of [the Parent's] non-IDEA claims are viable . . . they are not subject to the IDEA's exhaustion requirement because '[a] hearing officer, [lacking the power to order any relief], would have [had] to send her away empty-handed." *Id.* (quoting *Fry*, 137 S.Ct. at 754).

The analysis applies with even greater force here. First, as in the First Complaint, the Parent seeks compensatory and punitive damages, attorney's fees as well as psychological, emotional and financial injuries to herself. *See* Compl. ¶¶ 194, 204, 214; Compl. at p. 69. Moreover, her current non-IDEA claims include allegations that the District retaliated against the

26

Parent in 2017 after this Court's opinion issued and her refusal to cease litigation. This retaliation for pursuing legal rights led to the District's sudden rescission of transportation rights to and from the NYMA. Compl. ¶¶ 54-78.

The Complaint also alleges associational discrimination against the Parent under the RA and ADA. Compl. ¶¶ 188, 198. Such claims are separate from the IDEA and identify an injury to someone other than the child. *See e.g., Eskenazi-McGibney v. Connetquot Cent. Sch. Dist.*, 84 F. Supp. 3d 221, 230 (E.D.N.Y. 2015) (permitting RA and ADA claims where "complaint alleges that [parents] were denied access to Celaberti and to the school grounds based on their association with JEM, their son with a disability."); *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 279 (2d Cir. 2009) ("to gain entry to the courts, non-disabled parties bringing associational discrimination claims need only prove an independent injury causally related to the denial of federally required services to the disabled persons with whom the non-disabled plaintiffs are associated.").

None of these claims and relief sought are available under the IDEA. The cases cited by the District are readily distinguishable because none of them involved the kinds of claims seeking non-IDEA relief sought herein. *See Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240 (2d Cir. 2008); *Polera*, 288 F.3d 478 (2d Cir. 2002); *Hope v. Cortines,* 872 F. Supp. 14 (E.D.N.Y. 1995)[9].

### POINT III: THE COMPLAINT STATES A CLAIM UNDER THE ADA, RA AND SECTION 1983 AGAINST THE DISTRICT.

The District argues that, pursuant to Federal Rule of Civil Procedure 12(b)(6), the claims under the RA, ADA, and 42 U.S.C. Section 1983 should be dismissed for failure to state a claim.

---

[9] Moreover, in contrast to the Parent, plaintiffs in *Hope* declined to use the administrative processes *at all*, opting instead to go straight to court. 872 F. Supp. at 18-19 (while Plaintiffs initiated a hearing, they caused it to be adjourned multiple times resulting in dismissal before plaintiffs filed in court).

*See* Dist. Br. at 12-16; NYSED Br. at 23-26, 27-28.  These arguments are meritless.  Assuming the truth of the facts alleged, the Complaint amply alleges that each of the Defendants violated Plaintiffs' rights secured by the referenced federal statutes.

### A.  Applicable Law

The ADA and Section 504 both protect "qualified individual[s] with a disability" from discriminatory denial of benefits. *See* 42 U.S.C. § 12132 (ADA); 29 U.S.C. § 794(a) (Section 504); *B.C. v. Mount Vernon Sch. Dist.*, 837 F.3d 152, 158 (2d Cir. 2016).  "Because the standards adopted by the two statutes are nearly identical, [courts] consider the merits of these claims together." *McElwee v. Cnty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012).  As the Court explained in *B.C.*: "To establish a prima facie case of discrimination under either the ADA or Section 504, a plaintiff must show the following: (1) plaintiff is a "qualified individual with a disability;" (2) plaintiff was "excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by [the] public entity;" an (3) "such exclusion or discrimination was due to [plaintiff's] disability." *B.C.*, 837 F.3d at 158 (citations omitted).  In connection with the third prong – discrimination due to disability – where the thrust of a complaint alleges denial of a FAPE, an ADA claim must allege that a school district "acted with deliberate or reckless indifference to the student's federally protected rights or with 'bad faith or gross misjudgment.' " *Avaras*, 2017 WL 3037402, at \*26 (quoting *Schreiber v. E. Ramapo Cent. Sch. Dist.*, 700 F. Supp. 2d 529, 564 (S.D.N.Y. 2010)).

