UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CONNIE AVARAS, individually and on behalf of her
minor child, A.A.,

               Plaintiff,

   -against-

CLARKSTOWN CENTRAL SCHOOL DISTRICT,
BOARD OF EDUCATION FOR THE CLARKSTOWN
CENTRAL SCHOOL DISTRICT, and THE NEW YORK
STATE DEPARTMENT OF EDUCATION,

               Defendants.

No. 18-cv-6964 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

     Plaintiff Connie Avaras ("Plaintiff" or the "Parent"), individually and as parent of A.A., brings this action against the Clarkstown Central School District (the "District"), the Board of Education for the District (together, the "District Defendants"), and the New York State Department of Education (the "Department") (collectively, the "Defendants"). (*See* Compl., ECF No. 1.) Plaintiff asserts eight causes of action pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* ("IDEA"), Title II of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA"), Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("RA"), 42 U.S.C. § 1983 ("Section 1983"), and New York State Education Law, N.Y. Educ. Law § 4401 *et seq.* ("Education Law").

     Before the Court are (1) the District Defendants' motion to dismiss; and (2) the Department's motion to dismiss. For the reasons set forth below, the District Defendants' motion is GRANTED in part and DENIED in part. The Department's motion is GRANTED in its entirety.


USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/21/2019

# BACKGROUND

## I.  Statutory Framework

### A. Basic Framework of the IDEA[1]

The IDEA was enacted "to assure that all children with disabilities have available to them . . . a free appropriate public education which emphasizes special education and related services designed to meet their unique needs." *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 197 (2d Cir. 2002) (quoting *Cedar Rapids Cmty. Sch. Dist. v. Garret F.*, 526 U.S. 66 (1999)) (internal quotations omitted). As the Second Circuit has described it, this means "an education 'likely to produce progress, not regression,' and one that 'afford[s] the student with an opportunity greater than mere trivial advancement.'" *T.K. v. N.Y.C. Dep't of Educ.*, 810 F.3d 869, 875 (2d Cir. 2016) (quoting *M.O. v. N.Y.C. Dep't of Educ.*, 793 F.3d 236, 239 (2d Cir. 2015)); *accord Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 1001 (2017) ("a student offered an educational program providing 'merely more than *de minimis*' progress from year to year can hardly be said to have been offered an education at all").

"The 'centerpiece' of the IDEA and its principal mechanism for achieving this goal is the IEP," *i.e.*, Individualized Education Program. *T.K.*, 810 F.3d at 875. "The IEP is the means by which special education and related services are 'tailored to the unique needs' of a particular child." *Endrew F.*, 137 S. Ct. at 994 (quoting *Bd. of Ed. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 181 (1982)). The IDEA imposes upon school districts the duty to seek out children with disabilities and ensure that they receive the special education services they need. 20 USC § 1412(a)(3); 34 C.F.R. § 300.111 (a)(1)(i); *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 245 (2009). Similarly, "an educational agency must issue an IEP for a

---

[1]  The IDEA was amended by the Individuals with Disabilities Education Improvement Act in 2004. *See E.M. v. N.Y. City Dep't of Educ.*, 758 F.3d 442, 445 n.1 (2d Cir. 2014)

resident qualifying child, even if that child has been enrolled in a private school outside the boundaries of the school district." *Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440, 451 (2d Cir. 2015).

"The IDEA requires that every IEP include 'a statement of the child's present levels of academic achievement and functional performance,' describe 'how the child's disability affects the child's involvement and progress in the general education curriculum,' and set out 'measurable annual goals, including academic and functional goals,' along with a 'description of how the child's progress toward meeting' those goals will be gauged." *Id.* (quoting 20 U.S.C. § 1414(d)(1)(A)(i)(I)-(III)). It "must also describe the 'special education and related services . . . that will be provided' so that the child may 'advance appropriately toward attaining the annual goals' and, when possible, 'be involved in and make progress in the general education curriculum.'" *Id.* (quoting § 1414(d)(1)(A)(i)(IV)).

In addition to providing an education that is likely to produce progress and tailored to the unique needs of the child, the program must be offered in the least restrictive environment. 20 U.S.C. § 1412 (a)(5)(A); 8 N.Y.C.R.R. §§ 200.1(cc), 200.6(a1); *see also C.W.L. and E.L. v. Pelham Union Free Sch. Dist.*, 149 F. Supp. 3d 451, 467-68 (S.D.N.Y. 2015) (quoting *M.W. ex rel. S.W. v. N.Y.C. Dep't of Educ.*, 725 F.3d 131, 145 (2d Cir. 2013)). "[A] disabled student's least restrictive environment refers to the least restrictive educational setting consistent with that student's needs, not the least restrictive setting that the school district chooses to make available." *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 161 (2d Cir. 2014). "This requirement 'expresses a strong preference for children with disabilities to be educated, to the maximum extent appropriate, together with their non-disabled peers.'" *Id.* (quoting *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 122 (2d Cir. 1998)) (internal quotation marks omitted in original).

"Where the IEP is substantively deficient, parents may unilaterally reject it in favor of sending their child to private school and seek tuition reimbursement from the State." *T.K.*, 810 F.3d at 875. A school district will be required to reimburse parents for expenditures made for a private school placement if the services offered the student by the school district are inadequate or inappropriate. *See Florence Cty. Sch. Dist. Four v. Carter ex rel. Carter*, 510 U.S. 7, 13-16 (1993); *Sch. Comm. of the Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 369-70 (1985).

**B. "Due Process" Hearings**

To challenge an IEP, a parent must first file a "due process complaint" detailing the alleged deficiencies of the IEP. *C.F. ex rel. R.F. v. N.Y.C. Dep't of Educ.*, 746 F.3d 68, 73 (2d Cir. 2014) (citing 20 U.S.C. § 1415(b)(7)(A), (f)(1)). Thereafter, following a 30-day resolution period, the parent and school district will enter an "impartial due process hearing" before an Impartial Hearing Officer ("IHO"). *Id.* Under New York law, once the IHO renders a decision, the parties may request a review by a State Review Officer ("SRO"), who can either affirm or modify the IHO's order. *Id.* (citing N.Y. Educ. Law § 4404(1)-(2).) Thereafter, "[e]ither party may bring a civil action before a federal or state court to review the SRO's decision." *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 175 (2d Cir. 2012) (citing 20 U.S.C. § 1415(i)(2)(A)).

**C. The Pendency, *i.e.* "Stay Put," Provision**

"During the pendency of any proceedings conducted [under the IDEA], unless the State or [school district] and parents otherwise agree, the child shall remain in the then-current educational placement of the child." 20 U.S.C. § 1415(j). This requirement has the "effect of an automatic preliminary injunction, one imposed without regard to such factors as irreparable harm, likelihood

of success on the merits, and the balancing of equities." *N.Y.C. Dep't of Educ. v. S.S.*, No. 09 Civ. 810 (CM), 2010 WL 983719, at *6 (S.D.N.Y. Mar. 17, 2010).

The purpose of this "stay put" provision is to "maintain the educational status quo while the parties' dispute is being resolved." *T.M.*, 752 F.3d at 152. The "stay put" provision applies "regardless of whether [a plaintiff's] case is meritorious or not." *Mackey ex rel. Thomas M. v. Bd. of Educ. for Arlington Cent. Sch. Dist.*, 386 F.3d 158, 160-61 (2d Cir. 2004). As one district court in this Circuit has succinctly explained:

> [T]he pendency scheme almost invariably leads to school districts' advancing the cost of private school tuition for an entire school year, and sometimes beyond, based on pendency alone—even where, as is the case here, the district met its obligation to offer the child a FAPE in a public school setting. Nonetheless, a school district is *obligated* to maintain the child's pendency placement until the child's pendency changes.

*S.S.*, 2010 WL 983719 at *6 (emphasis added).

## II.   Factual Background

This case is the fourth federal action instituted by the Parent to challenge whether the District Defendants provided her son with free appropriate public education ("FAPE"). The Court therefore assumes the parties' familiarity with the background of Plaintiff's substantive claims for relief. Nevertheless, the Court finds it necessary to offer a recitation of the current factual background. To this end, the following facts are derived from the Complaint and, where necessary and appropriate, exhibits offered by the parties that are incorporated into the Complaint by reference, integral to the Complaint, or judicially noticeable. For purposes of this motion, the Complaint's facts are assumed to be true.

### A.   Prior Litigation

Plaintiff in this action is the parent of A.A., a minor who has been diagnosed with attention deficit hyperactivity disorder, dyslexia, and a learning disability. (Compl. ¶ 46.) In 2013,

following her initial rejection of the District's IEP and her subsequent unilateral enrollment of A.A. at Hawk Meadow Montessori School ("Hawk Meadow"), the Parent filed a due process complaint before an IHO (the "First Complaint"). In that complaint, the Parent alleged that the District Defendants failed to provide FAPE. (*Id.* ¶¶ 3(b), 47.) Therefore, Plaintiff sought reimbursement of tuition and related expenses from his kindergarten year to his seventh-grade year. (*Id.*) The IHO denied the Parent's request, and the SRO affirmed the decision. Thereafter, the Parent filed a federal action against Defendants seeking judicial review of the SRO's decision, as well as various forms of relief under the ADA, RA, and Section 1983. (*Id.* ¶ 47.) The District Defendants moved for summary judgment, while the Department moved to dismiss the complaint as to all claims against it.