### B.  The Complaint Alleges ADA and RA Violations By The District

1.  <u>A.A. Is a Qualified Individual With a Disability</u>

Contrary to the District's contentions, A.A. was entitled to the protections of the ADA and RA as a "qualified individual with a disability," within the meaning of *B.C. v. Mount Vernon*

28

*School District.* *See* Dist. Br. at 13-14. While this Court has previously held that under *B.C.*, A.A.'s First Complaint did not state a claim under the ADA and RA, *Avaras*, 2017 WL 3037402, at *27-28, the Parent respectfully submits that the Court's reading of *B.C.* may have been unduly restrictive and that, in any event, the allegations in this Complaint withstand a motion to dismiss.

In its July 2017 decision relating to the First Complaint, the Court held that the allegations were insufficient to state that A.A. was a "qualified individual with a disability." *Id.* at *27. The Court noted that to qualify under the ADA or RA, the plaintiff must allege a condition that limits "a major life activity." *Id.* It then went on to quote from *B.C.* that "[t]hose seeking relief pursuant to ADA or Section 504 must come forward with 'additional evidence'—beyond simply their eligibility for IDEA coverage—showing their eligibility for the remedies afforded by the ADA and Section 504." *Id.* (quoting *B.C.*, 837 F.3d at 161). Because A.A. offered no such additional evidence that he is "limited in a major life function," the complaint failed to satisfy the "qualified individual" element. *Id.*

The Parent respectfully submits that this may have been an unduly restrictive reading of *B.C.* In that case, the Second Circuit simply held that a plaintiff cannot rely solely on the fact they were eligible to receive IDEA benefits as a basis for claiming they were disabled within the meaning of the ADA. The plaintiffs provided no description of their disability that made them eligible for IDEA benefits, asserting that the mere fact they were IDEA eligible meant they were also ADA qualified. "Here, Plaintiffs' disparate impact claim relies exclusively on data concerning students with disabilities under the IDEA. Aside from their receipt of special education services, the record is devoid of any evidence as to whether the students included in the data qualify as disabled under the ADA or Section 504." *B.C.*, 837 F.3d at 162. The Court made clear that that equivalence is improper. Just because a child receives special education

29

services does not mean he or she is necessarily disabled, *i.e.*, substantially limited in a life activity.  The IDEA and ADA have different elements.  *Id.* at 161.  Thus, the Court affirmed dismissal of the ADA/RA claim.

Regardless of this Court's application of *B.C.* to the First Complaint, here the Complaint satisfies the qualified individual element.  The Parent expressly described the disabilities that, by their very terms, would necessarily result in a substantial limitation of a life activity.  The Complaint alleges that A.A. has "ADHD, dyslexia, and a learning disability."  Compl. ¶¶ 10, 46.  The *B.C.* Court's analysis actually demonstrates that the Parent's allegations are precisely the kinds of claims that will pass muster under *B.C.*  The Court noted that "many, if not most" students eligible for IDEA benefits would likely qualify for ADA status.  *B.C.*, 837 F.3d at 159.  That is because, as the Court observed, under the ADA's 42 U.S.C. § 12102(2)(A): major life activities include: "learning, reading, concentrating, thinking."  *Id.* at 159 n.6.  Thus, *B.C.* cited with approval *Ellenberg v. New Mexico Military Institute*, 572 F.3d 815, 821 (10th Cir. 2009), where the Tenth Circuit Court observed that "an IDEA disability may—and in the majority of cases probably will—substantially limit a major life activity."  837 F.3d at 160 n.8.