In an opinion dated July 17, 2017, this Court (1) granted the Department's motion to dismiss in its entirety; (2) granted the District Defendants' motion for summary judgment dismissing the Parent's non-IDEA claims; (3) granted the District Defendants' motion for summary judgment dismissing, as time-barred, the Parent's claims premised on conduct preceding the 2012/13 school year; (4) denied the District Defendants' motion for summary judgment as to the 2012/13 and 2013/14 school years because it found that the District Defendants denied FAPE and that the Parent's unilateral placement of A.A. at Hawk Meadow was appropriate; and (5) remanded the case to the IHO to determine whether the equities favored reimbursement of tuition and related costs for Hawk Meadow. (*Id.* ¶ 49.) On August 14, 2017, the District Defendants appealed this Court's ruling on the 2012/13 and 2013/14 IDEA claims, and, on August 24, 2017, the Parent cross appealed the Court's dismissal of her ADA, RA, and Section 1983 claims, as well as the determination that the pre-2012/13 IDEA claims were time-barred. (*Id.* ¶¶ 51-52.) The appeals are currently pending before the Second Circuit. (*Id.* ¶ 53.)

On remand, the SRO issued a decision concluding that equitable considerations weighed in favor of reimbursing the Parent for the cost of tuition for the 2013/13 school year but not the 2013/14 school year. (Department's Memo. of Law in Support of Mot. to Dismiss ("Dep't Mot."), ECF No. 41, at 5; Decl. of Jonathan Siegel ("Siegel Decl."), ECF No. 42, Ex. 6.) Both the District Defendants and the Parent commenced separate actions this Court seeking review of the SRO's decision. *See Bd. of Educ. of the Clarkstown Cent. Sch. Dist. v. J.A.*, No. 18-cv-2976-NSR (S.D.N.Y.); *Avaras v. Bd. of Educ. of the Clarkstown Cent. Sch. Dist.*, No. 18-cv-3484-NSR (S.D.N.Y.). These two cases are currently pending before the Court.

### B. Subsequent Conduct by the District

#### i. *The Parent Coordinates Busing to A.A.'s New School*

While the parties litigated the First Complaint, the District provided transportation for A.A. to Hawk Meadow, *i.e.*, the last agreed upon placement established under the 2012 IEP. (Compl. ¶¶ 55-56.) According to Plaintiff, the District offered this transportation pursuant to a "pendency agreement" between the Parent and the District. (*Id.* ¶ 55.)

Eventually, upon his completion of the 2016/17 school year, A.A. aged out of Hawk Meadow. (*Id.* ¶ 57.) As a result, the Parent began researching similar and appropriate high school programs for placement that would meet A.A.'s educational needs; she eventually identified the New York Military Academy ("NYMA") as a suitable nonpublic school. (*Id.* ¶¶ 57-58.) A.A.'s family, however, did not have the financial resources to pay for NYMA's room and board during the school year. (*Id.* ¶ 59.) Therefore, if he were to attend NYMA, A.A. would need to live at home and be bused to and from the school each day. (*Id.*) Given this issue, the Parent notified the District that A.A. may be attending NYMA and sought confirmation that the District would continue to provide busing as it had done for A.A.'s attendance at Hawk Meadow. (*Id.* ¶ 60.)

On July 17, 2017, the Parent followed up with David Carlson, the District's Director of the Committee on Special Education and Supervisor of Pupil Services, who had previously approved the District's funding of A.A.'s transportation to Hawk Meadow. (*Id.* ¶ 61; Decl. of Tai H. Park ("Park Decl."), ECF No.51, Ex. 1 at 1.[2]) Then, on July 25, 2017, Mr. Carlson confirmed that he "let transportation know to go forward with scheduling busing" for A.A. (Compl. ¶ 62; Park Decl. Ex. 1 at 2.) In reliance, the Parent enrolled her son at NYMA while the District's transportation department put together the details of A.A.'s busing. (Compl. ¶¶ 63-64.) A.A. then commenced regular busing to NYMA on September 25, 2017. (*Id.* ¶ 65.)

ii.    *The District Reneges on Its Offer*

As the parties finalized A.A.'s busing situation, the District Defendants filed their appeal of this Court's July 17, 2017 opinion and order while the Parent filed her cross appeal. (*Id.* ¶ 66.) As noted above, the appeal and cross appeal were filed on August 14 and August 21, 2017, respectively. Thereafter, on August 30, 2017, the Parent requested a meeting with the District's Superintendent and Assistant Superintendent to discuss, among other things, the ongoing litigation between the Parent and the District Defendants. (*Id.*)

During the meeting, the Parent expressed her view that the District Defendants were "wasting taxpayer dollars to pursue an appeal from" this Court's July 17, 2017 opinion and order, and that "she had no choice but to file a notice of cross-appeal in response." (*Id.* ¶ 67.) The next day, on August 31, 2017, the District's outside counsel called the Parent to advise her that the District had prepared a letter that revoked A.A.'s transportation to NYMA. (*Id.* ¶ 68.) Counsel then inquired whether the Parent would consider withdrawing her case in exchange for the District

---

[2]        The Court may consider the documents included in the Park Declaration because they are either incorporated into the complaint by reference, judicially noticeable, or integral to the Complaint. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991).

"reinstating" A.A.'s transportation. (*Id.*) When the Parent declined, the District's counsel forwarded a copy of a letter, dated August 28, 2017, from Thomas Balko, the District's Director of Transportation, which "denied" the Parent's request for transportation to NYMA because (1) Parent's request was untimely, (2) NYMA was more than 15 miles from A.A.'s home, and (3) NYMA did not provide services that were similar to those outlined in A.A.'s IEP for the 2017/18 school year.[3] (*Id.* ¶¶ 69, 72; Park Decl. Ex. 3.) The District had not informed the Parent of this letter during their August 30, 2017 phone call; instead, they only forwarded the letter after the parties' "testy" phone call. (Compl. ¶ 69.)

The Parent subsequently retained *pro bono* counsel, who wrote to the District's outside counsel on September 18, 2017 to address the District's denial of transportation to NYMA. (*Id.* ¶ 76.) The District's Superintendent responded on September 20, 2017 by affirming the District's determination that it would refuse busing A.A. to NYMA. (*Id.* ¶ 77.)

### C. The 2017 Due Process Hearing

On October 4, 2017, the Parent filed a second due process complaint against the District Defendants. (*Id.* ¶ 79.) The Parent sought an expedited hearing for the IHO to enforce "pendency law" and require the District to (1) reimburse the Parent for the costs of A.A.'s tuition at Hawk Meadow for the school years 2014/15, 2015/16, and 2016/17; (2) pay tuition for A.A.'s attendance at NYMA for the 2017/18 school year through graduation; (3) pay reimbursement for boarding costs incurred since September 2018; and (4) pay the Parent's costs and legal fees for instituting this due process complaint and hearing. (*Id.*)

---

[3] The Complaint also alleges that, up to this point, the Parent had not received an IEP packet for the 2017/18 school year and had not been given a chance to participate in the formulation of that year's IEP. (Compl. ¶¶ 74-75.) The Complaint outlines additional irregularities accompanying the District's IEP for the 2017/18 school year that the Parent had identified ahead of brining her second due process complaint. (*Id.* ¶ 75.)

## 1. The IHO Hearing

The IHO held a hearing over the course of six days. (*Id.* ¶ 81.) During the hearing, the parties offered evidence regarding the 2014/15 school year through the 2017/18 school year. The IHO then issued his decision on March 7, 2018, which denied the Parent's tuition requests for all years at issue. (Park Decl. Ex. 5.) What follows is a high-level overview of the Parent's arguments and IHO's corresponding decisions.

### i.    *The 2014/15 School Year*

Although the IHO had determined during a pre-hearing conference that such claims related to the 2014/15 school year were time-barred, the Parent argued that reimbursement of tuition was warranted under the laws of pendency and the "stay put" provision of state and federal law ("Stay Put law"). (*Id.* ¶¶ 83-84.) In his final opinion, however, the IHO did not address the Parent's pendency arguments, and instead disregarded the 2014/15 school year because it was barred by the statute of limitations. (*Id.* ¶ 85; Park Decl. Ex. 5 at 8.) According to Plaintiff, the IHO "disregard[ed]" the fact that Hawk Meadow A.A.'s "operative placement" for the 2013/14 school year. (Compl. ¶¶ 87-88.)

### ii.    *The 2015/16 and 2016/17 School Years*

For the 2015/16 and 2016/17 school years, the Parent argued that reimbursement was warranted under Stay Put law. (*Id.* ¶¶ 92, 123.) The Parent also argued, separate and apart from the law of pendency, that tuition reimbursement was warranted because the District's 2015/16 IEP procedurally and substantively denied FAPE. (*Id.* ¶¶ 96-120, 124-27.) Among the various defects raised by the Parent were that (1) the District's failed to notify her its meetings to develop A.A.'s IEP (*id.* ¶¶ 98, 124(a)); (2) the IEP was untimely (*id.* ¶¶ 99, 124(b)); (3) the District used outdated information to develop the IEP (*id.* ¶¶ 100, 124(c)); and (4) the IEP substantively failed by

recommending placement in an "integrated co-taught classroom" that was "plainly inappropriate" given A.A.'s need for "one-on-one" individual attention (*id.* ¶¶ 102, 125). The Parent further argued, as is necessary to establish entitlement to tuition under the *Burlington* factors, that Hawk Meadow was an appropriate alternative for A.A. and that the equities favored reimbursement. (*Id.* ¶¶ 104-123, 126-127)

As to the 2015/16 school year, the IHO "ignored" the Parent's arguments and concluded that her claims for tuition reimbursement were time-barred by the statute of limitations. (*Id.* ¶ 92.) Unlike his determination for the 2014/15 school year, however, the IHO only raised this statute-of-limitations issue for the first time in his decision. (*Id.* ¶ 93.)