Here, the Complaint does not merely allege a disability under IDEA.  It specifically alleges that A.A. is a qualified individual, Compl. ¶¶ 187, 191: he suffers from dyslexia, a learning disability, and ADHD.  Not even the District could credibly suggest that such conditions do not substantially limit a child's "learning, reading, concentration, thinking."  After all, that's what "learning disability" or "attention deficit," by their own terms mean.  A child like A.A. with a learning disability is substantially limited in his ability to learn, and his ability to concentrate is substantially limited by his ADHD condition.  Indeed, as this has Court held, the disabilities are

30

so pronounced, in order to learn, A.A. requires a very small classroom setting where teachers apply specialized multisensory methodologies.

In short, *B.C.* does not suggest that such detailed allegations are insufficient to satisfy the "qualified individual" element; it does the exact opposite. Its analysis of the parallels between the ADA/RA requirements and IDEA disabilities demonstrates that the instant allegations of disabilities are sufficient. At a minimum, the lenient pleading standards under Rule 8 require that the Parent be permitted to prove these claims at trial.

### 2. A.A. Was Excluded and Discriminated Against As a Result of Disability

The Complaint also satisfies the third element of an ADA/RA claim – discriminatory exclusion from a public program or activities as a result of a disability – because it details the District's deliberate or reckless indifference to A.A.'s federally protected rights, with bad faith or gross misjudgment. *See Schreiber*, 700 F. Supp. 2d at 564. Not only are these standards expressly recited in the Complaint, they are fully supported by the following allegations:

First, the Complaint alleges the District's systematic and continuing refusal to comply with basic legal requirements. This is not a one-off mistake or administrative failure. The District's illegal conduct is repeated, year after year. *See* Compl. ¶¶ 96-103, 124-125, 129-130. For school year 2013/14, the District indisputably failed to offer FAPE because it relied on stale information in the IEP, *see Avaras*, 2017 WL 3037402, at *20-21, and yet this blatantly illegal conduct continued for every year thereafter. Compl. ¶¶ 100, 124(c), 129(c). This is all the more remarkable when one considers that the first IHO and SRO expressly pointed to the IDEA violation in the SRO decision dated November 14, 2014. Ex. 29 at 13. Yet, the 2015/16 and 2016/17 IEPs all had the exact same fundamental defect. Compl. ¶¶ 100-102, 124-125. And,

31

after the Court issued its opinion in July 2017, the District issued an IEP for school year 2017/18 that, again, relied on stale information.[10]  Compl. ¶ 129.

In addition, notwithstanding this Court's rejection of the special education classroom of 15:1 because, in part, it was too large and would not give A.A. sufficient individualized attention using multisensory methodologies, *Avaras*, 2017 WL 3037402, at *19, the District's reaction was to <u>double</u> the size of the classroom.  It did this for two IEP's before the July 2017 Court order, and, after the decision, again threw together an IEP without either the Parent's or A.A.'s participation, Compl. ¶¶ 98, 124(a), using stale, outdated information, Compl. ¶¶ 100, 102, 124(c), and again offered a general education classroom with up to 24 to 30 students, Compl. ¶¶ 102, 125; Exs. 24, 25 (2015/16 and 2016/17 IEPs).

The Complaint also alleges that the District failed to offer transition planning in the 2017/18 IEP in violation of 8 N.Y.C.R.R. § 200.4(d)(2)(ix) which requires that a disabled child who is transitioning to high school receive such planning.  Compl. ¶¶ 24, 129(d).  They did not even bother meeting with A.A. as required.  *Id*. at ¶ 129(d).  The Complaint alleges that this was all part of a systemic problem at the District as evidenced by the NYSED website page indicating that from school year 2005-2006 through 2016-2017, the District flunked a number of important

---

[10] At the second due process hearing, the District representatives blamed the Parent for this, claiming that the District mailed requests to her that were not responded to.  *See* Compl. ¶ 129.  Even if true, it would not render the IEPs valid under the IDEA.  Moreover, the IHO's factual assertion was wrong.  At this stage of the litigation, all factual allegations in the Complaint must be accepted as true.  As the Complaint alleges, the District knew from prior years that mailings to her were an unreliable method of reaching her, and the District repeatedly received mail back unopened.  *Id.* at ¶¶ 98, 124.  The District had ready access to the Parent's email address, which she used often in communications with the District, and yet, the District never once utilized it in notifying the Parent of CSE meetings.  *Id.* at ¶¶ 98, 124, 129.  This was true even though the District knew the Parent was highly engaged and interested in participating in the process.  *Id*. at ¶¶ 98, 115, 124, 127, 129.  This was a violation of law as the regulations required the District to make sustained efforts to reach the Parent.  *Id.* at ¶ 27.  As this Court already ruled, a District cannot blame a parent for its own failure to comply with its legal obligations. *Avaras*, 2017 WL 3037402, at *20 n.31.