Next, in denying tuition reimbursement for the 2016/17 school year, the IHO (1) concluded that the District had made "various attempts to contact the Parent," which the Parent contends is contradicted by the record (*id.* ¶ 124(a); Park Decl. Ex. 5 at 17); (2) "ignored" the untimeliness of the 2016/17 IEP (Compl. ¶ 124(b)); (3) faulted, despite evidence and testimony to the contrary, the Parent for not consenting to A.A.'s reevaluation, which the IHO determined was a factor in the District's use of outdated evaluations (*id.* ¶ 124(c)-(d); Park Decl. Ex. 5 at 17-19); (4) held the Parent to the "strict[]" requirement that she provide 10 days' notice to the District about A.A.'s enrollment in Hawk Meadow while failing to account for the District's failure to provide the Parent with a corresponding opportunity to fix the IEP (Compl. ¶ 124(e); Park Decl. Ex. 19); and (5) declined to address any of the "substantive deficiencies" of the IEP (Compl. ¶ 125). Plaintiff further alleges that the IHO discounted and mischaracterized testimony regarding the appropriateness of Hawk Meadow, while in other instances, he simply ignored testimony and evidence. (*Id.* ¶ 126.)

*iii.* *The 2017/18 School Year*

Like she did for the 2015/16 and 2016/17 school years, the Parent again argued that she was entitled to tuition reimbursement for the NYMA based on Stay Put law. (*Id.* ¶ 128.) The Parent first argued that the First Complaint established pendency and served as a basis for tuition reimbursement for the 2017/18 school year. (*Id.* ¶ 128(a).) The Parent further argued that, upon enrolling A.A. at NYMA, she established a separate basis for ordering tuition reimbursement pursuant to pendency.[4] (*Id.* ¶ 128(b).) The IHO, confronted with these arguments, ultimately denied the Parent's request without any discussion. (Compl. ¶ 128(c)(iii).)

The Parent further argued, like she did for the 2015/16 and 2016/17 school years, that (1) she was entitled to tuition reimbursement because of the procedural and substantive deficiencies of the District's IEP; (2) NYMA was an appropriate alternative for A.A.; and (3) the equities favored reimbursement. (*Id.* ¶¶ 129-39.) Unlike her challenges to the 2015/16 and 2016/17 school years, however, Parent did point to several additional issues underlying the 2017/18 IEP, such as its failure to address transitional planning for a 15-year-old, its use of "false information" that "student electives aligned with [A.A.'s] interest," and the School Board's lack of approval of the IEP. (*Id.* ¶ 129(d)-(e), (g).)

The IHO again denied the Parent's tuition-reimbursement request, which the Parent contends was erroneous for several reasons. *First*, the IHO purportedly ignored evidence and testimony (or the lack thereof) establishing that the District had failed to notify the Parent of its meeting to develop the 2017/18 IEP and failed to hold a meeting after reversing its initial approval of bus transportation to NYMA. (*Id.* ¶ 129(a); Park Decl. Ex. 5 at 23.) *Second*, the IHO failed to

---

[4]     Notably, the Parent also explained that, in addition to tuition, she had sought an order in 2017 from both the IHO in the First Complaint and the current IHO, which would have directed the District to resume transportation to NYMA. (Compl. ¶ 128(c); *see, e.g.*, Park Decl. Ex. 5 at 26.) Both IHOs ultimately refused to issue any order. (Compl. ¶ 128(c).)

address the untimeliness of the IEP. (Compl. ¶ 129(b).) *Third*, the IHO "accepted the IEP's self-serving assertion" about the District's "failed efforts to contact the Parent" in order to update the information in the IEP. (*Id.* ¶ 129(c); Park Decl. Ex. 5 at 23, 25.) *Fourth*, the IHO erroneously found, without explanation, that the District had provided adequate transition services required under state law. (Compl. ¶ 129(d).) *Fifth*, the IHO ignored false information in the IEP that had been flagged by the Parent, as well as the School Board's failure to approve or support the IEP. (*Id.* ¶ 129(e), (g).). *Finally*, the IHO ignored the substantive deficiencies of the IEP (*id.* ¶ 129(f)).

## 2. The SRO Appeal

On March 26, 2018, after the IHO issued his decision, the Parent filed a notice of intent to seek review from the SRO. (Compl. ¶ 141.) The assigned SRO, Justyn Bates ("SRO Bates"), was the same SRO who had decided the Parent's claims in the First Complaint. (*Id.* ¶ 142.)

The Parent was required to personally serve her Request for Review (the "Request") within 40 days of the IHO's decision. (*Id.* ¶ 144.) Because the IHO's decision was issued on March 17, 2018, this meant that the Parent was required to personally serve the District on April 16, 2018. (*Id.* ¶ 144.) The Parent, however, served the Request on the District on April 17, 2018 at 9:03 a.m., which was approximately nine hours late. (*Id.* ¶ 145.)

As she noted to SRO Bates, this delay occurred because of an error by the Parent's counsel's process serving agency. (*Id.* ¶ 146.) Specifically, the process server failed to comply counsel's instruction to serve the Request on the District on April 16, 2018. (*Id.* ¶ 149.) The Complaint details the specific timeline preceding the Parent's late service:

- On April 11, 2018, counsel's paralegal emailed the process server to arrange for service of documents on April 16, 2018 (*id.* ¶ 149(a); Park Decl. Ex. 8 at Attach. D);

- On April 12, 2018, counsel's paralegal called the process server to confirm that service would be effectuated on April 16, 2018 (Compl. ¶ 149(b); Park Decl. Ex. 8 at Attach. B ¶ 3);
- On April 16, 2018, counsel's paralegal sent the documents to the process server via email (Compl. ¶ 149(c); Park Decl. Ex. 8 at Attach. C). The paralegal then called to confirm receipt and was told that service would occur that day (Compl. ¶ 149(d); Park Decl. Ex. 8 at Attach. B ¶ 5).

In its formal response to the appeal, the District raised this delay as a basis for rejecting the Parent's claims, despite not having otherwise objected to the delay beforehand. (Compl. ¶ 147.) Soon after, by decision dated May 17, 2018, SRO Bates dismissed the appeal as untimely, reasoning that the Parent did not set forth good cause for her day-late service of the Request. (*Id.* ¶ 143; Park Decl. Ex. 6.) In dismissing the appeal, SRO Bates did not address any of the Parent's substantive claims. (Compl. ¶ 155.)

### D. The Department's Purported Conduct

The Complaint contends that the Department equally failed to provide A.A. with FAPE. Specifically, Department did not address the "deficiencies in the District's treatment of its disabled students." (Compl. ¶ 159.) The Complaint points to two bases to support this position.

*First*, publicly available data on the Department's website—the "Special Education School District Data Profile"—reveals that (1) for the years 2009-2011 and 2014-215, the District did not meet New York State targets for "performance on state assessments and adequate yearly progress" in English and Language Arts for Grades 3-8; (2) for the years 2013-2017, the District did not meet New York State targets for "participation in and performance on state assessments" in English Language Arts and Math for Grades 3-8; and (3) for the school year 2015/16, the District had an "appropriate transition IEP" for only 23.3% of its eligible students, which was below the state target of 100%.[5] (*Id.* ¶ 158.)

---

[5]     For its part, the Department had determined that, for the years 2012 through 2017, the Clarkstown Central School District met the IDEA's requirements. (Siegel Decl. Ex. 4 at 4.) In making these determinations, the

*Second*, the Department was aware of the Parent's "serious allegations of misconduct by the District," its "own failure of oversight," and this Court's June 17, 2017 decision, but still assigned SRO Bates to the Parent's appeal of the second due process decision. (*Id.* ¶ 161.)

### E. Procedural History

On August 2, 2018, Plaintiff commenced this action, asserting eight causes of action pursuant to the IDEA, ADA, RA, Section 1983, and Education Law. (ECF Nos. 1 & 6.) The Complaint alleges that Defendants (1) failed provide FAPE between the 2014/15 school year and the 2017/18 school year, in violation of the IDEA; (2) discriminated against A.A., and, by association, the Parent, on the basis of A.A.'s disabilities, in violation of the ADA and RA; (3) denied FAPE, retaliated against Plaintiff and her son, and held biased hearing proceedings, all in violation of Section 1983; and (4) violated the Education Law by failing to provide special education and related services, adhere to procedural safeguards, adequately train administration and staff, and monitor and ensure the District was in compliance with the IDEA. (ECF No. 6.)

On August 14, 2018, shortly after filing the Complaint, Plaintiff filed a motion for a preliminary injunction pursuant to Section 1415(j) of the IDEA, *i.e.*, the stay-put provision. (ECF No. 10.) Plaintiff sought an order directing the District to provide tuition on behalf of A.A. for the 2018-2019 school year at NYMA, pending the outcome of the present due-process

---

Department reviewed "information obtained through monitoring visits, other public information made available, including any audit findings and whether the data submitted by the local agency is valid, reliable, and timely." *See, e.g.*, N.Y.S. Dep't of Educ., *2017 Criteria for School District Determinations under the Individuals with Disabilities Education Act*, http://www.p12.nysed.gov/specialed/spp/nysdeterminations/documents/determination-criteria-2017.pdf (last visited September 16, 2019). During this review, the Department considered compliance and other performance indicators in relation to the State's targets. *Id.* As it has described to the United States Department of Education, the Department uses a "data based computer system . . . to track all monitoring reviews conducted by each Regional Office across the State." (Decl. of Jonathan Siegel in Reply to Pl.'s Opp'n, ECF No. 44, Ex. 9.) "Each review is individually logged as soon as selections are made and data is entered at all critical stage. . . . Regional Office supervisors use a variety of means to monitor timeliness." (*Id.*) The Court may take judicial notice of the this "publicly available" information retrieved from the Department's website. *Fernandez v. Zoni Language Ctrs., Inc.*, No. 15-cv-6066 (PKC), 2016 WL 2903274, at *3 (S.D.N.Y. May 18, 2016).

proceedings. (*Id.*) On August 25, 2018, this Court granted Plaintiff's motion. (ECF No. 29.)[6]

Four days later, Defendants sought and received leave to file motions to dismiss. (ECF No. 33.)