metrics for disabled students. *Id.* ¶ 158; Exs. 10-21. With specific regard to the transition requirement, the State determined that the District had transition information in its IEPs for only 23% of eligible students when the target was 100%. Compl. ¶ 158(b)(ii); Ex. 20 at 7.

Moreover, as discussed *supra* at 5-8, the Complaint alleges that the District intentionally engaged in associational discrimination against the Parent. Compl. ¶¶ 188, 198. The clearest example cited in the Complaint is the retaliation against her in 2017 after this Court's opinion issued, suddenly rescinding a prior approval of transportation rights. Compl. ¶¶ 54-78.

The Complaint alleges a number of other legal violations by the District, but the foregoing allegations of systemic contumacy are alone sufficient to demonstrate deliberate indifference to A.A.'s rights, and bad faith conduct. Courts have uniformly denied motions to dismiss ADA and RA claims where such allegations of systemic failures are presented. *See M.H. ex rel. K.H. v. Mt. Vernon City Sch. Dist.*, No. 13 Civ. 3596 (VB), 2014 WL 901578, at *7 (S.D.N.Y. March 3, 2014) (allegations of numerous and systemic failures to identify students in need of special education services and timely to create and implement appropriate IEPs); *Scaggs v. N.Y. Dep't of Educ.*, 06 Civ. 799 (JFB), 2007 WL 1456221, at *16 (E.D.N.Y. May 16, 2007) (complaint alleged school's "extensive list of . . . failures and omissions with regard to disabled students" demonstrated "gross misjudgment"); *S.W. ex rel. J.W. v. Warren*, 528 F. Supp. 2d 282, 291 (S.D.N.Y. 2007) (complaint alleged "that defendants implemented policies which in effect limit[ed] the availability of services and thereby impede[d] the implementation of IEPs for preschoolers with autism"); *R.B. ex rel. L.B. v. Bd. of Educ. of City of N.Y.*, 99 F. Supp. 2d 411, 419 (S.D.N.Y. 2000) (allegation that district exhibited "gross neglect" by causing the student to be excluded from school for an entire school year); *Gabel ex rel. L.G. v. Bd. of Educ.*, 368 F. Supp. 2d 313, 335 (S.D.N.Y. 2005) (allegation that child with speech disorder had no access to

33

school – only days before beginning of the school year because the District failed to do its job);

*Kalliope R. ex rel. Irene D. v. N.Y. State Dep't of Educ.*, 827 F. Supp. 2d 130, 143-44 (E.D.N.Y.

2010) (gross misjudgment or bad faith may be found when a defendant takes action to provide a

disabled student with fewer services than had previously been deemed necessary.).

### C.  The Complaint States A Section 1983 Claim Against The District

The same is true of the Parent's claim brought under 42 U.S.C. § 1983.  *See* Compl. ¶¶

205-214.  "To state a claim for relief under Section 1983, a plaintiff must allege: (1) the

deprivation of any rights, privileges or immunities secured by the Constitution and federal law,

(2) by a person acting under the color of state law."  *Scaggs*, 2007 WL 1456221, at *12.  A

plaintiff can bring a claim under Section 1983 for deprivation of liberty and property interests

created by the IDEA by a person acting under color of state law.  *M.H.*, 2014 WL 901578, at *8.

"Importantly, the denial of a 'free appropriate public education' has been held a constitutional

deprivation which is actionable under Section 1983."  *Id*. (citing *Quackenbush v. Johnson City

Sch. Dist.*, 716 141, 148 (2d Cir. 1983)).