On October 23, 2018, the District Defendants and the Department each filed a motion to dismiss. (ECF Nos. 41, 46.) The District Defendants offer two primary bases for dismissal: (1) this Court lacks subject matter jurisdiction to hear Plaintiff's IDEA and non-IDEA claims because she failed to exhaust her administrative remedies under the IDEA; and (2) in any event, Plaintiff's non-IDEA claims fail to state a claim upon which relief can be granted.

Separately, the Department sets forth five grounds for dismissal of claims against it: (1) the Department is not a proper party to the Complaint because complete relief can be obtained from the District Defendants; (2) Plaintiff cannot maintain a claim based on the Department's general supervisory duties and has failed to establish that the Department systemically violated the IDEA; (3) there is no private right action based on SRO bias and, in any event, Plaintiff has not plausibly alleged bias; (4) the Court lack's subject matter jurisdiction to hear Plaintiff's IDEA and non-IDEA claims because they have failed to exhaust their administrative remedies; and (5) Plaintiff fails to state claims under the ADA, RA, Section 1983, and the Education Law

## LEGAL STANDARDS

### I.     Rule 12(b)(1)

Under Rule 12(b)(1), a "case is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In resolving a 12(b)(1) motion, courts "must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of*

---

[6]     The Court amended this opinion and order on August 27, 2018. (ECF No. 30.)

*Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). However, courts must also decide "issues of fact by reference to evidence outside the pleadings, such as affidavits." *Reyes v. Bedford Cent. Sch. Dist.*, No. 16-CV-2768 (KMK), 2017 WL 4326115, at *3 (S.D.N.Y. Sept. 27, 2017). In such cases, a "plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova*, 201 F.3d at 113.

## II.    Rule 12(b)(6)

Under Rule 12(b)(6), the inquiry for a motion to dismiss is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

A court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but it is "'not bound to accept as true a legal conclusion couched as a factual allegation,'" or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678 (quoting Twombly, 550 U.S. at 555). When determining the sufficiency of a plaintiff's claim for Rule 12(b)(6) purposes, the court's consideration is limited to the factual allegations in the complaint, the documents attached as exhibits or incorporated in it by reference, matters of which judicial notice may be taken, or documents in plaintiff's possession or of which the plaintiff had knowledge and relied on in bringing suit. *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

To determine whether a complaint states a plausible claim for relief, a court must consider the context and "draw on its judicial experience and common sense." *Id.* at 679. A claim is facially

plausible when the facts allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Conversely, if a plaintiff has not "nudged [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

## DISCUSSION

### I.    IDEA Claims

#### A. Claims against District Defendants

#### 1. Exhaustion of Remedies - General

As previously explained, New York has a two-tier administrative system of review for IEPs. *Cave v. East Meadow Union Free Sch. Dist.*, 514 F.3d 240, 245 (2d Cir. 2008). It is well-settled that, under the IDEA, an aggrieved party must exhaust these procedures before it can file a suit in federal or state court. 20 U.S.C. § 1415(i)(2)(A); *see also Cave*, 514 F.3d at 245. "A plaintiff's failure to exhaust administrative remedies under the IDEA deprives a court of subject matter jurisdiction." *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 483 (2d Cir. 2002). This exhaustion requirement, however, is "not an inflexible rule." *Murphy*, 297 F.3d at 199. Specifically, exhaustion is not required where: "(1) it would be futile to resort to the IDEA's due process procedures; (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law; or (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies." *Id.*

Here, Plaintiff argues that she did not need to administratively exhaust her claims before she raised them in federal court. (Pl.'s Mem. in Opp'n ("Pl. Opp."), ECF No. 50, at 13.) Plaintiff specifically argues that (1) her tuition-reimbursement claims need not be subjected to the IDEA's exhaustion requirement because (i) the SRO's decision should not affect this Court's jurisdiction,

(ii) the SRO was arbitrary and capricious, and, in any event, (iii) the futility exception to the IDEA's exhaustion requirement applies here; and (2) her claims related to the District Defendants' purported "stay put" violations do not need to be exhausted as a matter of law. (*Id.* at 13-25.)

Unsurprisingly, the District Defendants take the opposite position. They argue that all of Plaintiff's claims related to IDEA violations must be exhausted, and that, because Plaintiff failed to timely appeal the IHO's decision to the SRO, she has not met the IDEA's exhaustion requirements. (District Defs.' Memo. of Law in Support of Mot. to Dismiss ("Dist. Defs. Mot."), ECF No. 48, at 4-9; District Defs.' Reply Memo. of Law ("Dist. Defs. Reply", ECF No. 49, at 1-9.). As explained below, the Court agrees with the District Defendants that the IDEA's exhaustion requirement applies to Plaintiff's tuition-reimbursement claims, and that Plaintiff has failed to exhaust her remedies in that context. The Court, however, concludes that it has jurisdiction to hear Plaintiff's stay-put claims because they are not subject to the IDEA's exhaustion requirement.

### 2. Exhaustion of Tuition Reimbursement Claims

Courts in this circuit have consistently held that a party that does not timely appeal an IHO's decision to the SRO or timely serve a respondent has failed to exhaust administrative remedies under the IDEA. *See, e.g.*, *R.P. v. Pelham Union Free Sch. Dist.*, No. 16-CV-02898(NSR)(TPG), 2017 WL 4382190, at *3 (S.D.N.Y. Sept. 29, 2017) ("Failure to exhaust includes failure to make a timely appeal to the SRO."); *B.C. ex rel. B.M. v. Pine Plains Cent. Sch. Dist.*, 971 F. Supp. 2d 356, 365 (S.D.N.Y. 2013) (concluding that plaintiff's failure to "timely and properly initiate her appeal to the SRO" was a failure to exhaust her remedies under the IDEA, thereby depriving the court of subject matter jurisdiction); *R.S. v. Bedford Cent. Sch. Dist.*, 899 F. Supp. 2d 285, 289 (S.D.N.Y. 2012) (dismissing plaintiff's IDEA claims for failure to exhaust remedies because SRO has dismissed appeal as untimely); *T.W. v. Spencerport Cent. Sch. Dist.*,

891 F. Supp. 2d 438, 440 (W.D.N.Y. 2012) (dismissing complaint for failure to exhaust remedies where plaintiff's appeal before the SRO was filed 66 days late).  If an SRO dismisses a petition for review as untimely, courts will uphold the decision unless that decision was "arbitrary and capricious."  *R.P.*, 2017 WL 4382190 at *3; *accord R.S.*, 899 F. Supp. 2d at 290 ("[A]pplicable New York administrative law allows for an SRO's decision to be overturned if 'made in violation of lawful procedure[,] affected by an error of law[,] arbitrary and capricious[,] or an abuse of discretion.'" (quoting N.Y. C.P.L.R. § 7803(3))).

Here, Plaintiff concedes—as she must—that the service of the Request was untimely. (Compl. ¶ 145; Pl. Opp. 10).  Therefore, absent some exception, she has failed to exhaust her administrative challenge to whether the District provided A.A. with FAPE.  For this reason, Plaintiff argues that the SRO's decision was arbitrary and capricious, or, in the alternative, exhausting administrative remedies in this case would be futile.[7]  (Pl. Opp. 16-25.)  As will be explained, the Court does not concur.

i.    *The SRO's Decision Was Not Arbitrary & Capricious*

When determining whether a SRO's decision was "arbitrary and capricious," courts must determine whether the decision "was based on [] consideration of [] relevant factors and whether there has been a clear error of judgment."  *State of N.Y. Dep't of Soc. Servs. v. Shalala*, 21 F.3d

---

[7]    Plaintiff invites this Court to fashion an exception to the IDEA's exhaustion requirement for cases in which the SRO refuses to consider a parent's appeal (as opposed to school district's appeal) for "entirely procedural technical reasons," such as timeliness.  (Pl. Opp. 14-16.)  The Court declines to do so.  Although it is true that the Second Circuit in *Polera* explained the exhaustion requirement is necessary to allow agencies "to correct shortcomings in their educational programs for disabled children," 288 F.3d at 487, it does not follow that courts should apply different procedural standards purely based on the identity of the party challenging exhaustion.  Nor does Plaintiff provide any authority in support of her proposition.  In any event, courts routinely hold parents to the IDEA's exhaustion requirements when their appeals are untimely, regardless of the length of delay.  *See, e.g.*, *B.C.*, 971 F. Supp. 2d at 367 (dismissing plaintiff's claim for failure to exhaust remedies due to various procedural deficiencies in filing appeal with SRO); *R.S.*, 899 F. Supp. 2d at 291 (concluding that plaintiff failed to exhaust remedies where appeal was one day late); *Kelly ex rel. M.K. v. Saratoga Springs Cty. Sch. Dist.*, No. 09-cv-276 (GLS*RFT), 2009 WL 3163146, at *2, *5 (N.D.N.Y. Sept. 25, 2009) (concluding that plaintiff failed to exhaust remedies appeal was untimely filed).

485, 492 (2d Cir. 1994) (internal quotations omitted). Although the law of arbitrary and capricious administrative behavior "requires consistency in agencies' application of law, so that parties in identical circumstances are treated identically," parties are "almost never totally identical." *R.S.*, 899 F. Supp. 2d at 291. As such, "the rule is a rule of reasonableness." *Id.* Here, even if it may have reached a different outcome, the Court concludes that SRO Bates's decision contains no clear error of judgment or demonstrated inconsistency in its application of the law.