The Complaint alleges violation of A.A.'s due process rights by systematically depriving

him over the course of several years of FAPE in the LRE to which he was entitled under the

IDEA.  Compl. ¶¶ 102(c), 125, 129(f).  The pattern of systematic and repeated violations by the

District are summarized above.

Ignoring the gravamen of these allegations, the District argues the claim should be

dismissed because there were adequate post-deprivation procedures. Dist. Br. at 15-16.  But the

thrust of the Complaint's allegations is that the administrative procedures were useless.  IHO

Kandilakis's conduct at this hearing was only slightly better than his conduct in *Heldman v.

Sobol*, 962 F.2d 148 (2d Cir. 1992), where he held a hearing even after the parent withdrew the

due process complaint in protest over the way he had been selected to act as IHO and where the

34

parent was not present.  In that case, the New York State Commissioner rejected IHO Kandilakis's decision to go forward without the parent.  *Id*. at 153.  On this record, the Second Circuit rejected the State's exhaustion argument, concluding that the parent's challenge to the IHO-selection process did not require exhaustion because it was a systemic challenge to the State's processes.  *Id*. at 158-59.  Here, IHO Kandilakis held a hearing with the Parent present but simply ignored all of her evidence and claims, adopting instead all of the District's arguments.  The Parent might as well not have shown up at all.  Moreover, the "adequate" procedures, include an SRO who sees all this and dismisses it all on the most minor of technicalities, because, for reasons indisputably outside the control of the Parent, the appeal is served one day late. Compl. ¶¶ 141-156.  Based on the allegations in the Complaint, it is clear that these procedures are far from adequate to protect A.A. and the Parent's due process rights.

Thus, the Complaint seeks injunctive relief to compel the District to comply with its obligations under the IDEA.  Compl. at p. 68. The Complaint alleges the likelihood of continued and future injury.  Compl. ¶¶ 194, 204, 214, 217.  It seeks monetary relief, including punitive damages, to try to compel this defendant to abide by the law.  Compl. at p. 69.

These allegations amply suffice to state a claim under Section 1983. *See Hartford Bd. of Educ. v. J.A.*, 976 F. Supp. 2d 164, 188 (D. Conn. 2013) (where district refused to implement officer decision and thus, "[t]he administrative procedural safeguards . . . are failing Plaintiffs, there is no reasonable relief available to them under the administrative [IDEA] process, and consequently Plaintiffs ought to be able to bring suit under Section 1983 to enforce these provisions of the IDEA, including any monetary and any other damages that are available under this statute"); *Cf. Taylor v. Vt. Dep't of Educ.,* 313 F.3d 768, 790 (2d Cir. 2002) ("if plaintiffs

35

can demonstrate that there is no relief available to them through the administrative process, they

may [seek monetary damages for IDEA violations pursuant to § 1983].").

None of the cases the District relies on bears any resemblance to the extraordinary facts

alleged here,[11] and its motion to dismiss should be denied.

**POINT IV**

**THE COMPLAINT STATES A CLAIM UNDER THE IDEA,
ADA, RA AND SECTION 1983 AGAINST DEFENDANT NYSED.**

In addition to moving for dismissal for alleged lack of subject matter jurisdiction,

Defendant NYSED moves to dismiss each of the substantive claims against it on the theory that

it has no responsibility to A.A. or the Parent.  It is wrong.  The Complaint alleges that NYSED

was on notice of the District's many violations of law and refused to remedy them, deciding

instead to defend them.  Accordingly, it is liable under the IDEA, ADA, RA and § 1983.