Plaintiff does not dispute that SRO Bates has considerable discretion in how to address a procedurally defective appeal. 8 N.Y.C.R.R. § 279.13 (explaining that SROs may "dismiss sua sponte a late request for review or, in his or her sole discretion, may [have] excuse[d] a failure to timely serve or file a request for review within the time specified for good cause shown"). Plaintiff nevertheless argues that SRO Bates's decision was "arbitrary and capricious" because (1) he "ignored" Plaintiff's purported showing of "good cause" and (2) his decision was "inconsistent" with other SROs' decisions. (Pl. Opp. 16-22.) The Court cannot agree

As an initial matter, the Court does not conclude that SRO Bates "ignored" a showing of good cause. In dismissing Plaintiff's appeal because of her process server's failure to timely serve the District Defendants, SRO Bates specifically considered Plaintiff's proffered reason for effectuating service a mere nine-hours late. (Park Decl. Ex. 6 at 8.) Confronted with Plaintiff's explanation, SRO Bates ultimately concluded that a short delay caused by process-server error was "insufficient to excuse the failure to timely serve the request for review upon the district." (*Id.*) Understandably, Plaintiff may not agree with SRO Bates's decision. Indeed, the decision was surprisingly harsh given the *de minimis* nature of the delay.[8] Nevertheless, the arbitrary and

---

[8] The Court, however, does note that other courts, in general, have concluded that "misplaced reliance" on a process server does not constitute good cause for untimely service. *See Beauovir v. U.S. Secret Servs.*, 234 F.R.D. 55, 56-57 (E.D.N.Y. 2006) (explaining that counsel's explanation that he "detrimentally relied upon

21

capricious standard mandates considerable deference to SROs. Because SRO Bates has addressed Plaintiff's good-cause arguments and proffered his reasoning for rejecting it, this Court is unfortunately not in a position to overturn his determination.

Plaintiff also fails to establish that SRO Bates's decision was inconsistent with his or other SROs' past decisions. Although Plaintiff points to three SRO appeals to establish that SROs "routinely excuse[] late filings" (Pl. Opp. 20-21.), none establish any inconsistency.

For example, in *Appl. of the Bd. of Educ. of the Mamaroneck Union Free Sch. Dist.*, SRO Appeal No. 16-080 (Jan. 20, 2017), the SRO had observed that "the district [had] attempted personal service of [its] petition for review" on respondents for "four consecutive days" prior to the service, as well as the morning of the deadline. *Id.* at 15. The district then "nail[ed] and mail[ed]" the petition at respondents' last known address. *Id.* at 15-16. The respondents had claimed they had only received a copy of the petition via certified mail five days after the deadline. *Id.* at 16. Given the petitioners efforts, the SRO concluded that delayed receipt of the petition did not prejudice respondents and, as such, it exercised its discretion to hear the case. *Id.* Similarly, in *Appl. of a Child with a Disability*, SRO Appeal No. 00-062 (June 21, 2001), the SRO noted that respondent "may have contributed to the delay." *Id.* at 5. When coupled with the absence of any prejudice, the SRO exercised its discretion to excuse the delay in service. Finally, in *Appl. of a Child with a Disability*, SRO Appeal No. 97-036 (Jan. 5, 1998), the SRO ultimately offered no reasoning behind why it concluded that respondent would be prejudiced.[9]

---

[9] the office of Elite Process Servers to properly effectuate service" did not constitute good cause). Therefore, notwithstanding its view that SRO Bates's decision was harsh, the Court cannot say that it was unreasonable. Plaintiff's reliance on SRO Bates's decision in *Appl. of the Bd. of Educ. of the Sachem Cent. Sch. Dist.*, SRO Appeal No. 14-169 (Mar. 19, 2015) is also unpersuasive. The decision offers no rationale, as Plaintiff concedes, and, in any event, one decision does not establish that SRO Bates's acted arbitrarily and capriciously in this case. The Court further notes that, in its own research, it has identified other instances of SRO Bates dismissing an appeal as untimely despite a short delay. *See, e.g.*, *Appl. of a Student with a Disability*, SRO No. 13-039 (Oct. 10, 2014) (dismissing appeal served one day after deadline); *Appl. of a Student with a Disability*, SRO No. 12-003 (Feb. 6, 2012) (dismissing petition as untimely despite two day

Simply put, none of the cases upon which Plaintiff relies dealt with a similar situation of delay being caused by a process server's failure to abide by requested service date. Because Plaintiff has failed to set forth SRO opinions that are plainly contrary to SRO Bates's position, the Court cannot conclude that SRO Bates's exercise of his discretion to dismiss Plaintiff's appeal as untimely was arbitrary and capricious. *See R.S.*, 899 F. Supp. 2d at 291 (concluding that plaintiff failed to cite to a case where an identically situated party obtained a different outcome from the SRO, such that the court could not conclude that the SRO's decision was arbitrary and capricious).

ii. *Futility Exception Does Not Apply*

When analyzing futility, courts look at whether the agency "was acting in violation of the law or was unable to remedy the alleged injury." *Cave*, 514 F.3d at 249 (quoting *Heldman v. Sobol*, 962 F.2d 148, 159 (2d Cir. 1992)). To take advantage of the futility exception to the IDEA's exhaustion requirement, a plaintiff "need[s] to show that [] the SRO is so biased against [it] that [it] could not have prevailed had [it] presented [the] appeal directly to [the SRO]." *R.S.*, 899 F. Supp. 2d at 290.

Here, Plaintiff argues that "the unique facts alleged" establish SRO Bates's bias. (Pl. Opp. 23.) Specifically, Plaintiff contends that (1) SRO Bates "was the same SRO who this Court had found ignored key evidence in connection with the first due process complaint brought by [Plaintiff]," and (2) SRO's "refusal to address the many plain defects in the new IHO decision starkly demonstrate[s] bias." (*Id.*) The Court does not share this view. Plaintiff may not be happy with SRO Bates's decision in this case, and SRO Bates may have, in the past, made errors that required this Court's intervention. But Plaintiff's allegations of adverse rulings or legal errors

---

delay in service due to parent's belief that IHO's transmittal of his decision via private express delivery service and e-mail entitled them to an additional four-days to effectuate service); *Appl. of a Student with a Disability*, SRO No. 11-013 (Mar. 13, 2011) (dismissing petition as untimely where petition was served approximately one to two days after the deadline).

does not provide a basis for this Court to conclude that SRO Bates was biased. *See Chen v. Chen Qualified Settlement Fund*, 552 F.3d 218, 227 (2d Cir. 2009) ("Generally, claims of judicial bias must be based on extrajudicial matters, and adverse rulings, without more, will rarely suffice to provide a reasonable basis for questioning a judge's impartiality."); *Cruz v. N.Y.C. Dep't of Educ.*, No. 18 Civ. 12140 (PGG), 2019 WL 147500, at *10 (S.D.N.Y. Jan. 9, 2019) ("While this Court agrees with the SRO that IHO Briglio erred in [its] ruling . . . this legal error provides no basis for removing the hearing officer on grounds of bias."). As Plaintiff alleges no other basis that would allow this Court to conclude that it has plausibly established SRO Bates's bias, *see generally* 8 N.Y.C.R.R. § 279.1(c)(4) ("A State Review Officer shall have no personal, economic or professional interest in the hearing which he or she is assigned to review."), this Court holds that she has failed to establish that futility exception should apply.[10]

In conclusion, SRO Bates dismissed Plaintiff's appeal of the IHO's decision as untimely, which deprives this Court of subject matter jurisdiction to hear Plaintiff's tuition-reimbursement claims. As Plaintiff failed to establish the applicability of an exception to the IDEA's exhaustion requirement, Plaintiff's tuition-reimbursement claims are DISMISSED, with prejudice.

### 3. Exhaustion of "Stay Put" Claims

As noted above, a plaintiff's failure to exhaust administrative remedies under the IDEA will ordinarily deprive federal courts of subject matter jurisdiction over its IDEA claims. *See Hope v. Cortines*, 69 F.3d 687, 688 (2d Cir. 1995). However, although the Second Circuit has not yet decided whether "the exhaustion requirement is generally applicable to all claims arising under the

---

[10]    Plaintiff requests a factual hearing to determine the SRO Bates's bias. (Pl. Opp. 25.) In general, courts will not sanction "what could amount to a fishing expedition" unless plaintiff has revealed "more than mere speculations or hopes that jurisdiction exists." *Ritchie Capital Mgmt., L.L.C. v. Costco Wholesale Corp.*, No. 14-CV-4819(VB), 2015 WL 13019620, at *7 (S.D.N.Y. Sept. 21, 2015). Plaintiff here has failed to make even that requisite preliminary showing. Jurisdictional discovery is not warranted.

IDEA," it has unequivocally held that "an action alleging [a] violation of the [IDEA's] stay-put provision falls within one, if not more, of the enumerated exceptions to this jurisdictional prerequisite." *Doe*, 790 F.3d at 445 (quoting *Murphy*, 297 F.3d at 199).

The District Defendants do not dispute this well-settled law. Instead, they attempt to draw distinction between "retroactive reimbursement" and immediate "prospective relief" under the stay-put provision. (Dist. Defs. Mot. 7-9.) The District Defendants' position is ultimately unavailing. Courts in this circuit have repeatedly observed that the "stay put" exception can apply to claims for reimbursement of educational expenses. *See, e.g.*, *Doe*, 790 F.3d at 455 (rejecting argument that pendency claim had to be exhausted where plaintiff had sought reimbursement from school district who had failed to comply with Section 1415(j)'s stay-put requirements); *Murphy*, 297 F.3d at 198 (noting that plaintiffs had sought reimbursement for tuition expenses); *de Paulino v. N.Y.C. Dep't of Educ.*, No. 19 Civ. 222 (GBD), 2019 WL 1448088, at *6 (S.D.N.Y. Mar. 6, 2019) (observing that "the exhaustion of remedies exception for pendency claims" does not only apply "in cases where the student demonstrates an immediate risk of ejection from his or her current school," particularly because "many of the cases that apply this exception . . . involve situations where the parents sought reimbursement for educational expenses they already paid for themselves.").