**A.  The NYSED's Supervisory Responsibility Under IDEA**

Pursuant to § 1412(a)(11) of the IDEA, NYSED has general supervisory responsibilities

over the local education agencies, such as the District.[12]  The provision can give rise to State

---

[11] *See M.M. v. N.Y.C. Dep't of Educ.*, No. 15 Civ. 5846 (PKC), 2017 WL 1194685, at \*14 (S.D.N.Y. March 30, 2017) (dismissing claim where, unlike here, plaintiff "takes issue not with the process she received, but with the outcome of that process"); *Streck v. Bd. of Educ. of E. Greenbush Sch. Dist.*, 280 F. App'x 66, 68 (2d Cir. 2008) (dismissing Section 1983 action where "Plaintiffs fail to allege a denial of procedural safeguards or administrative remedies: they were afforded a hearing before an impartial hearing officer and review by a state review officer").

[12] The subsection provides:

The State educational agency is responsible for ensuring that--

(i) the requirements of this subchapter are met;
(ii) all educational programs for children with disabilities in the State, including all such programs administered by any other State agency or local agency--
    (I) are under the general supervision of individuals in the State who are responsible for educational programs for children with disabilities; and
    (II) meet the educational standards of the State educational agency; and

36

liability under the IDEA and RA.  *See, e.g.*, *A.A. v. Bd of Educ. Central Islip*, 196 F. Supp 2d 259 (E.D.N.Y. 2002).  Thus, in *A.A. v. New York State Education Department*, 87 F. App'x 216, 217 (2d Cir. 2004), the Second Circuit required the District Court to hold a trial as to plaintiff's claim that the NYSED failed to carry out its supervisory and monitoring responsibilities over the local school district, and "If it determines that these efforts were insufficient under IDEA, it should determine what remedies, if any, remain available to the affected plaintiffs and order any such remedy."  On remand, after a trial, the District Court found NYSED worked "with the district to obtain IDEA compliance and to deliver appropriate services to children in the district."  *A.A. ex rel. J.A. v. Philips*, 386 F.3d 455, 457 (2d Cir. 2004).

Thus, while it is true that a claim against the State will not lie based simply on an IDEA violation committed by the local district, *see Y.D. v. N.Y.C. Dep't of Educ.*, No. 14 Civ. 1137 (LTS), 2016 WL 698139, at *5 (S.D.N.Y. Feb. 19, 2016), *A.A. ex rel. J.A.* stands for the proposition that such liability may indeed be stated if the State had notice of the violation and did nothing to remedy it.  *See M.H.,* 2014 WL 901578, at *12 (complaint stated IDEA claim against State where it was alleged State had "identified and detailed" the district's systemic failures, and did not remedy them).  *Compare C.L. ex rel. K.L. v. Hastings-on-Hudson Union Free Sch. Dist.*, No. 14 Civ. 4422 (NSR), 2015 WL 1840507, at *5 (S.D.N.Y. Apr. 21, 2015) (dismissing claim against State given "Complaint's near-silence regarding notice provided the State Defendants of the allegedly systemic failures within the District.").

---

(iii) in carrying out this subchapter with respect to homeless children, the requirements of subtitle B of title VII of the McKinney-Vento Homeless Assistance Act (42 U.S.C. 11431 et seq.) are met.

20 U.S.C. § 1412.

### B.  NYSED's Failure to Act After Receiving Notice of IDEA Violations

Here, the Complaint is rife with allegations about the NYSED's awareness of the District's systemic IDEA violations.  More specifically, the District's treatment of A.A. and the Parent has been known to the NYSED now for several years.  In 2014, the Parent set forth her list of concerns in a federal complaint that named NYSED as a defendant.  Compl. ¶ 48.  The NYSED was dismissed from the case on procedural grounds, but it was on notice of her serious allegations of misconduct by the District as well as NYSED's own alleged failure of oversight.

Moreover, as of July 2017, the NYSED had graded the District's performance on a number of different measures and found that, among other failings, the District offered transition planning in IEPs for a dismal 23% of eligible students, as of 2015/16.  Compl. ¶ 158(b)(ii); Ex. 20 at 7 (NYSED Data).

More specific to A.A., as the Complaint alleges (*see,* e.g., Compl., ¶¶ 160-163), NYSED was aware of each of the District failings.  The District's systemic violations are summarized in the Complaint and discussed *supra* in Point III(B)(2) at 31 to 34, and will not be repeated herein. By virtue of this Court's July 2017 order and the Parent's appeal to the SRO in 2018, the NYSED was aware of each such District failure.