The District Defendants' reliance on cases like *Mackey*, 386 F.3d at 158, or *Bd. of Educ. of the Poughkeepsie City Sch. Dist. v. O'Shea*, 353 F. Supp. 2d 449 (S.D.N.Y. 2005) is misplaced and does not alter this Court's conclusion. *Mackey* and *O'Shea* did, of course, involve significant delays in an SRO issuing its decision, which, as the District Defendants correctly note, was a basis for the courts to permit retroactive reimbursement. *Mackey*, 386 F.3d at 164-65; *O'Shea*, 353 F. Supp. 2d at 455-59. Both those decisions were also premised on a unique factual situation in which

the SRO issued a decision that altered pendency in plaintiffs' favor; conversely, here, Plaintiff merely seeks reimbursement based on what she claims is A.A.'s existing pendency determination. Further, regardless of how the District Defendants may read *Mackey* and *O'Shea*, the Second Circuit in *Doe* was abundantly clear that both "retroactive and prospective" relief may be warranted where a plaintiff succeeds on a "stay-put claim." *Doe*, 790 F.3d at 454-55.

The District Defendants nevertheless attempt to read *Doe* narrowly, claiming that that the Second Circuit only intended for the "stay put" exception to apply in situations "where immediate relief" is at stake. (Dist. Defs. Reply 8.) The District Defendants misread *Doe*, which involved a similar situation to this case. There, plaintiff had raised two bases for reimbursement before the IHO: (1) the school district failed to provide FAPE, and (2) the school district failed to comply with "various procedural requirements under the IDEA and Connecticut law." 790 F.3d at 446-47. When the IHO issued an unfavorable decision that denied plaintiff's request for reimbursement, plaintiff appealed to the district court, which in turn fashioned relief based on the school district's failure to comply with 20 U.S.C. § 1415(j). *Id.* at 447. It was under this context that the Second Circuit concluded that Plaintiff did not need to exhaust its stay-put claim. The immediacy of the relief sought simply had no bearing on the court's ultimate disposition of the stay-put claim.[11]

---

[11] In any event, this Court concludes that Plaintiff's current stay-put claims would likely fall under one of the exceptions to the exhaustion requirement. Indeed, given that the District would have been obligated to make pendency payments regardless of the merits of Plaintiff's FAPE challenge, it is simply not probable that adequate relief could have been obtained by pursuing administrative remedies. *S.S.*, 2010 WL 983719 at *6 ("[T]he pendency scheme almost invariably leads to school districts' advancing the cost of private school tuition for an entire school year, and sometimes beyond, based on pendency alone—even where, as is the case here, the district met its obligation to offer the child a FAPE in a public school setting. Nonetheless, a school district is obligated to maintain the child's pendency placement until the child's pendency changes.").

In short, the District Defendants have failed to establish that Plaintiff needed to exhaust her stay-put claims for this Court to exercise subject matter jurisdiction. The District Defendants' motion to dismiss Plaintiff's stay-put claims is DENIED.

## B. Claims Against the Department

As she has done in her previous case, Plaintiff asserts IDEA claims against the Department. The Court again reiterates the following: The State Education Department—which is not responsible for the day-to-day formulation of students' IEPs—is not a proper party to a suit challenging an administrative determination as to the sufficiency of the IEPs provided by the local education agency. *See Y.D. v. N.Y.C. Dep't of Educ.*, No. 14CV1137-LTS, 2016 WL 698139, at *3 (S.D.N.Y. Feb. 19, 2016) (explaining that "[b]ecause the SED and its representatives are not 'parties to the underlying dispute' for the purposes of Section 1415, they are not proper parties to a private lawsuit brought pursuant to that section"); *J.E. v. Chappaqua Cent. Sch. Dist.*, No. 14 Civ. 3295(NSR), 2015 WL 4934535, at *7 (S.D.N.Y. Aug. 17, 2015) ("To the extent that Plaintiffs seek judicial review of an administrative decision by the SRO regarding whether the District provided D.E. with a FAPE and whether Plaintiffs are entitled to a tuition reimbursement, SED is not a proper or necessary party."); *B.J.S. v. State Educ. Dep't/Univ. of N.Y.*, 699 F. Supp. 2d 586, 600 (W.D.N.Y. 2010) (concluding that the "N.Y. State Department of Education may not be sued as a defendant to an IDEA action brought pursuant to § 1415(i)(2)(A)"). The reason for this rule makes sense. Plaintiff could have obtained complete relief from the District Defendants if they were to prevail in this action. Thus, any claims against the Department would have been superfluous. *See Bruschini v. Bd. of Educ. of Arlington Cent. Sch. Dist.*, No. 95 CV 0455 (CLB), 1995 WL 807107, at *2 (S.D.N.Y. May 16, 1995) ("It is clear to the Court that both the Commissioner and New York [State] Education Department should be dismissed from this action.

If Plaintiff prevails, she will obtain complete relief from the local board of education."). The Department is plainly not a necessary and proper party to this lawsuit.

Plaintiff attempts to avoid this outcome by arguing that the Department had notice of the District's IDEA violations but did nothing to remedy it. (Pl. Opp. 37.) However, because claims against the Department will not lie based on merely on its general supervisory role, *Y.D.*, 2016 WL 698139 at *5, Plaintiff points to select deficiencies noted in the Department's publicly available statistics to contend that the District's conduct was a result of its systemic failure to implement federal and state law, of which the Department was aware.[12] (Compl. ¶¶ 158-159.) Plaintiff's argument must fail. Upon review of the publicly available (and judicially noticeable) information provided by both parties, the Court concludes that the record before it does not establish that there was a system-wide violation of the IDEA's mandates or a district-wide policy of discrimination, let alone that the Department was aware of it.[13]

As an initial matter, Plaintiff's reliance on select metrics revealing the District's underperformance in certain discrete areas does not, itself, indicate that there was a system-wide failure. To properly set forth a systemic violation, Plaintiff must establish that the school district's "the framework and procedures for assessing and placing students in appropriate educational programs [are] at issue," or that "the nature and volume of complaints [brought before the school district] [are] incapable of correction by the administrative hearing process." *J.S. ex rel. N.S. v.*

___

[12]    Specifically, the Complaint contends that (1) "for years 2009-2011 and 2014; the District failed to meet New York state targets each year in the category 'performance on state assessments and adequate yearly progress' in English Language Arts for Grades 3-8"; (2) "[f]or years 2013 through 2017: the District failed to meet New York State targets each year in the category 'participation on state assessments' in English Language Arts and Math for Grades 3-8"; and (3) "the District had an appropriate transition IEP for a mere 23.3% of its eligible students." (Compl. ¶ 158(a)-(b); *see also* Park Decl. Ex. 14 at 2; *id.* Ex. 15 at 2; *id.* Ex. 18 at 2; *id.* Ex 19 at 3; *id.* Ex. 20 at 2; *id.* Ex. 21 at 2.)

[13]    "The Court need not accept as true any allegations that are contradicted by documents deemed to be part of the complaint, or materials amenable to judicial notice." *DHL Global Forwarding Mgmt. Latin Am., Inc. v. Pfizer, Inc.*, No. 13-cv-8218 (BF), 2014 Wl5169033, at *4 (S.D.N.Y. Oct. 14, 2014) (internal quotations omitted).

*Attica Cent. Schs.*, 386 F.3d 107, 114 (2d Cir. 2004) (affirming district courts finding that complaint sufficiently pleaded systemic issues by alleging, among other things, the school district's "alleged failure to notify parents of meetings as required by law; [] alleged failure to provide parents with legally required progress reports; and [] alleged failure to provide appropriate training to school staff."). The Complaint does neither. First, although it flags isolated metrics listed in the Department's "Data Profile" for the District, the Complaint does not contain any other factual claims that plausibly support an inference that the District has *systemically* "fail[ed] in identifying and evaluating students with disabilities and in delivering special education and related services to those students," particularly in light of the Department's own evaluation of the District's IDEA performance. *See M.H. ex rel. K.H. v. Mount Vernon City Sch. Dist.*, No. 13 CV 3596(VB), 2014 WL 901578, at *6 (S.D.N.Y. Mar. 3, 2014).