Yet, there is no record of the NYSED even investigating these events, much less taking any remedial measure pursuant to its supervisory responsibilities under 20 U.S.C. § 1412(a)(11). The only actions it has taken were all to undermine A.A. and the Parent's rights.  First, it assigned the appeal from IHO Kandilakis's facially defective opinion to SRO Bates, the same SRO who the Court found failed to account for the Parent's evidence in the first hearing. Second, the SRO, a representative of NYSED, was biased against the Parent and A.A. as it dismissed the

appeal for a one-day delay in service.  Third, the NYSED now seeks to foreclose the Plaintiff from any further legal relief by seeking dismissal of the Complaint.

### C.  NYSED Liability Under The IDEA, ADA, RA and Section 1983

Taking each of the above allegations in the Complaint to be true, the NYSED is liable for its utter failure to protect the educational rights of A.A.  The oversight role of NYSED "amounts to more than creating and publishing some procedures and then waiting for the phone to ring. The IDEA imposes on the state an overarching responsibility to ensure that the rights created by the statute are protected, regardless of the actions of local school districts." *Straube v. Florida Union Free School District,* 801 F. Supp. 1164, 1179 (S.D.N.Y. 1992).  The Complaint plausibly alleges that the NYSED willfully and repeatedly failed to carry out its legal obligation.  As such, the Complaint's claims against it under the IDEA (Compl. ¶¶ 164-184), the RA (Compl. ¶¶ 185-194) and ADA (Comp. ¶¶ 195-204), as well as Section 1983 (Comp. ¶¶ 205-214), all withstand the motion to dismiss.

The foregoing discussion in Point III relating to the legal requirements of each of the relevant causes of action against the District applies equally to NYSED.  Through its failure to act, the NYSED essentially adopted and approved the conduct of the District.  Thus, Judge Briccetti's decision in *M.H.*, 2014 WL 901578, applies squarely to this case.  The Court denied the State's motion to dismiss IDEA, RA, ADA and Section 1983 claims because "Plaintiffs' allegations of the District's numerous and systemic failures to identify those students in need of special education services and timely to create and implement appropriate IEPs-together with their assertions that both the City and State Defendants were aware of but failed to remedy these failures-are sufficient to withstand a motion to dismiss." *Id.* at \*7 (collecting cases).  None of the cases cited by the State (NYSED Br. at 8-21, 22-28) is apposite, for none of them alleges the

kind of notice that is alleged in the Complaint and none of them alleges the complete inaction in the face of such notice that is alleged here.

With respect to the Section 1983 claim, the NYSED argues that the 11th Amendment insulates it from liability.  NYSED Br. at 26-27.  This argument would fail if the Complaint sought injunctive relief against the State agency.  *See M.H.*, 2014 WL 901578, at *11 (denying motion to dismiss Section 1983 claim against State based on 11th Amendment where plaintiffs sought "prospective injunctive relief").  Plaintiff acknowledges that the Complaint currently seeks injunctive relief only against the District.  To address this omission, Plaintiff respectfully requests permission to amend the Complaint to add a request for injunctive relief as to the NYSED as well.[13]

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that Defendants' motions be denied in their entirety except that, in connection with to the NYSED's 11th Amendment defense, the Court permit Plaintiff to amend the Complaint to add a request for injunctive relief against the NYSED.

Dated: December 7, 2018
New York, New York

Respectfully submitted,

PARK JENSEN BENNETT, LLP

By: _____
      Tai H. Park
*Attorney for the Plaintiff*
40 Wall Street, 41st Floor
New York, NY 10005
Ph: 646-200-6310

---

[13] Moreover, to the extent the Court determines that the Complaint is deficient in stating any other element of a claim, the Plaintiff respectfully requests an opportunity to correct such deficiencies by amending the Complaint, rather than dismissing any such claim with prejudice.  *See* Fed. R. Civ. P. 15(a) ("The court should freely give leave [to amend] when justice so requires.").