Nor does the Complaint plausibly reflect that "Plaintiff['s] experience[] represent[ed] an endemic problem within the District." *C.L. v. Hastings-on-Hudson Union Free Sch. Dist.*, No. 14-CV-4422 (NSR), 2015 WL 1840507, at *4 (S.D.N.Y. Apr. 21, 2015) (noting that plaintiffs' complaint was "rife with allegations that systemic, pervasive failures have manifested within the District's special education program"). Instead, the Complaint only seriously focuses on how the District's IEP process purportedly failed A.A. over the past few years, and, seemingly as an afterthought, sprinkles in hand-picked statistics to claim that A.A.'s problems were indicative of a wide-spread problem. Even drawing reasonable inferences, the Court cannot conclude from the Complaint, as presently drafted, that the District's alleged failure to provide FAPE to A.A. was emblematic of a system-wide issue depriving other disabled students of FAPE under the IDEA.[14]

---

[14]     Although Plaintiff does not raise the District's systemic violations as a basis for to accept her futility argument, the fact that this Court is unable to conclude that Plaintiff has plausibly alleged a systemic violation ultimately militates against a finding that Plaintiff has established the futility exception by way of raising a

In any event, the Complaint does not establish the Department's knowledge of any purported systemic failure. As the Department correctly explains, many of the cases upon which Plaintiff relies on for her systemic violation claim involved violations that were previously identified by the Department or admitted to by the school district. *See, e.g.*, *A.A. v. N.Y.S. Educ. Dep't*, 87 F. App'x 216, 217 (2d Cir. 2004) (plaintiff brought claim against the Department that was premised on its failure bring the school district into compliance with IDEA on issues it specifically had identified as deficient in an earlier report); *M.H.*, 2014 WL 901578 at *1 (plaintiffs brought claims against Department, alleging that it had "repeatedly identified [the school district's] systemic deficiencies and detailed" them in the Department's publicly available "Data Profile"); *A.A. v. Bd. of Educ., Central Islip Union Free Sch. Dist.*, 196 F. Supp. 2d 259, 261 (E.D.N.Y. 2002) (class action against Department premised on school district's systemic failure to comply with IDEA, which the school district had agreed to remedy under a settlement agreement). To that end, the Department has flagged its "IDEA School District Determinations for the years 2012 through 2017," which is a product of the Department's annual, comprehensive review of IDEA compliance, pursuant to 34 C.F.R. § 300.600. (Siegel Decl. Ex. 4.) These statistics reveal that, upon the Department's own review, the District has consistently met the IDEA's requirements according to the Department's assessment.[15] (*Id.*) Thus, while the Complaint alleges that Department was aware of a systemic violation, those contentions are belied by publicly available

---

systemic violation claim. *See Cave*, 514 F.3d at 249-50 (holding that exhaustion exemption did not apply where plaintiff failed to establish systemic violation of IDEA).

[15] Further, to the extent Plaintiff alleges that there was a systemic issue infecting the transition planning for A.A., the IDEA does not, in general, require a "'transition plan' when a student moves from one school to another." *E.Z.-L. ex rel. R.L. v. N.Y.C. Dep't of Educ.*, 763 F. Supp. 2d 584, 598 (S.D.N.Y. 2011) (citing *Robert B. v. W. Chester Area Sch. Dist.*, No. Civ.A. 04-CV-2069, 2005 WL 2396968, at *8-9 (E.D. Pa. Sept. 27, 2005)).

information that that indicate the Department was not aware of any deficiencies in the District's IDEA performance.[16]

In sum, the Court concludes that the Department is not a proper party to this Complaint. The Court therefore GRANTS the Department's motion to dismiss the IDEA claims against it.

## II.   Non-IDEA Claims[17]

### A.  Exhaustion of ADA, RA, and Section 1983 Discrimination Claims[18]

The District Defendants urge this Court to dismiss Plaintiff's non-IDEA claims for failure to exhaust her administrative remedies under the IDEA.  District Defendants essentially invite this Court to reconsider its prior position that, under *Fry v. Napoleon Cmty. Schs.*, 137 S. Ct. 743 (2017), claims that seek monetary relief that is otherwise unavailable under the IDEA "are not subject to the IDEA's exhaustion requirement" *Avaras*, 2017 WL 3037402 at *25-26 (the "2017 Opinion").[19]  (Dist. Defs. Reply 9-11.)  In opposition, Plaintiff maintains that her inclusion of compensatory and punitive damages, which are not available under the IDEA, removes her non-IDEA claims from any exhaustion requirement imposed by the IDEA.  (Pl. Opp. 26.)  She thus urges the Court to adhere to its prior position.  (*Id.*)  After carefully reviewing the development of

---

[16]     That the Department was privy to Plaintiff's previous complaints against the District does not alter this conclusion.  Those claims were related to individualized issue and/or did not plausibly allege a systemic violation by the District.  *See Avaras v. Clarkstown Cent. Sch. Dist.*, No. 15 Civ. 9679 (NSR), 2018 WL 4964230, at *17 (S.D.N.Y. Oct. 15, 2018); *Avaras v. Clarkstown Cent. Sch. Dist.*, No. 15 Civ. 2042 (NSR), 2017 WL 3037402 (S.D.N.Y. July 17, 2017).

[17]     The Complaint does not contain any unique allegations against the Department that independently support claims under the ADA, RA, or Section 1983.  As such, for the same reasons it dismissed the IDEA claims, the Court dismisses Plaintiff's ADA, RA, and Section 1983 claims against the Department.  *C.L.*, 2015 WL 1840507 at *6 (noting that "[c]ourts routinely dismiss claims brought under Rehabilitation Act Section 504 and the ADA when IDEA claims are dismissed on the same grounds").

[18]     Plaintiff's stay-put claims are "conceptually distinct" from her denial-of-FAPE claims.  *See Doe*, 790 F.3d at 447.  As such, the Court's determination that her stay-put claims are not subject to exhaustion does not implicate the outcome of its analysis of whether exhaustion was required for her non-IDEA causes of action, which are largely premised on the same facts as Plaintiff's tuition-reimbursement claims.

[19]     The Court held the same in a case related to N.A., Plaintiff's younger child.  *See Avaras*, 2018 WL 4964230, at *15-16.

the post-*Fry* case law within this and other circuits, this Court accepts Defendants' invitation to reconsider and reverse its previously held position.

As this Court has previously explained, the Supreme Court in *Fry* addressed the question of when "a plaintiff bringing a suit under the ADA, the [RA], or similar laws" must exhaust the IDEA's administrative procedures. *Fry*, 137 S. Ct. at 750. The *Fry* plaintiffs had filed suit in federal court alleging that the defendant school districts had violated the ADA and RA by refusing to allow their daughter to use a service dog at school. Plaintiffs alleged that, as a result of the school district's discrimination, they had suffered emotional distress, pain, embarrassment, and mental anguish. Accordingly, plaintiffs sought a "declaration that the school had violated [the ADA and RA], along with money damages to compensate" for their injuries. *Id.* at 752.

The *Fry* Court first observed that Section 1415(*l*) of the IDEA requires that "a plaintiff exhaust the IDEA's procedures before filing an action under the ADA, the [RA], or similar laws when (but only when) [his or her] suit 'seek[s] relief that is also available under the IDEA.'" *Id.* The Court, in turn, held that "that to meet that statutory standard, a suit must seek relief for the denial of a FAPE, because that is the only 'relief' the IDEA makes 'available.'" *Id.*

The critical inquiry is whether the gravamen—*i.e.*, the crux—of a plaintiff's complaint concerns the denial of FAPE or some other form of discrimination protected by another statute. *Id.* at 755. Accordingly, the Court posed two hypothetical questions to assist courts. *First*, the Court suggested that courts ask whether "the plaintiff could have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a public theater or library?" *Id.* at 756. *Second*, courts should inquire about whether "an *adult* at the school . . . [could] have pressed essentially the same grievance?" *Id.* Negative answers suggest the complaint revolves around the IDEA and that the exhaustion requirements apply, while affirmative

answers mean the opposite—that the complaint is "unlikely to be truly about" the IDEA.[20] *Id.* "In short, the IDEA guarantees individually tailored educational services, while [the ADA] and [RA] promise non-discriminatory access to public institutions." *Id.* at 756.

It bears noting that the *Fry* Court was careful to limit the scope of its hypothetical inquiry. Specifically, it explained that it did not "address here (or anywhere else in [its] opinion) a case in which a plaintiff, although charging the denial of a FAPE, seeks a form of remedy that an IDEA officer cannot give," such as "money damages." *Id.* at 754 n.8. It was under this context that this Court, shortly after the *Fry* opinion was issued in 2017,[21] reasonably concluded that because much of the relief that Plaintiff had sought at the time was "not available under the IDEA, such as lost wages and punitive damages," her non-IDEA claims "were not subject to the IDEA's exhaustion requirement." 2017 Opinion at *26. As this Court reasoned, this outcome was warranted because "[a] hearing officer, [lacking the power to order any relief], would have [had] to send her away empty-handed."[22] *Id.* (quoting *Fry*, 137 S. Ct. at 754).

To date, the Second Circuit has yet to interpret *Fry*. However, in the two years since the *Fry* decision was issued, several courts, including sister courts within this circuit, have had an opportunity to determine whether the type of remedies sought by a plaintiff can impact whether the IDEA's exhaustion requirements must be met. Notably, these courts have consistently reached a different conclusion than the one reached by this Court. *See, e.g.*, *Z.G. by and through C.G. v. Pamlico Cty. Pub. Sch. Bd. of Educ.*, 744 F. App'x 769, 777 n.14 (4th Cir. 2018) (explaining that "the fact that the plaintiffs also seek damages does not free them from the obligation to exhaust

---

[20]   The Court further noted that another sign "that the gravamen of a suit is the denial of a FAPE can emerge from the history of the proceedings." *Id.* at 757. To this end, "a court may consider that a plaintiff has previously invoked the IDEA's formal procedures to handle the dispute—thus starting to exhaust the Act's remedies before switching midstream." *Id.*

[21]   The Supreme Court decided *Fry* on February 22, 2017, which was five months before this Court issued the 2017 Opinion.

[22]   The Court nevertheless concluded that Plaintiff's claims were not viable. 2017 Opinion at *26-27.

administrative remedies."); *Wellman v. Butler Area Sch. Dist.*, 877 F.3d 125, 135 (3d Cir. 2017) (noting that "the fact that [plaintiff] could not recover the compensatory damages he now seeks in this lawsuit as part of the administrative proceedings does not convert his claims into non-IDEA claims"); *J.M. v. Francis Howell Sch. Dist.*, 850 F.3d 944, 950 (8th Cir. 2017) (explaining that, although the Supreme Court "declined to address whether exhaustion is required 'when the plaintiff complains of the denial of a FAPE, but the specific remedy she request . . . is not one' the IDEA provides," "the IDEA's exhaustion requirement remains the general rule, regardless of whether the administrative process offers the particular type of relief that is being sought"); *Robert F. v. N. Syracuse Cent. Sch. Dist.*, No. 5:18-CV-0594 (LEK/ATB), 2019 WL 1173457, at *6 (N.D.N.Y. Mar. 13, 2019) ("While monetary damages are unavailable in an IDEA administrative proceeding, Plaintiffs' request for monetary damages here does not alter the calculus regarding exhaustion, contrary to Plaintiffs' argument."); *Martinez v. N.Y.C. Dep't of Educ.*, No. 17-CV-3152 (NGG) (CLP), 2018 WL 4054872, at *5 n.2 (E.D.N.Y. Aug. 28, 2018) (noting that "[t]he inclusion of monetary damages among Plaintiff's requested relief [did] not alter the calculus" that the gravamen of plaintiff's non-IDEA claims concerned the denial of FAPE).

This Court considers this general trend in the case law to be persuasive, notwithstanding its previous conclusions. Accordingly, upon reconsideration, the Court now holds that the mere fact that a plaintiff seeks remedies not otherwise available under the IDEA is not dispositive of whether non-IDEA claims—such as those seeking relief under the ADA, the RA, or Section 1983—complain of a denial of FAPE. *See Polera*, 288 F.3d at 487 ("Courts in the Second Circuit have required exhaustion of administrative remedies even where damages were held to be unavailable through the administrative process. In such cases, plaintiffs were not permitted to evade the IDEA's exhaustion requirement merely by tacking on a request for money damages.").

Here, the facts supporting Plaintiff's IDEA claims are largely the same as those underlying the ADA, RA, and Section 1983 claims. Indeed, although stylized as discrimination against A.A., Plaintiff's non-IDEA claims ultimately focus on how the District denied A.A. "access to a free appropriate public education and accommodations designed to meet [A.A.'s] individual". (Compl. ¶¶ 187, 197, 207.) Thus, the gravamen of Plaintiff's ADA, RA, and Section 1983 claims is plainly the denial of FAPE, rather than discriminatory access to public institutions. An application of *Fry*'s two-part inquiry further buttresses this conclusion. For example, Plaintiff would not have been able to bring her ADA, RA, and Section 1983 claims if the alleged conduct had occurred outside of school. Likewise, an adult at the school would not have been able to sustain these claims against the District Defendants or the Department.

The above notwithstanding, Plaintiff raises two bases to argue that her ADA, RA, and Section 1983 claims are distinct from her IDEA claims. Neither is persuasive.

*First*, Plaintiff argues that her inclusion of an "associational" discrimination claim separates her ADA, RA, and Section 1983 claims from her IDEA claims. The Court disagrees. Although a parent can have standing to assert an associational discrimination claim under the RA premised on a parent's association with a disabled person, *see Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 279 (2d Cir. 2009) *Eskenazi-McGibney v. Connetquot Cent. Sch. Dist.*, 84 F. Supp. 3d 221, 230 (E.D.N.Y. 2015), to the extent Plaintiff's allegations of "associational discrimination" are focusing on the District's failure to include her in developing the IEP, such claims necessarily implicate the District's purported denial of FAPE. *See Eskenazi-McGibney*, 84 F. Supp. 3d at 233 (holding that, because it concluded that the child failed to state a discrimination claim under the ADA and Section 504, "it necessarily follows that the [parents'] associational discrimination claim fails as well). In any event, it is unclear that Plaintiff has otherwise plausibly alleged an

"associational discrimination" claim. Indeed, beyond two conclusory statements, Plaintiff here does not assert any facts that reveal on how she has suffered a personal discriminatory harm *because of her association with A.A. See Ziegler on Behalf of G.S. v. Multer*, No. 1:18-CV-0881 (GTS/CFH), 2018 WL 8576501, at *6 n.9 (N.D.N.Y. Nov. 14, 2018) (noting that plaintiff "did not contend[] that she suffered a personal wrong as a result of her association with her disabled child"); *S.K. v. N. Allegheny Sch. Dist.*, 146 F. Supp. 3d 700, 712 (W.D. Pa. 2015) (explaining that, to assert an association discrimination claim, plaintiff must plausibly allege, among other things, that "that the public entity discriminated against them because of that association; and [] they suffered a direct injury as a result of the discrimination").

*Second*, Plaintiff maintains that District's rescission of A.A.'s transportation rights to and from the NYMA present a wholly distinct retaliation claim that is not related to Plaintiff's IDEA grievances. Not so. As the Complaint makes clear, the crux of Plaintiff's retaliation claim—which she only seems to raise in support of her Section 1983 Cause of Action—is that the District (1) "repeatedly creat[ed] IEPs without affording the Parent and A.A. a meaningful opportunity to participate in CSE meetings; (2) "creat[ed] IEPs [that were] inappropriate for A.A.'s individualized needs," and (3) "den[ied] transportation and related services to NYMA. (Compl. ⁋ 209.) Although Plaintiff tries to frame these allegations as a divorced from her IDEA claims, this purported retaliatory conduct ultimately speaks to the District's denial of FAPE to A.A., both on procedural and substantive grounds. Therefore, as was the case with any purported associational discrimination against her, Plaintiff's claims of retaliation under Section 1983 (and, to the extent they are pleaded, under the ADA and RA) are subject to the IDEA's exhaustion requirements. *Cf. Rutherford v. Fla. Union Free Sch. Dist.*, No. 16-CV-9778, 2019 WL 1437823, at *32 (S.D.N.Y. Mar. 29, 2019) (holding that a claim for retaliation under Section 504 and the

ADA was not subject to the IDEA's exhaustion requirements "because the gravamen of Plaintiffs' complaint is not just the denial of a FAPE—it is the *pretextual* denial of access to education").

In short, the IDEA's exhaustion requirements are equally applicable to Plaintiff's non-IDEA claims. The Court therefore dismisses Plaintiff's ADA, RA, and Section 1983 claims, with prejudice.

## B. Education Law Claims

Plaintiff's Eighth Cause of Action alleges that "Defendants have violated the Plaintiffs' rights under the N.Y. Educ. Law § 4401 *et seq.* and 8 N.Y.C.R.R. Part 200 by failing to," essentially, provide FAPE. (Compl. ¶¶ 215-217.) All Defendants move to dismiss these claims. The District Defendants maintain that these state law claims should be subject to the same exhaustion requirements as other non-IDEA claims (Dist. Defs. Mot. 11), while the Department argues the Eleventh Amendment immunity bars Plaintiff's Education Law claim (Dep't Mot. 26). Alternatively, the Department contends that Plaintiff failed to state an Education Law claim against it, arguing that there is no private right of action against the Department under the law. (*Id.* at 28.) Plaintiff offers no response to any of Defendants' arguments. In fact, Plaintiff does not even address her Education Law claim in her opposition. The Court thus concludes that Plaintiff has abandoned her Education Law cause of action and dismisses the claim, without prejudice to raise it in state court. *See Hanig v. Yorktown Cent. Sch. Dist.*, 384 F. Supp. 2d 710, 723 (S.D.N.Y. 2005) ("[B]ecause plaintiff did not address defendant's motion to dismiss with regard to this claim, it is deemed abandoned and is hereby dismissed.").

## CONCLUSION

For the foregoing reasons, Defendants Clarkstown Central School District and the Board of Education for the Clarkstown Central School District's motion to dismiss is GRANTED in part

and DENIED in part. Defendant New York State Department of Education's motion to dismiss is GRANTED in its entirety. The only remaining claims in this case are Plaintiff's stay-put/pendency claims set forth in her First, Second, Third, and Fourth Causes of Action.

As there are no remaining claims against the New York State Department of Education, the Clerk of the Court is directed terminate this defendant from this case and to remove it from the caption. The remaining parties are directed to complete the attached Case Management Plan and Scheduling Order and submit it to the Court by October 18, 2019.

The Clerk of the Court is respectfully requested to terminate the pending motions at ECF Nos. 41 & 46.

Dated:    September 21, 2019            SO ORDERED:
          White Plains, New York

NELSON S. ROMÁN
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Rev. Jan. 2012

------------------------------------------------------------x

                          Plaintiff(s),        **CIVIL CASE DISCOVERY PLAN AND SCHEDULING ORDER**

   - against -

                          Defendant(s).        _____ CV _____ (NSR)

------------------------------------------------------------x

This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

1.    All parties [consent] [do not consent] to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). The parties are free to withhold consent without adverse substantive consequences. (If all parties consent, the remaining paragraphs of this form need not be completed.)

2.    This case [is] [is not] to be tried to a jury.

3.    Joinder of additional parties must be accomplished by _____.

4.    Amended pleadings may be filed until _____.

5.    Interrogatories shall be served no later than _____, and responses thereto shall be served within thirty (30) days thereafter. The provisions of Local Civil Rule 33.3 [shall] [shall not] apply to this case.

6.    First request for production of documents, if any, shall be served no later than
_____.

7.    Non-expert depositions shall be completed by _____.

    a.    Unless counsel agree otherwise or the Court so orders, depositions shall not be held until all parties have responded to any first requests for production of documents.

    b.    Depositions shall proceed concurrently.

    c.    Whenever possible, unless counsel agree otherwise or the Court so orders, non-party depositions shall follow party depositions.

8.    Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9.   Requests to Admit, if any, shall be served no later than _____.

10.  Expert reports shall be served no later than _____.

11.  Rebuttal expert reports shall be served no later than _____.

12.  Expert depositions shall be completed by _____.

13.  Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14.  **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15.  Any motions shall be filed in accordance with the Court's Individual Practices.

16.  This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17.  The Magistrate Judge assigned to this case is the Hon. _____.

18.  If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19.  The next case management conference is scheduled for _____, at _____. (The Court will set this date at the initial conference.)

SO ORDERED.

Dated: White Plains, New York
       _____

                                    _____
                                    Nelson S. Román, U.S. District Judge